UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUDGE TORRES

-----------------------------------------------------X

BAYVIEW SHIPPING CO. S.A.,  :
SKYVIEW MARINE CO. S.A., and  :
GULFVIEW SHIPPING CO. S.A.  :
:
             Plaintiffs,  :
:
  - against -  :
:
:
PHILADELPHIA ENERGY SOLUTIONS  :
REFINING AND MARKETING LLC  :
:
:
          Defendant.  :

-----------------------------------------------------X

**19 CV   6737**

19-cv_____

## VERIFIED COMPLAINT

Plaintiffs, BAYVIEW SHIPPING CO. S.A. ("Bayview"), SKYVIEW MARINE CO. S.A. ("Skyview"), and GULFVIEW SHIPPING CO. S.A. ("Gulfview") (collectively referred to as "Plaintiffs"), by and through their attorneys, Tisdale Law Offices, LLC, as and for their Verified Complaint against the Defendant, PHILADELPHIA ENERGY SOLUTIONS REFINING AND MARKETING LLC ("Defendant" or "PES"), allege, upon information and belief, as follows:

**JURISDICTION AND VENUE**

1.     This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1333 since the claims for which security is sought arise out of charter parties, the breach of which gives rise to a maritime claim.

2.     As will be discussed more fully herein, Plaintiffs have commenced New York arbitration against Defendant in accordance with the Federal Arbitration Act 9 U.S.C. § 1 *et seq.* by appointing an arbitrator and demanding that Defendant do the same.

3.      The arbitration proceedings arise out of three (3) charter parties each between the three (3) named Plaintiffs and Defendant.  True copies of the fixture recaps and special clauses evidencing these charter parties are attached hereto as and will be specifically identified *infra*.

4.      Venue is proper in this district because there is or will be during the pendency of this action property due and owing to the Defendant within this district and in the hands of a non-party garnishee, namely Bank of America, N.A. ("Bank of America") which has an office and place of business within this Judicial District.

5.      It is believed that non-party Garnishee Bank of America may be holding property subject to this maritime attachment since Defendant PES banks with Bank of America and has paid Plaintiffs from its New York Bank of America account in the past, as will be more fully discussed herein.

**PARTIES**

6.      Plaintiff Skyview is a foreign corporation organized and existing under foreign law with a manager with an office and principal place of business in Greece.

7.      Plaintiff Gulfview is a foreign corporation organized and existing under foreign law with a manager with an office and principal place of business in Greece.

8.      Plaintiff Bayview is a foreign corporation organized and existing under foreign law with a manager with  an office and principal place of business in Greece.

9.      Defendant PES has a principal place of business in Philadelphia, PA and is organized and exists under Delaware law.

**DEFENDANT PES' BREACHES OF THE CHARTER PARTIES**

**M.T. APACHE CHARTER PARTY**

10.     On or about February 22, 2019, Plaintiff Bayview entered into a charter party in which it agreed to charter the M.T. APACHE, a petroleum tanker, to Defendant PES in accordance with the fixture recap attached hereto as **Exhibit 1**.  The charter party consists of a fixture recap, the Sun Clauses, and the ASBATANKVOY form.

11.     While loading cargo in performance of the charter party at Djeno Terminal in the Republic of the Congo, cargo dues were incurred in the amount of $146,295.40.

12.     Paragraph 4 under the "Special Provisions" of the fixture recap dated February 22, 2019 provides that these expenses are for the Charterer's (Defendant PES) account.

13.     In accordance with the charter party dated February 22, 2019, Plaintiff Bayview invoiced Defendant PES for these charges in the amount of $146,295.40.  A true and accurate copy of the invoice and the supporting documentation is attached hereto as **Exhibit 2**.

14.     Despite due demand, as of the date of the filing of this Verified Complaint, Defendant PES has not satisfied this invoice.

15.     The applicable "Sun Clauses"  (attached hereto as **Exhibit 3**) of the charter party provide that the initiator of the claim may commence arbitration in the City of New York or the US District Court for the Eastern District of Pennsylvania.  As the initiating party, Plaintiff Bayview commenced arbitration in New York on July 18, 2019 to recover the cargo dues outstanding.  See Bayview Demand for Arbitration, attached hereto as **Exhibit 4**.

**M.T. RUNNER CHARTER PARTY**

16.     On or about March 21, 2019, Plaintiff Gulfview entered into a charter party in which it agreed to charter the M.T. RUNNER, a petroleum tanker, to Defendant PES in

accordance with the fixture recap attached hereto as **Exhibit 5**.  The charter party consists of a fixture recap, the Sun Clauses, and the ASBATANKVOY form.

17.     While loading cargo in performance of the charter party at Djeno Terminal in the Republic of the Congo, cargo dues were incurred in the amount of $140,343.86.

18.     Paragraph 4 under the "Special Provisions" of the fixture recap dated March 21, 2019 provides that these expenses are for the Charterer's (Defendant PES) account.

19.     In accordance with the charter party dated March 21, 2019, Plaintiff Gulfview invoiced Defendant PES for these charges in the amount of $140.34.86.  A true and accurate copy of the invoice and the supporting documentation is attached hereto as **Exhibit 6**.

20.     Despite due demand, as of the date of the filing of this Verified Complaint, Defendant PES has not satisfied this invoice.

21.     The applicable "Sun Clauses" of the charter party (**Exhibit 3**) provide that the initiator of the claim may commence arbitration in the City of New York or the US District Court for the Eastern District of Pennsylvania.  As the initiating party, Plaintiff Gulfview commenced arbitration in New York on July 18, 2019 to recover the cargo dues outstanding. See Gulfview Demand for Arbitration, **Exhibit 7**.

**M.T. SPEEDWAY CHARTER PARTY**

22.     On or about April 10, 2019, Plaintiff Skyview entered into a charter party in which it agreed to charter the M.T. SPEEDWAY, a petroleum tanker, to Defendant PES in accordance with the fixture recap attached hereto as **Exhibit 8.**  The charter party consists of a fixture recap, the Sun Clauses, and the ASBATANKVOY form.

23.     In the process of performing the voyage pursuant to the charter party, Plaintiff Skyview was required to heat the cargo and incurred $45,504.60 of expenses associated with the heating.

24.     Defendant PES is responsible for these expenses in accordance with the charter party and the documentation attached to the invoices sent to Defendant PES.  A true and accurate copy of the invoices with supporting documentation is attached hereto as **Exhibit 9**.

25.     Despite due demand, Defendant PES has failed to satisfy this outstanding amount.

26.     Plaintiff Skyview is also entitled to demurrage[1] incurred as a result of delays at the loading and discharge ports.

27.     The Laytime Statement, Statement of Facts, and other supporting documentation attached hereto as **Exhibit 9** establish that Plaintiff Skyview is entitled to $124,739.77 in demurrage as a result of delays for the account of Defendant PES.

28.     Invoice Number 8013 for the outstanding demurrage was sent to Defendant PES on May 30, 2019.  To date, no portion of the $124,739.77 has been paid despite due demand. Further, Defendant has not expressed any issues or disputes with Plaintiff Skyview's calculation of same.

29.     The applicable "Sun Clauses" of the charter party (**Exhibit 3**) provide that the initiator of the claim may commence arbitration in the City of New York or the US District Court for the Eastern District of Pennsylvania.   As the initiating party, Plaintiff Gulfview commenced arbitration in New York on July 18, 2019 to recover the cargo dues outstanding. See Skyview Demand for Arbitration, **Exhibit 10**

---

[1] Demurrage is a form of liquidated damages which the Charterer (Defendant PES) pays the ship owner (Plaintiff Skyview) for its delayed operations of loading/unloading. The charter party provides for demurrage and the method of calculating same.

**FACTS COMMON TO ALL CHARTER PARTIES**

30.     All three (3) charter parties discussed above are composed of nearly identical fixture recaps, the same "Sun Clauses," and the ASBATANKVOY form.

31.     All three (3) charter parties call for arbitration of "any and all differences and disputes that cannot be resolved between the parties" in either the United States District Court for the Eastern District of Pennsylvania or arbitration in the City of New York, at the option of the initiator of the proceeding.

32.     Plaintiffs have commenced arbitration in New York by appointing their arbitrator on July 18, 2019.

33.     In maritime arbitration proceedings, arbitrators routinely award prevailing parties their attorneys' fees, the arbitrators' fees, and costs.  This is consistent with Clause 24 of the ASBATANKVOY form which provides that the arbitrators may award the prevailing party its attorneys' fees and costs.

**RULE B MARITIME ATTACHMENT**

34.     Given the factual background set out above, Defendant PES is liable in damages to pay the following sums to Plaintiffs:

| | | |
|---|---|---|
| A. | SPEEDWAY: | $45,504.60 |
| | | $124.739.77 |
| B. | RUNNER: | $140,343.86 |
| C. | APACHE: | $146,295.40 |
| D. | TOTAL PRINCIPAL CLAIM: | **$456,883.63** |
| E. | Interest (5 % compounded quarterly for 1 year): | $23,276.09 |
| F. | Plaintiffs' Anticipated Attorneys' Fees | $75,000 |

G.      Arbitrator's Anticipated Fees                    $50,000

H.      Total:                                           **$605,159.72**

35.     Upon information and belief, non-party Garnishee Bank of America has offices
and places of business this Judicial District.  Bank of America is a banking institution with
offices throughout the United States.

36.     Upon information and belief, Defendant PES holds bank accounts or other assets
at Bank of America in this District.

37.     On or about May 30, 2019, Defendant PES sent funds due and owing to Plaintiffs
from its "Bank of America, N.A. – New York, NY- United States of America" bank account.

38.     Since Defendant PES has sent substantial prior payments to Plaintiffs from its
New York Bank of America account, Plaintiffs believe that Bank of America may be holding
funds, accounts, credits, or other property of Defendant PES.

39.     Upon information and belief, Garnishee Bank of America holds property
belonging to Defendant PES in this District.

40.     Plaintiff seeks security for its already filed New York arbitration proceedings.

41.     Although Defendant PES is registered to do business in New York with the
Division of Corporations, it cannot be found within the district within the meaning of
Supplemental Admiralty Rule B.

42.     As stated on its website, Defendant PES' headquarters is in Philadelphia, PA.
Further, the attached website printout indicates that PES operates the largest refining complex on
the Eastern Seaboard.  See **Exhibit 11**.  None of these facilities are in the Southern District of
New York.

43.     As demonstrated by the attached affidavit, Plaintiff has attempted to search for the Defendant in this Judicial District, but has been unable to locate any offices or other conditions that would subject Defendant to being "found" within the District.

44.     The Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendant has, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of a garnishee within the District including but not limited to BANK OF AMERICA, N.A.

45.     The Plaintiff seeks an order from this Court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching, *inter alia*, any property of the Defendant held by BANK OF AMERICA, N.A.  or any other garnishees within the District for the purpose of obtaining security for the now pending arbitration proceedings.

**WHEREFORE**, Plaintiffs pray:

A.     That process in due form of law issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged in the Verified Complaint, failing which default judgment be entered against it in the sum of **US $605,159.72**

B.     That since the Defendant cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching all goods, chattels, credits,

letters of credit, bills of lading, funds, effects, debts and monies, tangible or intangible, or any other funds up to the amount of **US $605,159.72** belonging to, due or being transferred to, from, or for the benefit of the Defendant PHILADELPHIA ENERGY SOLUTIONS REFINING AND MARKETING LLC including but not limited to such property as may be held, received or transferred in Defendant's name or as may be held, received or transferred for its benefit at, moving through, or within the possession, custody or control of BANK OF AMERICA, N.A. or any banking/financial institutions and/or other institutions or such other garnishees to be named, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Verified Complaint.

      C.    That this Court award Plaintiffs the attorneys' fees and costs incurred in this action; and

      D.    That the Plaintiffs have such other, further and different relief as the Court deems just, proper and equitable.

Dated: New York, NY
       July 19, 2019

              Attorneys for Plaintiffs,
              BAYVIEW SHIPPING CO. S.A.,
              SKYVIEW MARINE CO. S.A., and
              GULFVIEW SHIPPING CO. S.A.

By: _____
              Thomas L. Tisdale (TT5263)
              Timothy J. Nast (TN 8578)
              Tisdale Law Offices, LLC
              60 East 42nd St., Suite 1638
              New York, NY  10036
              Tel:    212-354-0025
              ttisdale@tisdale-law.com
              tnast@tisdale-law.com

## ATTORNEY'S VERIFICATION

State of Connecticut      )
                       )     ss.:    Southport
County of Fairfield         )

1.     My name is Thomas L. Tisdale.

2.     I am over 18 years of age, of sound mind, capable of making this Verification, and fully competent to testify to all matters stated herein.

3.     I am an attorney at Tisdale Law Offices, LLC, attorneys for the Plaintiff.

4.     I have read the foregoing Verified Complaint and know the contents thereof and believe the same to be true and accurate to the best of my knowledge, information and belief.

5.     The reason why this Verification is being made by the deponent and not by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now within this District.

6.     The source of my knowledge and the grounds for my belief are the statements made, and the documents and information received from, the Plaintiff and agents and/or representatives of the Plaintiff.

7.     I am authorized to make this Verification on behalf of the Plaintiffs

Dated:      July 19, 2019
              Southport, CT

_____
Thomas L. Tisdale

# EXHIBIT 1

POTEN AND PARTNERS, INC.

TO : PES
ATTN : YIYI SHI

TO : TRITON SHIPPING
ATTN : JOE MILON

FROM : PETER PERRI

SUBJECT: APACHE/PHILADELPHIA ENERGY SOLUTIONS REFINING AND MARKETING, LLC – C/P
22 FEBRUARY 2019

 --------------------------------------------------------------------------------------------------------------------------------
--------------------

WE ARE PLEASED TO CONFIRM THE FOLLOWING VESSEL WITH ALL SUBJECTS
LIFTED AS FOLLOWS:

THE CHARTER PARTY CONSISTS OF THIS RECAP, THE ASBATANKVOY FORM AND THE SUN
RIDER CLAUSES REFERRED TO BELOW. IN THE EVENT OF CONFLICT BETWEEN THE
PROVISIONS SET OUT HEREIN, THE PRINTED TERMS OF THE CHARTER PARTY FORM AND THE
SUN RIDER CLAUSES, THE ORDER OF PREFERENCE SHALL BE (1) THIS RECAP, (2) THE SUN
RIDER CLAUSES (AS AMENDED BY THIS RECAP) AND (3) THE ASBATANKVOY FORM (AS
AMENDED BY THIS RECAP).

-------------------TITLE-------------------------------------------

CHARTERER : PHILADELPHIA ENERGY SOLUTIONS REFINING + MARKETING, LLC.
OWNER :

BAYVIEW SHIPPING CO. S.A.
C/O NEREUS SHIPPING S.A.
35-39 AKTI MIAOULI, PIRAEUS, GR 185-35, GREECE
TEL: 30 210 429 2262-6
FAX: 30 210 429 2466
TELEX: 211451 / 212751 / 21
EMAIL: PIRAEUS@NEREUSHIP.GR

COMMERCIAL OPERATOR :

NEREUS SHIPPING S.A.
35-39 AKTI MIAOULI STREET, 185-35,
PIRAEUS, GREECE
TEL: 30 210 4292262
FAX: 30 4292334 / 334
EMAIL: PIRAEUS@NEREUSHIP.GR

BROKER : POTEN AND PARTNERS, INC.
C /P FORM : ASBATANKVOY
C/P DATE : 22 FEBRUARY 2019

-------------------VESSEL-------------------------------------------------

VESSEL : APACHE
FLAG : GREEK
DWT:(METRIC TONS) 158,594 M/T
DRAUGHT: 17.168 M
LOA: 274.17 M
BEAM: 48 M
BUILT: MAY 24, 2016
CAPACITY AT 98 %: 169,459 M3 EXCL. SLOPS
SLOP TANK AT 98 %:  3,431 M3
SBT: YES
CBT: N/A
COW: YES
COATED: NO
IGS: YES
TPC: 107.70 MT
BCM: 137.57 M
KTM: 51.40 M COLLAPSABLE TO 50.00 M
COILED: YES
CLASS: ABS
P AND I CLUB: LONDON STEAMSHIP
GRT: 81,413.00 MT
HULL TYPE: DOUBLE HULL
TVE EXPIRATION DATE: DECEMBER 31, 2019
H + M - USD 95,000,000
LAST SIRE INSPECTION : NOVEMBER 7, 2018 / SUNGAI, MALAYSIA / KOCH
                        FRESH SIRE WAS PERFORMED ON 8TH FEBRUARY, 2019 AT
ALGECIRAS, SPAIN BY MOTOROIL
                        (NOT UPLOADED IN SIRE DATABASE YET)

LAST 5 CARGOES/CHARTERERS

KOLE CRUDE / CEPSA
BRASS CRUDE / PETROINEOS
WTI / CASTLETON CL
AZERI CRUDE / IRVING
ZAFIRO CRUDE / LITASCO

INTAKES OF NKOSSA CRUDE : BASIS API 39.7 :

55 FT SWAD – 1,049,000 BBLS OR 137,500 MT AT 16.0 M SWEK OR 52 FT 06 INCH
40 FT FWAD -    725,000 BBLS OR  95,000 MT
39 FT FWAD -    699,000 BBLS OR  91,600 MT
38 FT FWAD –    675,000 BBLS OR  88,500 MT

VESSEL IS FITTED WITH A HIGH LEVEL ALARM SYSTEM

=======================CARGO=======================================

CARGO QUANTITY: PART CARGO MINIMUM  130,000 MT ALWAYS CONSISTENT WITH 55' SWAD
AT DISPORT,
                NO DEADFREIGHT FOR CHARTERER'S ACCOUNT PROVIDED MINIMUM
QUANTITY SUPPLIED,
                CHARTERER'S OPTION TO FULL CARGO.

FREIGHT ALWAYS TO BE MADE ON B/L QTY BUT MINIMUN 130,000 M/T

GRADE(S): CRUDE OIL(S)

SEGREGATION: MAX 2 GRADES WVNS.

HEAT: NO HEAT - AS AN OPTION
CHARTS OPTION TO INSTRUCT VESSEL TO MAINTAIN LOADED TEMP OR TO HEAT UP TO MAX 125 DEG F
AND PAYING ACTUAL COST OF BUNKERS CONSUMED AND TO BE PAID UPON RECEIPT OF MASTERS DOCUMENTED
INVOICE"

========================DATES========================================

LAYDAYS: **7- 11 MARCH 2019 (0001-1600 HRS) A TWO DAY LAYCAN IN CHARTERERS OPTION DECLARABLE BY 1200 HRS NY FEBRUARY 25, 2019**

CURRENT POSITION: FOC, VESSEL IS DRIFTING OFF LIBERIA.

ETA BASIS: DJENO – 26TH FEBRUARY 2019 AM HRS LT - AGW

========================GEOGRAPHICAL===========================

LOAD:  1/2 SAFE PORT(S) PLACES WAF (NIGERIA – ANGOLA RANGE) EXCLUDING INNER BERTHS

DISCHARGE: 1/2 SAFE PORTS USAC IF NYNNGWB EXCLUDING FLORIDA, MAINE, MARYLAND + NORTH CAROLINA.
    AND/OR: 1/2 SAFE PORTS USG PORT(S) EXCLUDING  LOOP AND FLORIDA.
    AND/OR: 1/2 SAFE PORTS CARIBS EXCLUDING CUBA,ORINOCO,HAITI AND ST. CROIX BUT INCLUDING  PUERTO RICO/ BAHAMAS/
          ST.LUCIA/ TRINIDAD/ ST. EUSTATIUS/ CAYMAN ISLAND/AND  CAICOS ISLAND.
    AND/OR: 1/2 SAFE PORTS ECC ALWAYS  WIWL
       OR: 1/2 SAFE PORTS UKC (G-H RANGE)
       OR: 1/2 SAFE PORTS EUROPEAN MED NEOBI GREECE EXCLUDING ALBANIA, YUGOSLAVIA AND FORMER YUGO

       (ALWAYS IN GEOGRAPHICAL ROTATION)

       (MAX 3 PORTS TOTAL LOAD / DISCHARGE)

========================FINANCIAL===================================

FREIGHT RATE:  WS 62.5  - IF USG DISCHARGE
                WS 65     - IF USAC/CARIBS DISCHARGE
                WS 67.5  - IF ECC/UKC-MED DISCHARGE

2019 WS TO APPLY

OVERAGE IF ANY AT 50% OF FIXING

TOTAL LAYTIME ALLOWED: PER WS

DEMURRAGE RATE: USD 27,500 PDPR

LADEN SPEED: VESSEL TO PERFORM LADEN VOYAGE AT 13 KTS UPTO 14 KTS WSNP IN CHARTERERS OPTION.

FREIGHT PAYABLE TO: IN U.S. DOLLARS VIA TELEGRAPHIC TRANSFER TO:

CITIBANK NA, LONDON BRANCH
CGC CENTRE, CANARY WHARF E14 5LB-LONDON-UK
SWIFT : CITIGB2L
IBAN   : GB83CITI18500817727313
ACCOUNT NUMBER : 17727313
CURRENCY : USD
ACCOUNT NAME : NEREUS SHIPPING SA
USD CORRESPODENT BANK : CITIBANK NA, NEW YORK
SWIFT/BIC : CITIUS33

==========================COMMISSION============================

1.25 PCNT ADDRESS (SEE SUN COMMISSION CLAUSE NO. 28)
1.25 PCNT TO POTEN AND PARTNERS, INC. ON FREIGHT/DEADFREIGHT/DEMURRAGE

========================WAIVER OF SIGNED CHARTER PARTY===========

THE PARTIES AGREE THAT THE SIGNED CHARTER PARTY COUNTERPARTS WILL
NOT BE EXCHANGED. INSTEAD, EACH WILL CONFIRM, IN WRITING (INCLUDING
BY FAX OR TELEX), THAT THE TERMS SET OUT HEREIN ARE ACCEPTED.

========================SPECIAL PROVISIONS=======================

1. THE FOLLOWING REVISIONS TO PARTS I AND II OF THE ASBATANKVOY ARE AGREED BY THE PARTIES:

   PART 1 (L) DELETE AS AMENDED CL.7

   PART 1 (K): THE PARTIES SELECT NEW YORK.

   PART II, CLAUSE 6, LINE 2: DELETE "LETTER, TELEGRAPH, WIRELESS OR TELEPHONE"
   AND INSERT "IN WRITING (INCLUDING BY FAX OR E-MAIL)"

   PART II, CLAUSE 14(A): IN THE LAST SENTENCE, REPLACE THE WORDS "TIME OCCUPIED"
WITH THE WORDS
   "ADDITIONAL TIME OCCUPIED (AS COMPARED TO THE VPYAGE ORIGINALLY INTENDED)"

   PART II, CLAUSE 21: ADD THE FOLLOWING SENTENCE AT THE END OF THE CLAUSE:
   "CHARTERER SHALL HAVE A LIEN ON THE VESSEL FOR ANY AMOUNTS DUE FROM OWNER
TO CHARTERER HEREUNDER."

   PART II, CLAUSE 26: THIS CLAUSE IS DELETED IN ITS ENTIRETY.

2. DELAY AT DISCHARGE PORT CLAUSE:
   IF VESSEL IS DELAYED AT DISPORT AS A RESULT OF HOSTILITIES, THEN
   ALL TIME TO COUNT IN FULL AS LAYTIME OR DEMURRAGE IF VESSEL IS
   ON DEMURRAGE.

3. EXXON D+A CLAUSE

4. ANY TAXES AND/OR DUES AND OR LEVIES ON CARGO AND/OR FREIGHT AND
   OR VESSEL AT LOAD OR DISCHARGE PORT NOT COVERED UNDER WORLDSCALE
   TO BE FOR CHARTERER'S ACCOUNT.

5. OWNER WARRANTS VESSEL HAS A CLOSED LOADING SYSTEM.

6. GABONESE TAX CLAUSE - 'IF GABON, GABONESE SHIPPING COUNCIL TAX TO
   BE FOR CHARTERERS ACCOUNT.'

7. VESSEL TO ARRIVE LOADPORT WITH CLEAN BALLAST

8. SUN WEST AFRICA BALLAST CLAUSE.

   OWNER WARRANTS VESSEL WILL ARRIVE AT LOAD PORT WITH SUFFICIENT
   CLEAN BALLAST ON BOARD (APPROXINATELY 30 PCT OF SDWT) FOR PROPER
   MANEUVERABILITY. OWNER FURTHER WARRANTS VESSEL IS ABLE TO
   DEBALLAST AND LOAD CARGO SIMULTANEOUSLY WITH TWO VALVE SEGREGATION
   WHILE MAINTAINING 30 PER CT OF SUMMER DEADWEIGHT AND WITH THE
   VESSEL'S PROPELLER AND RUDDER PROPERLY IMMERSED AT ALL TIMES.
   ALL DELAYS, LOSSES AND EXPENSES INCURRED DUE TO VESSEL'S NON
   COMPLIANCE WILL BE FOR OWNER'S ACCOUNT.

9. ANY TIME AND OR EXPENSE IN OBTAINING A VALID TVE CERTIFICATE TO DISCHARGE IN U.S.
   TO BE FOR OWNER'S ACCOUNT.

10. OWNER/MASTER WARRANTS THAT THE H2S CONTENT AND MERCAPTAN LEVEL IN EACH
CARGO TANK PRIOR TO ARRIVAL
    AT LOADPORT WILL NOT EXCEED TERMINAL REGULATIONS.

11.OWNER'S NIGERIAN CLAUSE:
   "ANY DELAYS IN OBTAINING NIGERIAN TASK FORCE PERMISSION TO ENTER OR LEAVE
NIGERIAN
   WATERS TO COUNT IN FULL AS USED LAYTIME OR DEMURRAGE IF ON DEMURRAGE.
   ANY TAXES AND /OR DUES AND/OR LEVIES ON CARGO AND/OR FREIGHT BUT NOT LIMITED
TO
   NIGERIAN CONSERVANCY DUES,NIGERIAN HARBOUR DUES,OIL TERMINAL
DUES,WHARFAGE,NMA
   (NATIONAL MARITME AUTHORITY) FEE, AND ANY OTHER ITEMS AS PER WORLDSCALE
PREAMBLE 12
   AND /OR FIXED AND /OR VARIABLE RATE DIFFERENTIALS AS PER WORLDSCALE TO BE
SETTLED BY THEM DIRECTLY.
   ANY DELAYS IN NIGERIA DUE TO LOCKOUTS, STRIKES, RESTRAINTS, WORK TO RULE, GO-
SLOW, CIVIL
   UNREST TO COUNT IN FULL AS LAYTIME OR DEMURRAGE IF ON DEMURRAGE.

12. OWNER WILL COMPLY WITH THE APPLICABLE U.S. CUSTOMS REGULATION 19 CFR 4.7 (B)
(2) AND
    OBTAIN AND ACTIVELY CODE 3 CUSTOMERS BORDER AND PATROL INTERNATIONAL
CARRIER
    BOND PRIOR TO ARRIVAL AT THE UNITED STATES OR UNITED STATES TERRITORY
DISPORT.

13. IF LOADING GAMBA, OWNERS CONFIRM VESSEL MUST/WILL ARRIVE AT LOADPORT WITH
DEADWEIGHT
    NOT TO EXCEED 150,000 MT.

14. NORTH AMERICA ECA CLAUSE: (N/A – ALREADY INCORPORATED INTO THE 2017 WORLD SCALE)

IF VESSEL IS INSTRUCTED TO CALL A PORT WITHIN ECA,
THEN CHARTERERS TO PAY LADEN LEG ONLY AS PER WORLDSCALE AGAINST MASTERS
STATEMENT/SHIPS LOG. IF VESSEL HAS TO PASS THROUGH AN ECA ZONE TO REACH
NOMINATED PORT THEN CHARTERERS TO PAY THAT PORTION WHILE VESSEL IS IN
ECA AREA AGAINST MASTERS STATEMENT/SHIPS LOG

15. <u>TRADE AND ECONOMIC SANCTIONS AND ANTI-CORRUPTION COMPLIANCE CLAUSE</u>:

1. OWNER REPRESENTS AND WARRANTS THAT NEITHER THE VESSEL, NOR OWNER, OWNER'S SUBSIDIARIES, AFFILIATES OR PARENT COMPANY, OR DISPONENT OWNER, IS A PARTY IDENTIFIED ON THE U.S. TREASURY DEPARTMENT'S LIST OF SPECIALLY DESIGNATED NATIONALS AND BLOCKED PERSONS; THE U.S. COMMERCE DEPARTMENT'S DENIED PERSONS LIST OR ENTITY LIST; THE U.S. STATE DEPARTMENT'S DEBARRED LIST, OR ANY OTHER SIMILAR LIST OF PROHIBITED OR DENIED PARTIES MAINTAINED BY THE U.S. GOVERNMENT, OR ANY OTHER COUNTRY OR SUPRANATIONAL OR INTERNATIONAL GOVERNMENTAL ORGANIZATION, INCLUDING, BUT NOT LIMITED TO, THE EUROPEAN UNION, UNITED KINGDOM AND UNITED NATIONS (A "<u>BLOCKED PERSON</u>"). OWNER FURTHER WARRANTS THAT NEITHER OWNER NOR ANY OF ITS SUBSIDIARIES, AFFILIATES OR PARENT COMPANY, OR DISPONENT OWNER IS ORGANIZED UNDER THE LAWS OF, ACTING AT THE DIRECTION OF, OR OPERATING UNDER THE FLAG OF, ANY COUNTRY SUBJECT TO A COMPREHENSIVE EMBARGO OR SANCTIONS PROGRAM OF THE UNITED STATES OR ANY OTHER COUNTRY OR SUPRANATIONAL OR INTERNATIONAL GOVERNMENTAL ORGANIZATION, INCLUDING, BUT NOT LIMITED TO, THE EUROPEAN UNION, UNITED KINGDOM AND UNITED NATIONS.
2. OWNER SHALL, AT ALL TIMES WHILE PERFORMING ITS OBLIGATIONS HEREUNDER, COMPLY WITH ALL APPLICABLE TRADE AND ECONOMIC SANCTIONS LAWS AND REGULATIONS OF THE UNITED STATES AND ANY OTHER COUNTRY OR SUPRANATIONAL OR INTERNATIONAL GOVERNMENTAL ORGANIZATION, INCLUDING BUT NOT LIMITED TO THE EUROPEAN UNION, UNITED KINGDOM AND UNITED NATIONS.
3. OWNER SHALL, AT ALL TIMES WHILE PERFORMING ITS OBLIGATIONS HEREUNDER, COMPLY WITH THE BRIBERY AND OTHER ANTI-CORRUPTION LAWS OF THE UNITED STATES AND ANY OTHER COUNTRY OR SUPRANATIONAL OR INTERNATIONAL GOVERNMENTAL ORGANIZATION, INCLUDING BUT NOT LIMITED TO, THE EUROPEAN UNION, UNITED KINGDOM AND UNITED NATIONS. APPLICABLE BRIBERY AND ANTI-CORRUPTION LAWS INCLUDE, BUT ARE NOT LIMITED TO, THE U.S. FOREIGN CORRUPT PRACTICES ACT, THE U.K. BRIBERY ACT AND BRAZIL'S CLEAN COMPANIES ACT.
4. OWNER SHALL DEFEND, INDEMNIFY AND HOLD HARMLESS CHARTERER, ITS SHAREHOLDERS (INCLUDING PES AND ICBC STANDARD BANK PLC), SUBSIDIARIES AND AFFILIATES, AS WELL AS THE OFFICERS, DIRECTORS, EMPLOYEES AND AGENTS OF EACH OF THEM (COLLECTIVELY, THE "<u>CHARTERER INDEMNIFIED PARTIES</u>"), FROM AND AGAINST ANY CLAIM, CAUSE OF ACTION, COST, DAMAGE, EXPENSE, FINE, JUDGMENT, LIABILITY OR PENALTY OF ANY KIND OR NATURE WHATSOEVER (INCLUDING ATTORNEYS FEES AND COSTS OF COURT OR ARBITRATION) (COLLECTIVELY, "<u>COSTS</u>") ARISING OUT OF OR RESULTING FROM OWNER'S BREACH OF THIS ADDITIONAL SPECIAL PROVISION.

16. INTERNATIONAL SHIP & PORT FACILITY SECURITY CODE / MTSA:

1. OWNER SHALL COMPLY WITH THE REQUIREMENTS OF THE INTERNATIONAL SHIP AND PORT FACILITY SECURITY CODE AND THE RELEVANT AMENDMENTS TO CHAPTER XI OF SOLAS (TOGETHER, THE "<u>ISPS CODE</u>") RELATING TO THE VESSEL AND "THE COMPANY" (AS DEFINED BY THE ISPS CODE). IF TRADING TO OR FROM THE UNITED STATES OR PASSING THROUGH UNITED STATES WATERS, OWNER SHALL ALSO COMPLY WITH THE REQUIREMENTS OF THE U.S. MARITIME TRANSPORTATION SECURITY ACT 2002 (THE "<u>MTSA</u>") RELATING TO THE VESSEL AND THE "OWNER" (AS DEFINED BY THE MTSA).

2.  UPON REQUEST, OWNER SHALL PROVIDE CHARTERER WITH A COPY OF THE RELEVANT INTERNATIONAL SHIP SECURITY CERTIFICATE (OR THE INTERIM INTERNATIONAL SHIP SECURITY CERTIFICATE) AND THE FULL-STYLE CONTACT DETAILS OF THE COMPANY SECURITY OFFICER ("CSO").

3.  EXCEPT AS OTHERWISE PROVIDED IN THIS CHARTER PARTY, LOSS, DAMAGES, EXPENSE OR DELAY (EXCLUDING CONSEQUENTIAL LOSS, DAMAGES, EXPENSE OR DELAY) CAUSED BY THE FAILURE OF OWNER OR THE COMPANY/OWNER TO COMPLY WITH THE REQUIREMENTS OF THE ISPS CODE/MTSA OR THIS SECTION 12 SHALL BE FOR OWNER'S ACCOUNT, AND OWNER SHALL INDEMNIFY, DEFEND AND HOLD CHARTERER, ITS AGENTS AND THE CARGO OWNER HARMLESS THEREFROM.  ANY DELAY CAUSED BY SUCH FAILURE SHALL NOT COUNT AS LAYTIME OR TIME ON DEMURRAGE.

4.  CHARTERER SHALL PROVIDE OWNER AND THE SHIP SECURITY OFFICER ("SSO")/MASTER WITH ITS FULL-STYLE CONTACT DETAILS AND, UPON REQUEST, ANY OTHER INFORMATION OWNER REQUIRES TO COMPLY WITH THE ISPS CODE/MTSA.

5.  PROVIDED THAT THE DELAY IS NOT CAUSED BY OWNER'S FAILURE TO COMPLY WITH ITS OBLIGATIONS UNDER THE ISPS CODE/MTSA (IN WHICH CASE ANY DELAY CAUSED BY SUCH FAILURE SHALL BE FOR OWNER'S ACCOUNT AND SHALL NOT COUNT AS LAYTIME OR TIME ON DEMURRAGE), ANY DELAY RESULTING FROM MEASURES IMPOSED BY A PORT FACILITY OR BY ANY RELEVANT AUTHORITY UNDER THE ISPS CODE/MTSA THAT ARE BEYOND THE REASONABLE CONTROL OF OWNER AND CHARTERER SHALL COUNT AS LAYTIME OR TIME ON DEMURRAGE, WITH DEMURRAGE CALCULATED AT 50% OF THE DEMURRAGE RATE.

6.  NOTWITHSTANDING ANYTHING TO THE CONTRARY PROVIDED IN THIS CHARTER, ANY ADDITIONAL COSTS OR EXPENSES WHATSOEVER
    SOLELY ARISING OUT OF OR RELATED TO SECURITY REGULATIONS OR MEASURES REQUIRED BY THE PORT FACILITY OR ANY RELEVANT  AUTHORITY AT THE LOADING OR DISCHARGE PORT IN ACCORDANCE WITH THE ISPS CODE/MTSA AND TO WHICH OWNER AND THE VESSEL WOULD NOT BE SUBJECT BUT FOR THE TRADING OF THE VESSEL TO SUCH LOADING OR DISCHARGE PORT, INCLUDING, BUT NOT LIMITED TO, SECURITY GUARDS, LAUNCH SERVICES, VESSEL ESCORTS, SECURITY FEES OR TAXES AND INSPECTIONS, SHALL BE FOR CHARTERER'S ACCOUNT, UNLESS SUCH COSTS OR EXPENSES RESULT SOLELY FROM A FAILURE BY OWNER TO COMPLY WITH THIS CHARTER PARTY, AN ACT OR OMISSION OF THE MASTER OR CREW, THE PREVIOUS TRADING OF THE VESSEL, THE NATIONALITY OF THE CREW OR THE IDENTITY OF OWNER'S MANAGERS.  ALL MEASURES REQUIRED BY OWNER TO COMPLY WITH THE SHIP SECURITY PLAN SHALL BE FOR OWNER'S ACCOUNT.

7.  IF EITHER PARTY MAKES ANY PAYMENT THAT IS FOR THE OTHER PARTY'S ACCOUNT ACCORDING TO SPECIAL PROVISION 16, THE OTHER PARTY SHALL INDEMNIFY THE PAYING PARTY.

8.  WHEN THE VESSEL CALLS IN THE UNITED STATES, INCLUDING ANY U.S. TERRITORY, THE FOLLOWING PROVISIONS SHALL APPLY WITH RESPECT TO ANY APPLICABLE SECURITY REGULATIONS OR MEASURES:

(a)  **REPORTING** – THE VESSEL OR ITS AGENTS SHALL REPORT AND SEND ALL NOTICES AS REQUIRED TO OBTAIN ENTRY AND EXIT CLEARANCES FROM THE RELEVANT U.S. AUTHORITIES.  ANY DELAY CAUSED BY THE FAILURE TO SO REPORT SHALL BE FOR OWNER'S ACCOUNT, UNLESS SUCH FAILURE TO REPORT IS CAUSED BY OR ATTRIBUTABLE TO CHARTERER OR ITS REPRESENTATIVES OR AGENTS INCLUDING, BUT NOT LIMITED TO, THE SHIPPER AND/OR RECEIVER OF THE CARGO.

(b)  **CLEARANCES** – UNLESS CAUSED BY OWNER'S ACT OR FAILURE TO ACT IN COMPLIANCE WITH THIS CHARTER PARTY, ANY DELAY SUFFERED OR TIME LOST IN OBTAINING THE ENTRY AND EXIT CLEARANCES FROM THE RELEVANT U.S. AUTHORITIES SHALL COUNT AS LAYTIME OR TIME ON DEMURRAGE; PROVIDED THAT THE DEMURRAGE RATE TO BE APPLIED IN ANY CASE

WHERE DELAY IS NOT CAUSED BY CHARTERER'S NEGLIGENCE SHALL BE CALCULATED AT 50% OF THE DEMURRAGE RATE.

(c)   **EXPENSES** – ANY EXPENSES OR ADDITIONAL FEES RELATING TO THE CARGO, EVEN IF LEVIED AGAINST THE VESSEL, THAT ARISE OUT OF THE SECURITY MEASURES IMPOSED AT THE LOADING PORT AND/OR THE DISCHARGE PORT AND/OR ANY OTHER PORT TO WHICH CHARTERER ORDERS THE VESSEL, SHALL BE FOR CHARTERER'S ACCOUNT.

17.   BASIC VESSEL REQUIREMENTS:  (APRIL 2015)

THE VESSEL SHALL BE SUITABLE IN EVERY WAY FOR LOADING AND DISCHARGING THE CARGO AT THE DECLARED LOADING
AND DISCHARGE PORTS AND TERMINALS, AND SHALL COMPLY IN FULL WITH ALL APPLICABLE PROCEDURES, RULES AND
REGULATIONS OF SUCH LOADING AND DISCHARGING PORTS AND TERMINALS.  OWNER WARRANTS THAT THE VESSEL IS NOT,
AND IS NOT OWNED, CONTROLLED OR AFFILIATED WITH, A BLOCKED PERSON (AS DEFINED IN SECTION 14.1 HEREOF).  ANY
COSTS, EXPENSES, FINES OR PENALTIES INCURRED BY OWNER OR CHARTERER BY REASON OF THE VESSEL NOT BEING OF
THE ABOVE DESCRIPTION AND TIME LOST THEREBY SHALL BE FOR OWNER'S ACCOUNT.

18.  SEIZURE AND ARREST: (APRIL 2015)
IF THE VESSEL IS SEIZED, ARRESTED OR OTHERWISE DETAINED BY A THIRD PARTY NOT ARISING FROM ANY ACT OR OMISSION
OF CHARTERER, OWNER SHALL INDEMNIFY AND HOLD HARMLESS CHARTERER FOR ALL DAMAGES, LOSSES, CLAIMS,
JUDGMENTS, COSTS AND EXPENSES ARISING OUT OF OR RESULTING THEREFROM, AND ANY TIME LOST SHALL NOT COUNT
AS LAYTIME.

19. FOR FREIGHT CALCULATION PURPOSES, THE PLACE OF LIGHTERING SHALL NOT CONSIDERED A DISCHARGE PORT
OR DISCHARGE BERTH WHETHER OR NOT DESIGNATED AS SUCH BY WORLDSCALE OR OTHER ORGANIZATIONS
HAVING JURISDICTION, PROVIDED THE DESIGNATED LIGHTERING AREA IS A CUSTOMARY LIGHTERING ANCHORAGE
FOR THAT DISCHARGE PORT.

--------------------------------------------------------------------------------------------------------------------------------------------------------------------

THE FOLLOWING SUN CLAUSES DATED JUNE 12, 1998 NO. 1-34 WITH ALTERATIONS AND DELETIONS AS LISTED BELOW
ARE HEREBY INCORPORATED IN THIS CHARTER PARTY.

1. HOURS/TERMS/CONDITIONS:
LINE 2: AFTER 'CONDITIONS' ADD 'AS AMENDED' LAYTIME PER WS

2. ARBITRATION OF SMALL CLAIMS: REVISED 4/20/15
THE PARTIES AGREE, THAT ANY DISPUTES RELATING TO CLAIMS OF $50,000 OR LESS IN THE AGGREGATE THAT ARE SUBMITTED
TO ARBITRATION IN ACCORDANCE WITH THIS CHARTER SHALL BE GOVERNED BY THE SHORT FORM ARBITRATION PROCEDURE ADOPTED
BY THE SOCIETY OF MARITIME ARBITRATORS.

3. GENERAL AVERAGE: REVISED 4/20/15
  GENERAL AVERAGE SHALL BE ADJUSTED, STATED AND SETTLED ACCORDING TO
YORK/ANTWERP RULES, 1974, AS
 AMENDED 1994, WHICH RULES SHALL BE DEEMED TO BE A PART OF THIS CHARTER
PARTY, AND AS
  TO MATTERS NOT PROVIDED FOR BY THOSE RULES, ACCORDING TO THE LAWS AND
USAGES AT THE PORT OF
  NEW YORK.

4. CARGO RETENTION CLAUSE:
  DELETE IN IT'S ENTIRETY INSERT' AMOCO CARGO RETENTION CLAUSE AFTER
'FREE FLOWING' INSERT 'LIQUID AND PUMPABLE'.

5. . COMPLIANCE WITH REQUIREMENTS:(REVISED APRIL 2015)
  OWNER WARRANTS THAT IT IS A MEMBER OF THE INTERNATIONAL TANKER OWNER
 POLLUTION FEDERATION, LIMITED(ITOPF) AND WILL COMPLY WITH ALL APPLICABLE
 U.S.FEDERAL, STATE, AND LOCAL AND ALL FOREIGN LAWS, INTERNATIONAL
 TREATIES AND CONVENTIONS, TREATIES, PROTOCOLS OR OTHER AGREEMENTS
 RELATED TO THE NAVIGATION, MANAGEMENT, HANDLING OR OPERATION OF THE
 VESSEL AND  APPLICABLE  TERMINAL RULES AND REGULATIONS INCLUDING, BUT
 NOT LIMITED TO, CUSTOMS REGULATIONS; THE OIL POLLUTION ACT OF 1990; ALL
 APPLICABLE PORT RULES AND REGULATIONS; AND WILL HAVE AND CARRY ABOARD
 THE VESSEL A U.S.FEDERAL MARITIME COMMISSION CERTIFICATE OF FINANCIAL
 RESPONSIBILITY (OIL POLLUTION) AS ISSUED BY THE UNITED STATES COAST
 GUARD, AND A CERTIFICATE OF INSURANCE AS DESCRIBED IN THE CIVIL
 LIABILITY CONVENTION FOR OIL POLLUTION DAMAGE. IN NO CASE SHALL
 CHARTERER BE LIABLE FOR USED LAYTIME, DEMURRAGE, OR OTHER DELAY AS A
 RESULT OF OWNER'S FAILURE TO COMPLY WITH THE AFOREMENTIONED OBLIGATIONS,
 AND ANY LOSSES, DIRECT EXPENSES OR DIRECT DAMAGES ARISING AS A RESULT OF
 SUCH FAILURE TO COMPLY WITH THIS CLAUSE WILL BE FOR OWNER'S ACCOUNT.
 THIS DOES NOT RELEASE CHARTERERS FROM THEIR RESPONSIBILITY TO
 NOMINATE VESSEL TO AND CLEAR THE VESSEL WITH ALL LOAD AND DISCHARGE
 PORT(S)/TERMINALS(S) PRIOR TO LIFTING SUBJECTS.

  6. INSURANCE: (REVISED APRIL 2015) –
   OWNER WARRANTS THAT FROM THE TIME THE VESSEL IS OBLIGATED TO PROCEED
TO THE LOADING
   PORT(S) AND THROUGHOUT THE VESSEL'S SERVICE UNDER THIS CHARTER PARTY,
OWNER
   SHALL MAINTAIN THE FOLLOWING INSURANCE WITH RESPECT TO THE VESSEL AT
OWNER'S EXPENSE:

1. HULL AND MACHINERY INSURANCE INCLUDING COLLISION LIABILITY IN AN AMOUNT EQUAL TO
THE FULL COMMERCIAL VALUE OF THE VESSEL, ~~THE UNDERWRITERS OF SUCH INSURANCE~~
~~TO WAIVE ALL RIGHTS OF SUBROGATION AGAINST CHARTERER;~~
2. PROTECTION AND INDEMNITY INSURANCE ON A FULL ENTRY BASIS WITH AN INTERNATIONAL
GROUP P&I CLUB, SUCH INSURANCE TO INCLUDE, BUT NOT BE LIMITED TO: COVERAGE IN
RESPECT OF LOSS OF OR DAMAGE TO THE CARGO; COVERAGE FOR INJURIES TO OR DEATH
OF MASTERS, MATES AND CREW; COLLISION LIABILITIES NOT INSURED UNDER THE H&M
POLICY; EXCESS COLLISION LIABILITIES; CARGO LEGAL LIABILITIES; AND POLLUTION
LIABILITIES.  THE LIMIT OF SUCH INSURANCE SHALL BE AS ESTABLISHED BY THE RULES OF
THE INTERNATIONAL GROUP OF P&I CLUBS EXCEPT FOR POLLUTION LIABILITIES, WHICH
SHALL BE LIMITED TO THE MAXIMUM POLLUTION LIMIT OFFERED THROUGH THE P&I CLUBS OF
THE INTERNATIONAL GROUP (CURRENTLY US $1 BILLION).  ~~CHARTERER SHALL BE NAMED AS~~
~~AN ADDITIONAL ASSURED ON ALL P&I CLUB ENTRIES (SUBJECT TO MISDIRECTED ARROW~~
~~CLAUSE), AND THE P&I CLUB SHALL WAIVE ALL RIGHTS OF SUBROGATION AGAINST~~
~~CHARTERER;~~ AND

3.    HULL AND P&I WAR RISK INSURANCE WITH A LIMIT EQUAL TO THE FULL COMMERCIAL VALUE
      OF THE VESSEL, ~~SUCH INSURANCE TO WAIVE ALL RIGHTS OF SUBROGATION AGAINST~~
      ~~CHARTERER.~~
      OWNER SHALL PROVIDE TO CHARTERER, ON REQUEST, EVIDENCE OF SUCH
      INSURANCE.  ~~ANY EXTRA INSURANCE ON FREIGHT AND/OR CARGO, DUE TO VESSEL'S AGE,~~
      ~~CLASSIFICATION, AND/OR FLAG, IS FOR OWNER'S ACCOUNT, AND CHARTERER SHALL HAVE~~
      ~~THE RIGHT TO "DEDUCT" SUCH EXTRA INSURANCE COSTS FROM FREIGHT DUE OWNER.~~

  7. POLLUTION PREVENTION AND RESPONSIBILITY:
       LINE 11 DELETE FROM THE WORD "ANY" THROUGH LINE 13 TO THE WORD "EXPENSE".

  8. DISPUTE RESOLUTION:

  9. ETA:

  10. CLEAN BALLAST:

  11. BUNKER:

  12. DIVERSION:

  13. CARGO SHIFTING CLAUSE:

  14. SUN SPEED CLAUSE:
       LINE 2 INSERT ' SEE MAIN TERMS ABOVE'
       LINE 4 TO 13 DELETE IN IT'S ENTIRETY

  15. HEATING:
       ADD 'AT CHARTERERS OPTION'
       DELETE ANY REFERENCE TO '135' INSERT '125'
       AT END ADD FOLLOWING 'ANY COST FOR RAISING CARGO TEMPERATURE
       TO BE PAID BY CHARTERERS UPON RECEIPT OF MASTER'S INVOICE' (SEE MAIN BODY OF
  C/P).

  16. CHANGE OF DESTINATION/BILL OF LADING INDEMNITY CLAUSE:

  17. AGENCY: (REVISED APRIL 2015):
       IT IS UNDERSTOOD AND AGREED CHARTERER RESERVES THE RIGHT TO APPOINT AGENTS
  WHOSE FEES ARE COMPETITIVE WHO WILL
       ACT AS THE AGENT FOR, AND BE SOLELY RESPONSIBLE TO, THE VESSEL ENTERING AND
  CLEARING THE LOAD/DISCHARGE PORT(S).
       SUCH AGENTS, ALTHOUGH APPOINTED BY CHARTERER, SHALL BE PAID BY OWNER.

   18. BOARDING CLAUSE:

  19. SURVEY AND SAMPLE:

  20. LIGHTERING:
       LINES 8/9 DELETE 'ONE HALF' INSERT 'FULL',

  21. PUMPING:
       LINE 3 DELETE (OR PRO RATA TIME FOR A PART CARGO)
       LINE 9 AFTER WORD 'MANIFOLD' INSERT 'PROVIDED SHORE FACILITIES PERMIT'
       LINE 10 INSERT 'COWING'
       DELETE LAST SENTENCE OF CLAUSE

22. CRUDE OIL WASHING:
    INSERT AT END 'OVER AND ABOVE THAT SPECIFIED IN VESSEL'S COW MANUAL'.

23. IGS DEPRESSURIZATION:

24. CLAIMS:
    LINE 5 DELETE 'THIRTY (30)' AND INSERT 'SIXTY (60)'
    LINE 7 DELETE 'SIXTY(60)' AND INSERT 'NINETY (90)'

25. LAYTIME-DEMURRAGE EXCEPTIONS REVISED APRIL 2015):
    NOTWITHSTANDING ANYTHING IN PARTS I OR II TO THE CONTRARY, THE FOLLOWING TIME
PERIODS SHALL NOT BE
    CHARGED AGAINST LAYTIME, USED LAYTIME OR TIME ON DEMURRAGE, WHETHER OR NOT
LIGHTERING HAS OCCURRED:
    1. ALL THE TIME BETWEEN EARLY ARRIVAL NOR AT LOAD PORT AND 0600 ON THE FIRST DAY
OF LAYDAYS, UNLESS THE VESSEL
        BERTHS EARLIER WITH CHARTERER'S CONSENT;
    2.   THE FIRST SIX (6) HOURS AFTER NOR AT ALL OTHER LOAD AND DISCHARGE PORTS,
UNLESS THE VESSEL BERTHS EARLIER;
    3.   ALL TIME PROCEEDING FROM ANY FIRST ANCHORAGE TO THE FIRST BERTH AT EACH
PORT UNTIL THE VESSEL IS
        SECURELY MOORED AT THE DESIGNATED LOADING / DISCHARGE BERTH IN ALL
RESPECTS READY TO LOAD OR DISCHARGE
        CHARTERER'S CARGO, IN FREE PRATIQUE, CUSTOMS AND IMMIGRATION CLEARED;
    4.   ALL TIME SPENT DISCHARGING BALLAST WATER OR SLOPS, UNLESS CONCURRENT WITH
CARGO OPERATIONS, BUT ONLY
        TO THE EXTENT IT DOESN'T INTERFERE WITH OR OTHERWISE NEGATIVELY AFFECT
CARGO OPERATIONS;
    5.   ALL TIME LOST DUE TO ANY OTHER CAUSE ATTRIBUTABLE TO THE "DIRECT" FAULT OF
OWNER, THE VESSEL,
        HER MASTER OR CREW, OR AGENTS OR SUBCONTRACTORS OF OWNER.

26. WEATHER:
    DELETE WORD 'LIGHTERING'

27. SLOP:

28. ADDRESS COMMISSION:

29. WAR RISK: (WHERE APPLICABLE)
    LINE 4: DELETE "ON THE DATE OF THIS CHARTER" INSERT " 19 FEBRUARY 2019 "

30. EARLY LOADING:

31. HALF TIME

32. BREACH

33. ISM CLAUSE:

34. YEAR 2000 WARRANTY –  DELETE IN IT'S ENTIRETY

END OF RECAP
-----------------------------------------------------
THANK YOU FOR YOUR SUPPORT AND COOPERATION.

KIND REGARDS,

PETER PERRI

POTEN AND PARTNERS, INC.

# EXHIBIT 2

# NEREUS SHIPPING S.A.

## PIRAEUS (GREECE) OFFICE
### 35/39 AKTI MIAOULI

DATE : 17th May, 2019

INVOICE № :  **7997**
VOY. № : **21/19**

Messrs.  **PHILADELPHIA ENERGY SOLUTIONS REFINING + MARKETING, LLC.**

℅ Messrs. **POTEN AND PARTNERS, INC**

| M.T. "APACHE" – CP 22.02.2019 | |
|---|---|
| **Cargo dues at Djeno Terminal (09.03.2019-10.03.2019) for Charterers account as per supporting Documents:**<br><br>SOCOTRAMP DUES (EUR 130,195.78)*<br><br><br>* 1EUR=1.123657 | **US.$ 146,295.40** |

CITIBANK NA, LONDON BRANCH
CGC CENTRE, CANARY WHARF E14 5LB-LONDON-UK
SWIFT :CITIGB2L
IBAN:  GB83CITI18500817727313
ACCOUNT NUMBER: 17727313
CURRENCY:   USD
ACCOUNT NAME: NEREUS SHIPPING SA
USD CORRESPONDENT BANK : CITIBANK NA, NEW YORK
SWIFT/BIC : CITIUS33

# NEREUS SHIPPING S.A.

### PIRAEUS (GREECE) OFFICE
### 35/39 AKTI MIAOULI

DATE : 17th May, 2019

INVOICE № : **7997**
VOY. № : **21/19**

Messrs.  **PHILADELPHIA ENERGY SOLUTIONS REFINING + MARKETING, LLC.**

℅ Messrs. **POTEN AND PARTNERS, INC**

| M.T. "APACHE" – CP 22.02.2019 | |
|---|---|
| **Cargo dues at Djeno Terminal (09.03.2019-10.03.2019) for Charterers account as per supporting Documents:**<br><br>SOCOTRAMP DUES (EUR 130,195.78)*<br><br><br>* 1EUR=1.123657 | **US.$ 146,295.40** |

CITIBANK NA, LONDON BRANCH
CGC CENTRE, CANARY WHARF E14 5LB-LONDON-UK
SWIFT :CITIGB2L
IBAN:  GB83CITI18500817727313
ACCOUNT NUMBER: 17727313
CURRENCY:   USD
ACCOUNT NAME: NEREUS SHIPPING SA
USD CORRESPONDENT BANK : CITIBANK NA, NEW YORK
SWIFT/BIC : CITIUS33

**Voucher no: 012**

**MINISTÈRE DES TRANSPORTS, DE L'AVIATION CIVILE ET DE LA MARINE MARCHANDE**
**Conseil Congolais des chargeurs**
**Direction Générale**
BP: 741 - Tél.: 294.03.43 - Fax.: 294.03.46
Pointe-Noire

**REPUBLIQUE DU CONGO**
Unité * Travail * Progrès

Pointe-Noire, le 15/03/2019

## FACTURE N°: 0022720190315TEH

Bolloré Transport & Logistics
R E C U  2 7 MAR. 2019
Secrétariat Shipping

# EXPORT

N° Voyage : 24A

| NAVIRE : | APACHE |
| PAVILLON : | GREEK |
| ARMATEUR : | BAYVIEW SHIPPING CO. S.A PANAMA |
| CONSIGNATAIRE : | BOLLORE TRANSPORT & LOGISTICS CONGO |
| DATE DE DEPART : | 2019-03-10 |

FF01191049

| Nature de m/ses | Condi. | Qté | Comm. parti. 60% | % réd | Qté taxée | Taux cpm. | Montant (XAF) |
|---|---|---|---|---|---|---|---|
| HYDROCARBURE | Vrac | 122 641,143 | 73 584,685 | 0 | 73.584,685. | 360,776 | 26 547 588 |

| **MONTANT TOTAL** | 26 547 588 |

**MONTANT €** ===============> 40 471,539

Arrêté la présente facture à la somme de FCFA : Vingt-six millions cinq cent quarante-sept mille cinq cent quatre-vingt-huit./-

Le Directeur Général p.i.





DIRECTION GENERALE Géraldine N'SEMI

40·471.54 +
89·724.24 +

Total:
130·195.78 *

référé 6719 du 25 octobre 2007

③①

**POINTE - NOIRE**
levard Charles de GAULLE
Face Grande Poste
Centre ville

Conditions de paiements: les factures relatives à la commission de participation sont exigibles à vue
fixant les modalités de perception de la commission de participation et de la redevance.

Siège de société : EXPORT20193114234688
CONSEIL CONGOLAIS DES CHARGEURS
PIC : AU CAPITAL DE 300.000.000 Millions FCFA
NIU : M2006110000069140
|RC/M : 2004 3023 du 14/01/2014
Régime d'imposition réel / Résidence fiscale UGE PNR

**Voucher no: 013**





SOCIETE CONGOLAISE DES TRANSPORT SOCOTRAM
ENTREE PAR

**Siège Social**
**5, Avenue Dr Denis LOEMBA**
**Centre Ville "A"**
**Immeuble Les Manguiers**
**BP 4922 POINTE NOIRE**
**République du Congo**
**Tél (242) 629 01 62**
**(242) 636 01 60**
**E-mail : sctrapnr@socotram.com**

**BOLLORE AFRICA LOGISTICS**

**B.P. 816 POINTE NOIRE**
**REPUBLIQUE DU CONGO**

**Pointe Noire le :   11/03/19**

NU : M 2006 11 00 06 646 122

**FACTURE N° : FC1900381   EO/CHMT N°412**

| ARMEMENT : | BAYVEIW SHIPPING CO SA |
| NAVIRE | MT APACHE VOY 21A DU 11/03/2019 |

| Désignation | Qté | U | Tx Redevance | % SOCOTRAM | Montant HT CFA | Montant HT EURO |
|---|---|---|---|---|---|---|
| REDEVANCE 40% SOCOTRAM BRUT | 122 641,143 | TM | 1,829 | 40% | 58 855 239 | 89 724,26 |

Virement à effectuer en faveur de SOCOTRAM auprès de la
BANQUE DELUBAC & CIE , 10 rue Roquépine, 75008
Paris, France, Code BANQUE 12879 , GUICHET 00001,
NUMERO DE COMPTE 22112037834, Clé 24 ,Code IBAN
FR76 1287 9000 0122 1120 3783 424 , BIC
DELUFR22XXX.Banque Intermediaire. NATIXIS SA.
BIC/SWIFT Code: NATXFRPP



Bolloré Transport & Logistics
P  15  2019
N
AYML ANTHONY IGNOUMBA

| | Total TTC |
|---|---|
| Total en CFA : | 58 855 239 |
| Total en EURO : | 89 724,233 |

Arrêté la présente facture à la somme de :   Cinquante huit millions huit cent cinquante cinq mille deux cent trente neuf        F C

Conditions de règlement :        le 21/03/19                                           58 855 23

Société Congolaise de Transport Maritime
Société Anonyme au capital de 100 000 000 F cfa – RCCM/CG/PNR/08 B 342 - LCB : Compte N° 15 609-5001/90 - BCI : Compte N° 0600 123 1560/27

19

# EXHIBIT 3

From: Triton Shipping [Triton@Tritonshipping.com]
Sent: 10 March 2005 18:37
To: Chartering Mailbox
Cc: GREECE
Subject: FW: Sun/Neuses Clauses

TO: CHART LONDON            FROM: CHART NY         3/10/05
CC: PP/SHIP ACCS

RE: SUN/ NEREUS/CLAUSES.
PER YOUR REQUEST HERE ARE CURRENT SUN CLAUSES WE USE IN E-MAIL FORM.

----------SPECIAL PROVISIONS-------------

THE FOLLOWING SPECIAL PROVISIONS ARE HEREBY INCORPORATED IN THIS CP.
1. ASBATANKVOY PART 1(L)-DELETE AS PER AMENDED SUN CLAUSE 7.
2. OWNER WARRANTS VESSEL HAS A CLOSED LOADING SYSTEM IN GOOD WORKING
   ORDER.
3. VESSEL TO ARRIVE LOADPORT WITH CLEAN BALLAST.
4. ANY TIME AND OR EXPENSE IN OBTAINING A VALID TVE CERTIFICATE
   CERTIFICATE TO BE FOR OWNER,S ACCOUNT.
5. OWNER/MASTER WARRANTS THAT THE H2S CONTENT AND MERCAPTAN LEVEL
   IN EACH CARGO TANK PRIOR TO ARRIVAL AT LOADPORT WILL NOT EXCEED
   TERMINAL REGULATIONS.
6. ANY TAXES AND OR DUES AND OR LEVIES ON CARGO AND/OR FREIGHT AND/
   OR VESSEL AT LOAD OR DISCHARGE PORT NOT COVERED UNDER WORLDSCALE
   TO BE FOR CHARTERER,S ACCOUNT.
7. DELAY AT DISCHARGE PORT CLAUSE - IF VESSEL IS DELAYED AT DISPORT AS A
   RESULT OF HOSTILITIES, THEN ALL TIME TO COUNT IN FULL AS LAYTIME OR
   DEMURRAGE IF VESSEL IS ON DEMURRAGE.
8. GABONESE SHIPPING COUNCIL TAX TO BE FOR CHARTERERS ACCOUNT.
9. SUN WEST AFRICA BALLAST CLS: OWNER WARRANTS VESSEL WILL AT LOAD PORT
   WITH SUFFICIENT CLEAN BALLAST ON BOARD (APPROXIMATELY 30 PCT OF SDWT)
   FOR PROPER MANEUVERABILITY. OWNER FURTHER WARRANTSVESSEL IS ABLE TO
   DEBALLAST AND LOAD CARGO SIMULTANEOUSLY WITH TWO VALVE SEGREGATION
   WHILE MAINTAINING 30 PCT OF SUMMER DEADWEIGHT AND WITH THE VESSEL'S
   PROPELLER AND RUDDER PROPERLY IMMERSED AT ALL TIMES. ALL DELAYS,
LOSSES
   AND EXPENSES INCURRED DUE TO VESSEL'S NON COMPLIANCE WILL BE FOR
OWNERS
   ACCOUNT.




                              SUN
                                 VOYAGE CHARTERS
                                 TANKERS
                                 CHARTER PARTY FORM ASBATANKVOY
                                 CLAUSES REVISED 3/18/97


1.    HOURS/TERMS/CONDITIONS:  All "WORLDSCALE" hours, terms and
conditions

as amended are applicable to this Charter Party.  The word "safe" as

used in Part I and II shall require only that the Charterer use due
diligence to order the Vessel only to places which the Master
considers safe for the Vessel.  The U.S. Carriage of Goods by Sea
Act, 46 USCA 1300 et seq., shall apply to this contract. Laytime per

WS.

2.    GENERAL AVERAGE/ARBITRATION: In New York.  The parties agree that any

disputes relating to claims of $50,000 or less in the aggregate that

are submitted to arbitration in accordance with this charter shall be

governed by the Short Form arbitration procedure adopted by the
Society of Maritime Arbitrators.

3.    YORK/ANTWERP RULES, 1974, AMENDED 1994 , shall be deemed to be a part

of this Charter Party.

4.    CARGO RETENTION CLAUSE: (Deleted and replaced with Amoco Cargo
Retention Cl)
       AMOCO CARGO RETENTION CLAUSE:
       IN THE EVENT THAT ANY CARGO REMAINS ON BOARD UPON COMPLETION OF
DISCHARGE, CHARTERER       SHALL HAVE THE RIGHT TO DEDUCT FROM FREIGHT
AN AMOUNT EQUAL TO THE FOB PORT LOADING       VALUE OF SUCH CARGO PLUS
FREIGHT DUE WITH RESPECT THERETO, PROVIDED THAT THE VOLUME OF    CARGO
REMAINING ON BOARD IS FREE FLOWINGLIQUID AND PUMPABLE AS DETERMINED BY AN
       INDEPENDENT PETROLEUM INSPECTOR.  ANY ACTION OR LACK OF ACTION IN
CONNECTION WITH THIS    PROVISION SHALL BE WITHOUT PREJUDICE TO ANY
RIGHTS
OR OBLIGATIONS OF THE PARTIES.

5.    COMPLIANCE WITH REQUIREMENTS:
       (NEW WORDING)
    Owner warrants that it is a member of the International Tanker
    Owner Pollution Federation, Limited, (ITOPF) and will comply with
    all applicable U.S. federal, state, local, and all foreign laws,
    international treaties and conventions, treaties, protocols, or
    other agreements related to the navigation, management, handling,
    or operation of the vessel, and applicable terminal rules and
    regulations including, but not limited to, customs regulations;
    the Oil Pollution Act of 1990; all applicable local port rules
    and regulations; and will have and carry aboard the Vessel a U.S.
    Federal Maritime Commission Certificate of Financial Responsibility
    (Oil Pollution), and a certificate of insurance as described in the
    Civil Liability Convention for Oil Pollution Damage.  In no case
    shall Charterer be liable for used laytime, demurrage, or other
    delay as a result of Owner's failure to comply with the aforemen-
    tioned obligations, and any direct losses, expenses or damages
    arising as a result of such failure to comply with this clause
    will be for Owner's Account.

6.     INSURANCE CLAUSE:  Owner warrants that it has in place coverage for
       oil pollution of U.S. $1 billion with its P & I Club or other
       security device acceptable to Charterer and that this coverage will
       remain in effect  throughout the period of this charter.  Any extra
       insurance on freight and/or cargo, due to Vessel's age,
       classification, and/or flag, is for Owner's account and Charterer
       shall have the right to deduct such extra insurance costs from
       freight due Owner.

7.     POLLUTION PREVENTION AND RESPONSIBILITY:

       Owner warrants that they are a member of itopf and will
       remain so during the term of this charter.

8.     DISPUTE RESOLUTION:  any and all differences and disputes that
cannot
       be resolved between the parties shall be subject to litigation in
the
       u.s. district for the eastern district of pennsylvania or in
       arbitration in the city of new york, at the option of the initiator
       of the proceeding.

       the parties submit to the jurisdiction selected above.

       in the event arbitration is the selected mode, to the extent not in
       conflict with this article, part ii, article 26 of the asbatankvoy
       charter shall apply.

       If during the arbitration, but prior to the award, a party-
appointed
       arbitrator should be unable to continue for any reason, the
       nominating party shall promptly select an alternate.  If the
       chairperson or a sole arbitrator is unable to continue for any
       reason, the parties or their nominees will pick an alternate within
       fourteen (14) days after notice and failing agreement, the
selection
       shall be made by the chief judge of any court of competent
       jurisdiction.

9.     ETA CLAUSE:  Where applicable, the Vessel shall give Charterer an
       estimated time of arrival (ETA) immediately upon sailing from the
       prior discharge port and/or Charterer's load port.  The Vessel
shall
       give the Charterer, and the load and discharge terminals ETA
       120/72/48/24 hours, where applicable, in advance of arrival.
Should
       the Owner not comply with the above, any delay, cost or expense at
       either load or discharge port as a result shall be for Owner's
       account.  The vessel shall not give notice of arrival (NOR) before
       the first day of the laydays, unless Charterer gives its prior
       written approval.

10.    CLEAN BALLAST:  Owner warrants that the Vessel will arrive at the

designated load port(s) with clean ballast, failing which, any
losses, costs and expenses which Charterer sustains shall be for
Owner's account.

11.    BUNKER CLAUSE:  Owner warrants that the Vessel will sail from the
       load port(s) with sufficient bunkers to perform the entire intended
       voyage, and failing that, any losses, costs or expenses Charterer
       sustains shall be for Owner's account.

12.    DIVERSION:  Notwithstanding anything else to the contrary in this
       Charter Party and notwithstanding that loading and/or discharging
       ports may have been nominated and Bills of Lading issued, Charterer
       shall have the continuing right to change its nomination of loading
       and/or discharging ports in accordance with Part I C & D of the
       Charter.  Any extra time and expense incurred by Owner in complying
       with Charterer's orders shall be for Charterer's account and
       calculated in accordance with Part II, Clause 4(c) of this Charter.
       Freight is based on the voyage actually performed.  Charterer shall
       have the right to make as many changes as it deems necessary.

13.    CARGO SHIFTING CLAUSE:  At no time during the voyage shall cargo be
       transferred between Vessel's compartments without the express
written
       consent of Charterers.  Such consent shall be requested by means of
       written radio telex communications, specifying loaded and revised
       ullages and cargo quantities for the tanks concerned and the
reasons
       necessitating a cargo transfer.  Consent of Charterers shall not be
       unreasonably withheld and shall be provided expeditiously by radio
or
       telex communication.  In the event Owner can prove that transfer of
       cargo is necessitated by unavoidable risks to the Vessel's
structural
       integrity or the safety of life or for safe navigation, the prior
       consent of Charterers shall not be required.  However, the Master
       shall inform Charterers of any such circumstances with full details
       as soon as possible thereafter by radio or telex communication.

14.    SUN SPEED CLAUSE:  The Vessel shall proceed from loading port at an
       average speed of about 15 knots WSNPknots ("C/P Speed") weather and
       safe navigation permitting.


15.    HEATING:
As charterer's option,
 The Owner warrants that the Vessel is capable of heating cargo to a
       maximum temperature of 115 degrees Fahrenheit in each tank will
       maintain the
       cargo temperature in accord with Charterer's instructions on the
passage to  discharging port(s) and throughout discharge.  If the cargo
is received on
       board the Vessel at a temperature below 115 Degrees Fahrenheit,
Charterer  has the option to require the Vessel to raise the temperature
to a maximum 115

degrees Fahrenheit and maintain that temperature through discharge.
If the     Vessel fails to maintain the required temperature, and/or raise
the temperature as
       elected by Charterer, and resulting time lost shall not count as
laytime, used     laytime, or time on demurrage and any losses, costs or
expenses incurred by    Owner or by Charterer shall be for Owner's account.
If Vessel is requested to only      heat part of the cargo loaded, any cost
associated with such request will be       prorated for percentage of cargo
heated. ANY COSTS FOR RASING CARGO TEMPERTURE TO BE PAID BY CHARTS UPON
RECEIPT OF MASTER'S INVOICE AND SUPPORTS.

IF HEATING OPTION IS ELECTED BY CHARTERER,S ,COSTS FOR MAINTAINING
HEATING,CARGO TEMPERATURE TO BE FOR CHTRS ACCOUNT UP TO A MAX OF 2.5 WS
POINTS OR PRO-RATA FOR PERCENTAGE OF CARGO HEATED  AND PAID UPON RECEIPT
OF MASTER,S DOCUMENTED INVOICE FOR BUNKERS USED'.

16.   BILL OF DESTINATION/ BILL OF LADING INDEMNITY CLAUSE:
       Charterers shall have the right to order vessel to any port(s) within
the trading      range of this Charter party. Charterers hereby indemnify
Owners against claims   brought by holders of original bills of lading
against claims brought by holders of       original bills of lading against
Owners by reason of Charterers change of  destination in accord with the
format below.

       In addition, should the bill of lading not arrive at the disport
prior to discharge,      Owners agree, at Charterers request, to release the
entire cargo without     presentation of the original bills of lading at the
facility or facilities designated by       Charterer and Charterer agrees to
invoke the "Letter of Indemnity" which     incorporates the form set out below.

       To Owners, Master and Agent of M/T_____ Bulk Cargo Described
as_____ Was Shipped on the Above Vessel by_____ and consigned to
_____ Delivery per Charterer's instructions, and/ or delivery withour
prior      presentation of the bill(s) of lading.

       In consideration of Owner delivering the cargo in accordance with
Charterer's      voyage instructions without presentation of the bill(s)
of lading, we hereby agree    as follows:

A.   To indemnify Owner and hold Owner harmless in respect of any
liability, loss or claim of whatsoever nature which Owner may sustain by
reason of delivering the cargo in accordance with Charterers request.

B.    Provided prompt notice is delivered to Charterer of any such claim, loss or              liability with full particulars and supporting papers (with any requested                         assignment of claim) to pay Owner on
demand the amount of any loss or damage which the Master and/or agents whatsoever may incur as a result of delivering the cargo as aforesaid.

C.    In the event of any proceeding being commenced against Owner or any of its servants or agents in connection with the delivery of the cargo as aforesaid to undertake on Owners behalf to defend the same.

D.    If the vessel or any other vessel or property belonging to Owner should be arrested or detained as a result directly related to this delivery in accord with our request or if as a result the arrest or detention thereof should be threatened, to provide on demand such bail or other security as may be required to prevent such arrest or detention or to secure the release of such vessel or property and to indemnify Owner in respect of any loss, damage or expenses caused by such arrest or detention whether or not the same may be justified.

E.    This letter of indemnity shall automatically become null and void, and our liability hereunder shall cease, upon presentation of one original bill of lading, or after 13 months after completion of discharge, whichever occurs first.

F.    This indemnity shall be construed in accordance with New York law (other than choice of law rules) and each and every person liable under this indemnity shall at your request submit to the jurisdiction of the United States District Court for the Southern District of New York.

     G.  Any and all amounts payable under this undertaking to be in United States dollars.

     For the purpose of calculating laytime or time on demurrage, Charterer shall be allowed an additional three (3) hours free time after hoses are off to put documents on board.

17.   AGENCY CLAUSE:  It is understood and agreed Charterer reserves the right to appoint Agents whose fees are competitive who will act as the Agent for, and be  solely responsible to, the Vessel entering and clearing the load/discharge port(s).

18.   BOARDING CLAUSE:  Owner agrees to allow Charterer's representatives,
     at their risk and expense, to board the Vessel at load, discharge or
     other port of call to observe operations.

19.   SURVEY AND SAMPLE CLAUSE:  Owner agrees to allow an independent surveyor appointed by Charterer and/or Charterer's representatives to
     survey and take samples of cargo and bunker tanks, cofferdams, ballast and slop tanks or any other void space on the Vessel prior

to, during, and after the time of the Vessel's loading and discharge
with extra time, if any, to count as used laytime or time on demurrage if the Vessel is on demurrage, unless caused by the fault or neglect of the Owner, Vessel, her Master, crew or the representatives of any of them.  The independent inspector's work papers setting forth his determination of quality and quantity of cargo, and signed by a Vessel officer, shall be final and binding upon the parties.

20.    LIGHTERAGE CLAUSE: (Revised 7/24/98)
If lightering is requested by Charterer at the customary lightering anchorage for a designated port, time used in lightering shall count as laytime, or time on demurrage, if Vessel is on demurrage. Time shall commence six (6) hours after anchoring or whenever the first lightering barge is "all fast," whichever occurs first; however, delays attributable to weather conditions shall count as full time (or be compensated for at the full demurrage rate if allowed laytime has expired). Any additional charges incurred by the Vessel associated with lightering, including but
not limited to, pilotage, launch services and pollution control
costs/services/fees, are for Owner's account.

Time consumed by the Vessel in moving from loading or discharge port anchorage, whether or not lightering has taken place at the anchorage, to the Vessel's loading or discharge berth will not count as used laytime or time on demurrage.  Any delay after completion of lightering that prevents the Vessel from proceeding to the berth due to tidal conditions shall not count as used laytime or time on demurrage.

For freight calculation purposes, the place of lightering shall not be considered a discharge port or discharge berth whether or not designated as such by Worldscale or other organizations having jurisdiction, provided the designated lightering area is a customary lightering anchorage for that discharge port.

After arrival at the lightering area, and upon completion of the arrival cargo survey, Charterer requests that the Vessel review the calculation to determine the quantity of cargo to be lightered to reach the required draft
for transit to the berth.  If this amount differs from the original
lightering requirement, this must be communicated to the Agent and the Barge Coordinator in order to provide sufficient barge space to accommodate the Vessel's requirement.

If the Vessel fails to meet the required draft upon arrival at the discharge berth, Charterer will file a claim against the Owner for the cost of the excessive lightering.  The "draft" will be calculated as an average of the forward draft, plus the after draft, plus midships draft.

21    PUMPING CLAUSE: SEE CLAUSE 21 AT THE END.

22.    CRUDE OIL WASHING CLAUSE:(Revised 7/24/98)
       Owner warrants that the Vessel is equipped with a Crude Oil
Washing
       System  and that the Officers and Crew are properly qualified by
way
       of certification from a competent authority, to safely operate the
       System and to perform the crude oil washing of cargo tanks in
       accordance with the latest recommendations issued by the
       International Maritime Organization.  Crude Oil Washing to be
       performed concurrently with the discharge and in accordance with
       Charterer's requirements and/or as set out in Vessel's Crude Oil
       Washing Manual.  In addition to the time specified in Clause 21,
any
       time consumed in the performance of Crude Oil Washing to meet the
       above requirement shall constitute used laytime, or time on
       demurrage.  Any additional time taken shall not count as laytime,
or
       if Vessel is on demurrage, as demurrage.  Over and above that
       specified in vessel's COW manual.

23.    IGS DEPRESSURIZATION CLAUSE:  Owner warrants it can and will
       depressurize safely on Charterer's request according to Coast Guard
       and any other government regulations.  The reasonable direct costs
of
       such action shall be for Charterer's account, unless the
       depressurization was required because of a cargo loss for which
Owner
       is responsible.  All time shall count as used laytime or time on
       demurrage.

24.    CLAIMS CLAUSE:  Owner agrees that any demurrage claims it may
allege
       shall be waived and of no effect unless (1) written notice of such
       claims (including by telex) is made and received by Charterer at
its
       Philadelphia, Pennsylvania office within sixty (60)days after
       discharge, and (2) Charterer also receives, at the same location,
       within ninety (90) days after discharge, documentation sufficient
to
       support that claim.  Documentation sufficient to support a
demurrage
       claim shall include, but not be limited to, laytime statements,
       notice of readiness, port logs and the pumping and heating logs for
       the voyage.  Owners and Charterers further agree that with respect
to
       any claim or other unresolved dispute arising out of this Charter,
       unless arbitration or litigation, as per this charter, is commenced
       within one year after completion of discharge or the date when
       discharge would have been completed, such claim or other dispute is
       waived and all liability with respect thereto is discharged.

25.    LAYTIME - DEMURRAGE EXCEPTIONS: (Revised 7/24/98)

Notwithstanding anything in Part I or II to the contrary, the
   following time periods shall not be charged against laytime, used
   laytime or time on demurrage, whether or not lightering has
occurred:

1.   All the time between early arrival NOR at load port and 0600
on
      the first day of laydays, unless the Vessel berths earlier;

2.   The first six (6) hours after NOR at all other load
and
      discharge ports, unless the Vessel berths earlier;

3.   All time proceeding from any first anchorage to the first
berth
      at each port;

4.   All time spent discharging ballast water or slops,
unless
      concurrent with cargo operations., but only to the extent
it
      doesn't interfere with or otherwise negatively affect
cargo
      operations.

26.   WEATHER CLAUSE:  When weather or sea conditions, regardless of
      severity, thereby cause delay to the Vessel in berthing (whether a
      berth is assigned or not),  loading or discharging, one-half of
such
      time shall count as used laytime, or if the Vessel is on demurrage,
      as one-half time on demurrage.

27.   SLOP CLAUSE:  Freight will be paid only on those quantities of
slops discharged  and only to the extent such quantities together with
the
quantity of cargo actually    loaded exceed the minimum quantity required
by this Charter.  In such event,    freight shall be payable at the
overage
rate in accordance with the terms of this       charter.

28.   ADDRESS COMMISSION:  1.25 (one and a quarter) percent address
commission  due Charterer on freight, dead freight demurrage which
Charterer may deduct    from the respective payments.

29.   WAR RISK(WHERE APPLICABLE):   Charterer agrees to pay any
provable    additional cost for the increased hull and machinery war risk
premiums over and       above those in effect on the date of this
Charter.
Any premiums or increases hereto    attributable to closure, i.e.,
blocking
and trapping, crew and office war bonus and    lost hire war risk
insurance shall always be for Owners account.

30.   EARLY LOADING CLAUSE:  In the event Charterer agrees to load the

vessel      prior to commencement of lay days, all such time will  be credited against any time      vessel is on demurrage. For purposes of this
clause time will begin to count when      vessel is all fast at load port.

SUN ISM CLAUSE
Owners guarantee that this vessel complies fully (or will comply by 7/1/98) with the ISM code and is in possession of a valid safety management certificate and will remain so for the entirety of her employment under this charter party, the owners provide charterers with satisfactory evidence of compliance if required to do so and remain fully responsible for any and all consequences arising directly or indirectly from any matters arising in connection with this vessel and the ISM code.


21.     PUMPING CLAUSE:
OWNER WARRANTS THAT THE VESSEL SHALL EITHER (i) DISCHARGE THE FULL CARGO AS DETERMINED BY THE BOL VOLUME WITHIN 24 HURS AT THE DOCK (OR PRORATA TIME FOR A PART CARGO), OR (ii) MAINTAIN THE MAXIMUM PUMPING PRESSURE AT THE SHIP'S MANIFOLD AS REQUESDTED BY THE RECEIVING FACILITY, BUT NEVER EXCEEDING 125 PSI, OR (iii) MAINTAIN THE MAXIMUM DESIGNED PRESSURE OF THE SHIP'S EQUIPMENT, BUT NEVER LESS THAN AN AVERAGE PRESSURE OF 100 PSI AT EACH VESSEL'S MANIFOLD, EXCLUDING A REASONABLE TIME FOR STRIPING TANKS. OWNER FURTHER WARRANTS IT WILL USE ITS BEST EFFORTS TO OBTAIN FROM A SUN REPRESENTATIVE WRITTEN CONFIRMATION OF THE PUMPING PRESSURE AND TIMES REPORTED ON OWNER'S TIME SHEETS AND PUMPING LOGS.  WHENEVER THE VESSEL FAILS TO COMPLY WITH THE ABOVE REQUIREMENTS, AND SHOULD CHARTERER DEEM IT NECESSARY TO WITHDRAW THE VESSEL FROM THE BERTH EITHER BECAUSE OF THE VESSEL'S FAILURE TO MAINTAIN SUCH PUMPING PRESSURE OR BECAUSE OF ANY OTHER CAUSE WITHIN OWNER'S CONTROL, NO SUCH TIME SHALL BE COUNTED AS USED LAYTIME OR TIME ON DEMURRAGE, IF VESSEL IS ON DEMURRAGE, AND ALL LOSSES, COSTS AND EXPENSES INCURRED AS A RESULT THEREOF WILL BE FOR OWNER'S ACCOUNT. NO TIME CONSUMED IN EXCESS OF THE WARRANTED DISCHARGE TIME SHALL BE COUNTED AS USED LAYTIME OR TIME ON DEMURRAGE, UNLESS CAUSED BY THE NEGLIGENCE OF CHARTERER.

32.     BREACH:  PART II, CLAUSE 23 AMENDED TO REAS AS FOLLOWS:

DAMAGES FOR BREACH OF THIS CHARTER SHALL INCLUDE ALL PROVABLE DAMAGES/FEES, AND ALL COSTS OF SUIT/ARBITRATION, AS WELL AS ATTORNEY FEES OR IN-HOUSE COUNSEL COMPENSATION INCURRED IN ANY ACTION HEREUNDER.

# EXHIBIT 4



60 EAST 42ND STREET, SUITE 1638
NEW YORK, NY 10165
(212) 354-0025
FAX: (212) 869-0067

TL@TISDALE-LAW.COM

*New York, N.Y.-Southport, CT*

10 SPRUCE STREET
SOUTHPORT, CT 06890
(203) 254-8474
FAX: (203) 254-1641

WWW.TISDALE-LAW.COM

July 18, 2019

*farhad.shakibaei@pes-companies.com*
*claims@pes-companies.com*
Philadelphia Energy Solutions
1735 Market St., 11th Floor
Philadelphia, PA 19103

*claim@poten.com*
*asarris@poten.com*
*pperri@poten.com*
*jlomba@poten.com*
Peter Perri
Poten & Partners, Inc.
805 Third Ave.
New York, NY 10022

Re:     **M/T APACHE**
        **PES Charter Party dated 22.02.19**

Dear Sirs:

We are attorneys for Bayview Shipping Co. S.A. and Nereus Shipping SA, the Owners and Managers, respectively of the M/T APACHE in regard to a dispute arising out of the above-referenced charter party with Philadelphia Energy Solutions as Charterers for unpaid demurrage totaling $146,295.40 arising under the above-referenced charter party.

In accordance with Sun Clauses, Clause 8 and ASBATANKVOY form Clause 24 of Part 2, Owners hereby demand arbitration of Charterers and appoint George Tsimis, Esq. as its party appointed arbitrator. Mr. Tsimis' details are as follows:

George J. Tsimis
GJT Marine Consultants, LLC
212 Ryder Road
Manhasset, NY 11030
Tel:    917 306 7721
*gtsimis@gjtmarine.com*

Notice is hereby given that you have 20 days to appoint your party nominated arbitrator or, in accordance with Clause 24, a second arbitrator will be appointed on your behalf.

We await your earliest response.

Very truly yours,

Thomas L. Tisdale

mt

*gtsimis@gjtmarine.com*
cc:    George J. Tsimis

# EXHIBIT 5

POTEN AND PARTNERS, INC.

TO    : PES
ATTN : YIYI SHI

TO    : TRITON SHIPPING
ATTN : JOE MILON / ELIZABETH MAXWELL

FROM : PETER PERRI

SUBJECT: RUNNER/PHILADELPHIA ENERGY SOLUTIONS REFINING AND MARKETING, LLC – C/P
21 MARCH 2019
 ----------------------------------------------------------------------------------------------------------------------------------
--------------------

WE ARE PLEASED TO CONFIRM THE FOLLOWING VESSEL WITH ALL SUBJECTS
LIFTED AS FOLLOWS:

THE CHARTER PARTY CONSISTS OF THIS RECAP, THE ASBATANKVOY FORM AND THE SUN
RIDER CLAUSES REFERRED TO BELOW. IN THE EVENT OF CONFLICT BETWEEN THE
PROVISIONS SET OUT HEREIN, THE PRINTED TERMS OF THE CHARTER PARTY FORM AND THE
SUN RIDER CLAUSES, THE ORDER OF PREFERENCE SHALL BE (1) THIS RECAP, (2) THE SUN
RIDER CLAUSES (AS AMENDED BY THIS RECAP) AND (3) THE ASBATANKVOY FORM (AS
AMENDED BY THIS RECAP).

------------------TITLE-------------------------------------------

CHARTERER : PHILADELPHIA ENERGY SOLUTIONS REFINING + MARKETING, LLC.
OWNER   :

GULFVIEW SHIPPING CO. S.A.
C/O NEREUS SHIPPING S.A.
35-39 AKTI MIAOULI, PIRAEUS, GR 185-35, GREECE
TEL: 30 210 429 2262/6
FAX: 30 210 429 2466/429
EMAIL: PIRAEUS@NEREUSHIP.GR

COMMERCIAL OPERATOR :

NEREUS SHIPPING S.A.
35-39 AKTI MIAOULI STREET, 185-35,
PIRAEUS, GREECE
TEL: 30 210 4292262 / 6
FAX: 30 4292334 / 466
TELEX: 211451 / 212245
EMAIL: PIRAEUS@NEREUSHIP.GR

DISPONENT OWNER:

C/O NEREUS SHIPPING SA
35-39 AKTI MIAOULI STREET, 185-35,
PIRAEUS, GREECE
TEL: 30 210 4292262 / 6
FAX: 30 4292334 / 466

TELEX: 211451 / 212245
EMAIL: PIRAEUS@NEREUSHIP.GR

BROKER      : POTEN AND PARTNERS, INC.
C /P FORM   : ASBATANKVOY
C/P DATE    : 21 MARCH 2019

------------------VESSEL-----------------------------------------------------

VESSEL : RUNNER
FLAG : GREEK
DWT:(METRIC TONS) 158,594 M/T
DRAUGHT: 17.168 M
LOA: 274.17 M
BEAM: 48 M
BUILT: MARCH 31, 2017
CAPACITY AT 98 %: 166,028 M3 EXCL. SLOPS
SLOP TANK AT 98 %:  3,429 M3
SBT: YES
CBT: N/A
COW: YES
COATED: NO
IGS: YES
TPC: 107.70 MT
BCM: 137.57 M
KTM: 51.40 M
COILED: YES
CLASS: ABS
P AND I CLUB: LONDON STEAMSHIP
GRT: 81,413.00 MT
HULL TYPE: DOUBLE HULL
TVE EXPIRATION DATE: JUNE 18, 2019
H + M - USD 95,000,000
LAST SIRE INSPECTION : ENOC / CASTELLON, SPAIN ON 10TH FEBRAURY 2019

LAST 5 CARGOES/CHARTERERS

ESCRAVOS CRUDE / VITOL
ANTAN BLEND CRUDE OIL / BP
SAHARA CRUDE OIL / PETROGAL
CLOV CRUDE OIL / PETROGAL
EAGLE FORD & BRAKEN CRUDE OILS / P-66


INTAKES OF NKOSSA CRUDE :

55 FT SWAD – ABT 1,049,000 BBLS OR 137,500 MT AT 16.0 M SWEK OR 52 FT 06 INCH
40 FT FWAD – ABT   725,000 BBLS OR  95,000 MT
39 FT FWAD – ABT   699,000 BBLS OR  91,600 MT
38 FT FWAD – ABT   675,000 BBLS OR  88,500 MT

VESSEL IS FITTED WITH A HIGH LEVEL ALARM SYSTEM

=======================CARGO=======================================

CARGO QUANTITY: PART CARGO MINIMUM  130,000 MT ALWAYS CONSISTENT WITH 55' SWAD
AT DISPORT,
                      NO DEADFREIGHT FOR CHARTERER'S ACCOUNT PROVIDED MINIMUM
QUANTITY SUPPLIED,
                      CHARTERER'S OPTION TO FULL CARGO.

FREIGHT ALWAYS TO BE MADE ON B/L QTY BUT MINIMUN 130,000 M/T

GRADE(S): CRUDE OIL(S)

SEGREGATION: MAX 2 GRADES WVNS.

HEAT: NO HEAT - AS AN OPTION
CHARTS OPTION TO INSTRUCT VESSEL TO MAINTAIN LOADED TEMP OR TO HEAT UP TO MAX
125 DEG F
AND PAYING ACTUAL COST OF BUNKERS CONSUMED AND TO BE PAID UPON RECEIPT OF
MASTERS DOCUMENTED
INVOICE"

========================DATES======================================

LAYDAYS: 6-7 APRIL 2019 (0001-1600 HRS)

CURRENT POSITION: CURRENTLY BUNKERED IN BALLAST TO WAF

ETA BASIS: DJENO – 3-4 APRIL - AGW

========================GEOGRAPHICAL=============================

LOAD:  1/2 SAFE PORT(S) PLACES WAF (NIGERIA - ANGOLA  RANGE) EXCLUDING INNER
BERTHS

DISCHARGE: 1/2 SAFE PORTS USAC IF NYNNGWB EXCLUDING FLORIDA, MAINE, MARYLAND +
NORTH CAROLINA.
      AND/OR: 1/2 SAFE PORTS USG PORT(S) EXCLUDING  LOOP AND FLORIDA.
      AND/OR: 1/2 SAFE PORTS CARIBS EXCLUDING CUBA,ORINOCO,HAITI AND ST. CROIX BUT
INCLUDING  PUERTO RICO/ BAHAMAS/
               ST.LUCIA/ TRINIDAD/ ST. EUSTATIUS/ CAYMAN ISLAND/AND  CAICOS ISLAND.
      AND/OR: 1/2 SAFE PORTS ECC ALWAYS  WIWL
         OR: 1/2 SAFE PORTS UKC (G-H RANGE)
         OR: 1/2 SAFE PORTS EUROPEAN MED NEOBI GREECE EXCLUDING ALBANIA,
YUGOSLAVIA AND FORMER YUGO

         (ALWAYS IN GEOGRAPHICAL ROTATION)

         (MAX 3 PORTS TOTAL LOAD / DISCHARGE)

========================FINANCIAL===================================

FREIGHT RATE:  WS 50   - IF USG DISCHARGE
                      WS 52.5 - IF USAC/CARIBS DISCHARGE
                      WS 55   - IF ECC/UKC-MED DISCHARGE

2019 WS TO APPLY

OVERAGE IF ANY AT 50% OF FIXING

TOTAL LAYTIME ALLOWED: PER WS

DEMURRAGE RATE: USD 24,000 PDPR

LADEN SPEED: VESSEL TO PERFORM LADEN VOYAGE AT 13 KTS UPTO 14 KTS WSNP IN
CHARTERERS OPTION.

FREIGHT PAYABLE TO: IN U.S. DOLLARS VIA TELEGRAPHIC TRANSFER TO:

AEGEAN BALTIC BANK S.A.
93, AKTI MIAOULI, 185 38 PIRAEUS, GREECE
SWIFT : AEBAGRAA
IBAN NO :GR9705601020000010312050027
USD C/A : 0103120-50-027

IN FAVOUR OF : NEREUS SHIPPING S.A.
CORRESPONDING BANK : JP MORGAN CHASE BANK NATIONAL ASSOCIATION – NEW YORK
SWIFT : CHASUS33
ABA NO : 021000021

=========================COMMISSION=============================

1.25 PCNT ADDRESS (SEE SUN COMMISSION CLAUSE NO. 28)
1.25 PCNT TO POTEN AND PARTNERS, INC. ON FREIGHT/DEADFREIGHT/DEMURRAGE

========================WAIVER OF SIGNED CHARTER PARTY===========

THE PARTIES AGREE THAT THE SIGNED CHARTER PARTY COUNTERPARTS WILL
NOT BE EXCHANGED. INSTEAD, EACH WILL CONFIRM, IN WRITING (INCLUDING
BY FAX OR TELEX), THAT THE TERMS SET OUT HEREIN ARE ACCEPTED.

========================SPECIAL PROVISIONS========================

1. THE FOLLOWING REVISIONS TO PARTS I AND II OF THE ASBATANKVOY ARE AGREED BY THE
PARTIES:

    PART 1 (L) DELETE AS AMENDED CL.7

    PART 1 (K): THE PARTIES SELECT NEW YORK.

    PART II, CLAUSE 6, LINE 2: DELETE "LETTER, TELEGRAPH, WIRELESS OR TELEPHONE"
    AND INSERT "IN WRITING (INCLUDING BY FAX OR E-MAIL)"

    PART II, CLAUSE 14(A): IN THE LAST SENTENCE, REPLACE THE WORDS "TIME OCCUPIED"
WITH THE WORDS
    "ADDITIONAL TIME OCCUPIED (AS COMPARED TO THE VPYAGE ORIGINALLY INTENDED)"

    PART II, CLAUSE 21: ADD THE FOLLOWING SENTENCE AT THE END OF THE CLAUSE:
    "CHARTERER SHALL HAVE A LIEN ON THE VESSEL FOR ANY AMOUNTS DUE FROM OWNER
TO CHARTERER HEREUNDER."

    PART II, CLAUSE 26: THIS CLAUSE IS DELETED IN ITS ENTIRETY.

2. DELAY AT DISCHARGE PORT CLAUSE:
   IF VESSEL IS DELAYED AT DISPORT AS A RESULT OF HOSTILITIES, THEN
   ALL TIME TO COUNT IN FULL AS LAYTIME OR DEMURRAGE IF VESSEL IS
   ON DEMURRAGE.

3. EXXON D+A CLAUSE

4. ANY TAXES AND/OR DUES AND OR LEVIES ON CARGO AND/OR FREIGHT AND
   OR VESSEL AT LOAD OR DISCHARGE PORT NOT COVERED UNDER WORLDSCALE
   TO BE FOR CHARTERER'S ACCOUNT.

5. OWNER WARRANTS VESSEL HAS A CLOSED LOADING SYSTEM.

6. GABONESE TAX CLAUSE - 'IF GABON, GABONESE SHIPPING COUNCIL TAX TO
   BE FOR CHARTERERS ACCOUNT.'

7. VESSEL TO ARRIVE LOADPORT WITH CLEAN BALLAST

8. SUN WEST AFRICA BALLAST CLAUSE.

   OWNER WARRANTS VESSEL WILL ARRIVE AT LOAD PORT WITH SUFFICIENT
   CLEAN BALLAST ON BOARD (APPROXINATELY 30 PCT OF SDWT) FOR PROPER
   MANEUVERABILITY. OWNER FURTHER WARRANTS VESSEL IS ABLE TO
   DEBALLAST AND LOAD CARGO SIMULTANEOUSLY WITH TWO VALVE SEGREGATION
   WHILE MAINTAINING 30 PER CT OF SUMMER DEADWEIGHT AND WITH THE
   VESSEL'S PROPELLER AND RUDDER PROPERLY IMMERSED AT ALL TIMES.
   ALL DELAYS, LOSSES AND EXPENSES INCURRED DUE TO VESSEL'S NON
   COMPLIANCE WILL BE FOR OWNER'S ACCOUNT.

9. ANY TIME AND OR EXPENSE IN OBTAINING A VALID TVE CERTIFICATE TO DISCHARGE IN U.S.
   TO BE FOR OWNER'S ACCOUNT.

10. OWNER/MASTER WARRANTS THAT THE H2S CONTENT AND MERCAPTAN LEVEL IN EACH
CARGO TANK PRIOR TO ARRIVAL
     AT LOADPORT WILL NOT EXCEED TERMINAL REGULATIONS.

11.OWNER'S NIGERIAN CLAUSE:
   "ANY DELAYS IN OBTAINING NIGERIAN TASK FORCE PERMISSION TO ENTER OR LEAVE
NIGERIAN
     WATERS TO COUNT IN FULL AS USED LAYTIME OR DEMURRAGE IF ON DEMURRAGE.
     ANY TAXES AND /OR DUES AND/OR LEVIES ON CARGO AND/OR FREIGHT BUT NOT LIMITED
TO
     NIGERIAN CONSERVANCY DUES,NIGERIAN HARBOUR DUES,OIL TERMINAL
DUES,WHARFAGE,NMA
     (NATIONAL MARITME AUTHORITY) FEE, AND ANY OTHER ITEMS AS PER WORLDSCALE
PREAMBLE 12
     AND /OR FIXED AND /OR VARIABLE RATE DIFFERENTIALS AS PER WORLDSCALE TO BE
SETTLED BY THEM DIRECTLY.
     ANY DELAYS IN NIGERIA DUE TO LOCKOUTS, STRIKES, RESTRAINTS, WORK TO RULE, GO-
SLOW, CIVIL
     UNREST TO COUNT IN FULL AS LAYTIME OR DEMURRAGE IF ON DEMURRAGE.

12. OWNER WILL COMPLY WITH THE APPLICABLE U.S. CUSTOMS REGULATION 19 CFR 4.7 (B)
(2) AND
     OBTAIN AND ACTIVELY CODE 3 CUSTOMERS BORDER AND PATROL INTERNATIONAL
CARRIER

BOND PRIOR TO ARRIVAL AT THE UNITED STATES OR UNITED STATES TERRITORY DISPORT.

13. IF LOADING GAMBA, OWNERS CONFIRM VESSEL MUST/WILL ARRIVE AT LOADPORT WITH DEADWEIGHT
 NOT TO EXCEED 150,000 MT.

14. NORTH AMERICA ECA CLAUSE: (N/A – ALREADY INCORPORATED INTO THE 2017 WORLD SCALE)

IF VESSEL IS INSTRUCTED TO CALL A PORT WITHIN ECA,
THEN CHARTERERS TO PAY LADEN LEG ONLY AS PER WORLDSCALE AGAINST MASTERS STATEMENT/SHIPS LOG. IF VESSEL HAS TO PASS THROUGH AN ECA ZONE TO REACH NOMINATED PORT THEN CHARTERERS TO PAY THAT PORTION WHILE VESSEL IS IN ECA AREA AGAINST MASTERS STATEMENT/SHIPS LOG

15. <u>TRADE AND ECONOMIC SANCTIONS AND ANTI-CORRUPTION COMPLIANCE CLAUSE</u>:

1. OWNER REPRESENTS AND WARRANTS THAT NEITHER THE VESSEL, NOR OWNER, OWNER'S SUBSIDIARIES, AFFILIATES OR PARENT COMPANY,
 OR DISPONENT OWNER, IS A PARTY IDENTIFIED ON THE U.S. TREASURY DEPARTMENT'S LIST OF SPECIALLY DESIGNATED NATIONALS AND BLOCKED PERSONS; THE U.S. COMMERCE DEPARTMENT'S DENIED PERSONS LIST OR ENTITY LIST; THE U.S. STATE DEPARTMENT'S DEBARRED LIST, OR ANY OTHER SIMILAR LIST OF PROHIBITED OR DENIED PARTIES MAINTAINED BY THE U.S. GOVERNMENT, OR ANY OTHER COUNTRY OR SUPRANATIONAL OR INTERNATIONAL GOVERNMENTAL ORGANIZATION, INCLUDING, BUT NOT LIMITED TO, THE EUROPEAN UNION, UNITED KINGDOM AND UNITED NATIONS (A "<u>BLOCKED PERSON</u>"). OWNER FURTHER WARRANTS THAT NEITHER OWNER NOR ANY OF ITS SUBSIDIARIES, AFFILIATES OR PARENT COMPANY, OR DISPONENT OWNER IS ORGANIZED UNDER THE LAWS OF, ACTING AT THE DIRECTION OF, OR OPERATING UNDER THE FLAG OF, ANY COUNTRY SUBJECT TO A COMPREHENSIVE EMBARGO OR SANCTIONS PROGRAM OF THE UNITED STATES OR ANY OTHER COUNTRY OR SUPRANATIONAL OR INTERNATIONAL GOVERNMENTAL ORGANIZATION, INCLUDING, BUT NOT LIMITED TO, THE EUROPEAN UNION, UNITED KINGDOM AND UNITED NATIONS.
2. OWNER SHALL, AT ALL TIMES WHILE PERFORMING ITS OBLIGATIONS HEREUNDER, COMPLY WITH ALL APPLICABLE TRADE AND ECONOMIC SANCTIONS LAWS AND REGULATIONS OF THE UNITED STATES AND ANY OTHER COUNTRY OR SUPRANATIONAL OR INTERNATIONAL GOVERNMENTAL ORGANIZATION, INCLUDING BUT NOT LIMITED TO THE EUROPEAN UNION, UNITED KINGDOM AND UNITED NATIONS.
3. OWNER SHALL, AT ALL TIMES WHILE PERFORMING ITS OBLIGATIONS HEREUNDER, COMPLY WITH THE BRIBERY AND OTHER ANTI-CORRUPTION LAWS OF THE UNITED STATES AND ANY OTHER COUNTRY OR SUPRANATIONAL OR INTERNATIONAL GOVERNMENTAL ORGANIZATION, INCLUDING BUT NOT LIMITED TO, THE EUROPEAN UNION, UNITED KINGDOM AND UNITED NATIONS. APPLICABLE BRIBERY AND ANTI-CORRUPTION LAWS INCLUDE, BUT ARE NOT LIMITED TO, THE U.S. FOREIGN CORRUPT PRACTICES ACT, THE U.K. BRIBERY ACT AND BRAZIL'S CLEAN COMPANIES ACT.
4. OWNER SHALL DEFEND, INDEMNIFY AND HOLD HARMLESS CHARTERER, ITS SHAREHOLDERS (INCLUDING PES AND ICBC STANDARD BANK PLC), SUBSIDIARIES AND AFFILIATES, AS WELL AS THE OFFICERS, DIRECTORS, EMPLOYEES AND AGENTS OF EACH OF THEM (COLLECTIVELY, THE "<u>CHARTERER INDEMNIFIED PARTIES</u>"), FROM AND AGAINST ANY CLAIM, CAUSE OF ACTION, COST, DAMAGE, EXPENSE, FINE, JUDGMENT, LIABILITY OR PENALTY OF ANY KIND OR NATURE WHATSOEVER (INCLUDING ATTORNEYS FEES AND COSTS OF COURT OR ARBITRATION) (COLLECTIVELY, "<u>COSTS</u>") ARISING OUT OF OR RESULTING FROM OWNER'S BREACH OF THIS ADDITIONAL SPECIAL PROVISION.

16. INTERNATIONAL SHIP & PORT FACILITY SECURITY CODE / MTSA:

1. OWNER SHALL COMPLY WITH THE REQUIREMENTS OF THE INTERNATIONAL SHIP AND PORT FACILITY SECURITY CODE AND THE RELEVANT AMENDMENTS TO CHAPTER XI OF SOLAS (TOGETHER, THE "ISPS CODE") RELATING TO THE VESSEL AND "THE COMPANY" (AS DEFINED BY THE ISPS CODE).  IF TRADING TO OR FROM THE UNITED STATES OR PASSING THROUGH UNITED STATES WATERS, OWNER SHALL ALSO COMPLY WITH THE REQUIREMENTS OF THE U.S. MARITIME TRANSPORTATION SECURITY ACT 2002 (THE "MTSA") RELATING TO THE VESSEL AND THE "OWNER" (AS DEFINED BY THE MTSA).

2. UPON REQUEST, OWNER SHALL PROVIDE CHARTERER WITH A COPY OF THE RELEVANT INTERNATIONAL SHIP SECURITY CERTIFICATE (OR THE INTERIM INTERNATIONAL SHIP SECURITY CERTIFICATE) AND THE FULL-STYLE CONTACT DETAILS OF THE COMPANY SECURITY OFFICER ("CSO").

3. EXCEPT AS OTHERWISE PROVIDED IN THIS CHARTER PARTY, LOSS, DAMAGES, EXPENSE OR DELAY (EXCLUDING CONSEQUENTIAL LOSS, DAMAGES, EXPENSE OR DELAY) CAUSED BY THE FAILURE OF OWNER OR THE COMPANY/OWNER TO COMPLY WITH THE REQUIREMENTS OF THE ISPS CODE/MTSA OR THIS SECTION 12 SHALL BE FOR OWNER'S ACCOUNT, AND OWNER SHALL INDEMNIFY, DEFEND AND HOLD CHARTERER, ITS AGENTS AND THE CARGO OWNER HARMLESS THEREFROM.  ANY DELAY CAUSED BY SUCH FAILURE SHALL NOT COUNT AS LAYTIME OR TIME ON DEMURRAGE.

4. CHARTERER SHALL PROVIDE OWNER AND THE SHIP SECURITY OFFICER ("SSO")/MASTER WITH ITS FULL-STYLE CONTACT DETAILS AND, UPON REQUEST, ANY OTHER INFORMATION OWNER REQUIRES TO COMPLY WITH THE ISPS CODE/MTSA.

5. PROVIDED THAT THE DELAY IS NOT CAUSED BY OWNER'S FAILURE TO COMPLY WITH ITS OBLIGATIONS UNDER THE ISPS CODE/MTSA (IN WHICH CASE ANY DELAY CAUSED BY SUCH FAILURE SHALL BE FOR OWNER'S ACCOUNT AND SHALL NOT COUNT AS LAYTIME OR TIME ON DEMURRAGE), ANY DELAY RESULTING FROM MEASURES IMPOSED BY A PORT FACILITY OR BY ANY RELEVANT AUTHORITY UNDER THE ISPS CODE/MTSA THAT ARE BEYOND THE REASONABLE CONTROL OF OWNER AND CHARTERER SHALL COUNT AS LAYTIME OR TIME ON DEMURRAGE, WITH DEMURRAGE CALCULATED AT 50% OF THE DEMURRAGE RATE.

6. NOTWITHSTANDING ANYTHING TO THE CONTRARY PROVIDED IN THIS CHARTER, ANY ADDITIONAL COSTS OR EXPENSES WHATSOEVER
SOLELY ARISING OUT OF OR RELATED TO SECURITY REGULATIONS OR MEASURES REQUIRED BY THE PORT FACILITY OR ANY RELEVANT  AUTHORITY AT THE LOADING OR DISCHARGE PORT IN ACCORDANCE WITH THE ISPS CODE/MTSA AND TO WHICH OWNER AND THE VESSEL WOULD NOT BE SUBJECT BUT FOR THE TRADING OF THE VESSEL TO SUCH LOADING OR DISCHARGE PORT, INCLUDING, BUT NOT LIMITED TO, SECURITY GUARDS, LAUNCH SERVICES, VESSEL ESCORTS, SECURITY FEES OR TAXES AND INSPECTIONS, SHALL BE FOR CHARTERER'S ACCOUNT, UNLESS SUCH COSTS OR EXPENSES RESULT SOLELY FROM A FAILURE BY OWNER TO COMPLY WITH THIS CHARTER PARTY, AN ACT OR OMISSION OF THE MASTER OR CREW, THE PREVIOUS TRADING OF THE VESSEL, THE NATIONALITY OF THE CREW OR THE IDENTITY OF OWNER'S MANAGERS.  ALL MEASURES REQUIRED BY OWNER TO COMPLY WITH THE SHIP SECURITY PLAN SHALL BE FOR OWNER'S ACCOUNT.

7. IF EITHER PARTY MAKES ANY PAYMENT THAT IS FOR THE OTHER PARTY'S ACCOUNT ACCORDING TO SPECIAL PROVISION 16, THE OTHER PARTY SHALL INDEMNIFY THE PAYING PARTY.

8. WHEN THE VESSEL CALLS IN THE UNITED STATES, INCLUDING ANY U.S. TERRITORY, THE FOLLOWING PROVISIONS SHALL APPLY WITH RESPECT TO ANY APPLICABLE SECURITY REGULATIONS OR MEASURES:

(a) **REPORTING** – THE VESSEL OR ITS AGENTS SHALL REPORT AND SEND ALL NOTICES AS REQUIRED TO OBTAIN ENTRY AND EXIT CLEARANCES FROM THE RELEVANT U.S. AUTHORITIES.  ANY DELAY CAUSED BY THE FAILURE TO SO REPORT SHALL BE FOR OWNER'S ACCOUNT, UNLESS SUCH FAILURE TO REPORT IS CAUSED BY OR ATTRIBUTABLE TO

CHARTERER OR ITS REPRESENTATIVES OR AGENTS INCLUDING, BUT NOT LIMITED TO, THE SHIPPER AND/OR RECEIVER OF THE CARGO.

(b)  **CLEARANCES** – UNLESS CAUSED BY OWNER'S ACT OR FAILURE TO ACT IN COMPLIANCE WITH THIS CHARTER PARTY, ANY DELAY SUFFERED OR TIME LOST IN OBTAINING THE ENTRY AND EXIT CLEARANCES FROM THE RELEVANT U.S. AUTHORITIES SHALL COUNT AS LAYTIME OR TIME ON DEMURRAGE; PROVIDED THAT THE DEMURRAGE RATE TO BE APPLIED IN ANY CASE WHERE DELAY IS NOT CAUSED BY CHARTERER'S NEGLIGENCE SHALL BE CALCULATED AT 50% OF THE DEMURRAGE RATE.

(c)  **EXPENSES** – ANY EXPENSES OR ADDITIONAL FEES RELATING TO THE CARGO,EVEN IF LEVIED AGAINST THE VESSEL, THAT ARISE OUT OF THE SECURITY MEASURES IMPOSED AT THE LOADING PORT AND/OR THE DISCHARGE PORT AND/OR ANY OTHER PORT TO WHICH CHARTERER ORDERS THE VESSEL, SHALL BE FOR CHARTERER'S ACCOUNT.

17.  BASIC VESSEL REQUIREMENTS:  (APRIL 2015)

THE VESSEL SHALL BE SUITABLE IN EVERY WAY FOR LOADING AND DISCHARGING THE CARGO AT THE DECLARED LOADING
   AND DISCHARGE PORTS AND TERMINALS, AND SHALL COMPLY IN FULL WITH ALL APPLICABLE PROCEDURES, RULES AND
   REGULATIONS OF SUCH LOADING AND DISCHARGING PORTS AND TERMINALS.  OWNER WARRANTS THAT THE VESSEL IS NOT,
   AND IS NOT OWNED, CONTROLLED OR AFFILIATED WITH, A BLOCKED PERSON (AS DEFINED IN SECTION 14.1 HEREOF).  ANY
   COSTS, EXPENSES, FINES OR PENALTIES INCURRED BY OWNER OR CHARTERER BY REASON OF THE VESSEL NOT BEING OF
   THE ABOVE DESCRIPTION AND TIME LOST THEREBY SHALL BE FOR OWNER'S ACCOUNT.

18.  SEIZURE AND ARREST: (APRIL 2015)
   IF THE VESSEL IS SEIZED, ARRESTED OR OTHERWISE DETAINED BY A THIRD PARTY NOT ARISING FROM ANY ACT OR OMISSION
   OF CHARTERER, OWNER SHALL INDEMNIFY AND HOLD HARMLESS CHARTERER FOR ALL DAMAGES, LOSSES, CLAIMS,
   JUDGMENTS, COSTS AND EXPENSES ARISING OUT OF OR RESULTING THEREFROM, AND ANY TIME LOST SHALL NOT COUNT
   AS LAYTIME.

19. FOR FREIGHT CALCULATION PURPOSES, THE PLACE OF LIGHTERING SHALL NOT CONSIDERED A DISCHARGE PORT OR
   DISCHARGE BERTH WHETHER OR NOT DESIGNATED AS SUCH BY WORLDSCALE OR OTHER ORGANIZATIONS HAVING
   JURISDICTION, PROVIDED THE DESIGNATED LIGHTERING AREA IS A CUSTOMARY LIGHTERING ANCHORAGE FOR THAT
   DISCHARGE PORT.

-----------------------------------------------------------------------------------------------------------------------------------------------------

THE FOLLOWING SUN CLAUSES DATED JUNE 12, 1998 NO. 1-34 WITH ALTERATIONS AND DELETIONS AS LISTED BELOW
ARE HEREBY INCORPORATED IN THIS CHARTER PARTY.

   1. HOURS/TERMS/CONDITIONS:
      LINE 2: AFTER 'CONDITIONS' ADD 'AS AMENDED' LAYTIME PER WS

2. ARBITRATION OF SMALL CLAIMS: REVISED 4/20/15
   THE PARTIES AGREE, THAT ANY DISPUTES RELATING TO CLAIMS OF $50,000 OR
LESS IN THE AGGREGATE THAT ARE SUBMITTED
   TO ARBITRATION IN ACCORDANCE WITH THIS CHARTER SHALL BE GOVERNED BY
THE SHORT FORM ARBITRATION PROCEDURE ADOPTED
   BY THE SOCIETY OF MARITIME ARBITRATORS.

3. GENERAL AVERAGE: REVISED 4/20/15
   GENERAL AVERAGE SHALL BE ADJUSTED, STATED AND SETTLED ACCORDING TO
YORK/ANTWERP RULES, 1974, AS
 AMENDED 1994, WHICH RULES SHALL BE DEEMED TO BE A PART OF THIS CHARTER
PARTY, AND AS
   TO MATTERS NOT PROVIDED FOR BY THOSE RULES, ACCORDING TO THE LAWS AND
USAGES AT THE PORT OF
   NEW YORK.

4. CARGO RETENTION CLAUSE:
   DELETE IN IT'S ENTIRETY INSERT' AMOCO CARGO RETENTION CLAUSE AFTER
   'FREE FLOWING' INSERT 'LIQUID AND PUMPABLE'.

5. . COMPLIANCE WITH REQUIREMENTS:(REVISED APRIL 2015)
   OWNER WARRANTS THAT IT IS A MEMBER OF THE INTERNATIONAL TANKER OWNER
   POLLUTION FEDERATION, LIMITED(ITOPF) AND WILL COMPLY WITH ALL APPLICABLE
   U.S.FEDERAL, STATE, AND LOCAL AND ALL FOREIGN LAWS, INTERNATIONAL
   TREATIES AND CONVENTIONS, TREATIES, PROTOCOLS OR OTHER AGREEMENTS
   RELATED TO THE NAVIGATION, MANAGEMENT, HANDLING OR OPERATION OF THE
   VESSEL AND  APPLICABLE  TERMINAL RULES AND REGULATIONS INCLUDING, BUT
   NOT LIMITED TO, CUSTOMS REGULATIONS; THE OIL POLLUTION ACT OF 1990; ALL
   APPLICABLE PORT RULES AND REGULATIONS; AND WILL HAVE AND CARRY ABOARD
   THE VESSEL A U.S.FEDERAL MARITIME COMMISSION CERTIFICATE OF FINANCIAL
   RESPONSIBILITY (OIL POLLUTION) AS ISSUED BY THE UNITED STATES COAST
   GUARD, AND A CERTIFICATE OF INSURANCE AS DESCRIBED IN THE CIVIL
   LIABILITY CONVENTION FOR OIL POLLUTION DAMAGE. IN NO CASE SHALL
   CHARTERER BE LIABLE FOR USED LAYTIME, DEMURRAGE, OR OTHER DELAY AS A
   RESULT OF OWNER'S FAILURE TO COMPLY WITH THE AFOREMENTIONED OBLIGATIONS,
   AND ANY LOSSES, DIRECT EXPENSES OR DIRECT DAMAGES ARISING AS A RESULT OF
   SUCH FAILURE TO COMPLY WITH THIS CLAUSE WILL BE FOR OWNER'S ACCOUNT.
   THIS DOES NOT RELEASE CHARTERERS FROM THEIR RESPONSIBILITY TO
   NOMINATE VESSEL TO AND CLEAR THE VESSEL WITH ALL LOAD AND DISCHARGE
   PORT(S)/TERMINALS(S) PRIOR TO LIFTING SUBJECTS.

6. INSURANCE: (REVISED APRIL 2015) –
   OWNER WARRANTS THAT FROM THE TIME THE VESSEL IS OBLIGATED TO PROCEED
TO THE LOADING
   PORT(S) AND THROUGHOUT THE VESSEL'S SERVICE UNDER THIS CHARTER PARTY,
OWNER
   SHALL MAINTAIN THE FOLLOWING INSURANCE WITH RESPECT TO THE VESSEL AT
OWNER'S EXPENSE:
1. HULL AND MACHINERY INSURANCE INCLUDING COLLISION LIABILITY IN AN AMOUNT EQUAL TO
THE FULL COMMERCIAL VALUE OF THE VESSEL, ~~THE UNDERWRITERS OF SUCH INSURANCE~~
~~TO WAIVE ALL RIGHTS OF SUBROGATION AGAINST CHARTERER;~~
2. PROTECTION AND INDEMNITY INSURANCE ON A FULL ENTRY BASIS WITH AN INTERNATIONAL
GROUP P&I CLUB, SUCH INSURANCE TO INCLUDE, BUT NOT BE LIMITED TO: COVERAGE IN
RESPECT OF LOSS OF OR DAMAGE TO THE CARGO; COVERAGE FOR INJURIES TO OR DEATH
OF MASTERS, MATES AND CREW; COLLISION LIABILITIES NOT INSURED UNDER THE H&M
POLICY; EXCESS COLLISION LIABILITIES; CARGO LEGAL LIABILITIES; AND POLLUTION

LIABILITIES.  THE LIMIT OF SUCH INSURANCE SHALL BE AS ESTABLISHED BY THE RULES OF THE INTERNATIONAL GROUP OF P&I CLUBS EXCEPT FOR POLLUTION LIABILITIES, WHICH SHALL BE LIMITED TO THE MAXIMUM POLLUTION LIMIT OFFERED THROUGH THE P&I CLUBS OF THE INTERNATIONAL GROUP (CURRENTLY US $1 BILLION).  ~~CHARTERER SHALL BE NAMED AS AN ADDITIONAL ASSURED ON ALL P&I CLUB ENTRIES (SUBJECT TO MISDIRECTED ARROW CLAUSE), AND THE P&I CLUB SHALL WAIVE ALL RIGHTS OF SUBROGATION AGAINST CHARTERER;~~ AND

3.   HULL AND P&I WAR RISK INSURANCE WITH A LIMIT EQUAL TO THE FULL COMMERCIAL VALUE OF THE VESSEL, ~~SUCH INSURANCE TO WAIVE ALL RIGHTS OF SUBROGATION AGAINST CHARTERER.~~
OWNER SHALL PROVIDE TO CHARTERER, ON REQUEST, EVIDENCE OF SUCH INSURANCE.  ~~ANY EXTRA INSURANCE ON FREIGHT AND/OR CARGO, DUE TO VESSEL'S AGE, CLASSIFICATION, AND/OR FLAG, IS FOR OWNER'S ACCOUNT, AND CHARTERER SHALL HAVE THE RIGHT TO "DEDUCT" SUCH EXTRA INSURANCE COSTS FROM FREIGHT DUE OWNER.~~

7. POLLUTION PREVENTION AND RESPONSIBILITY:
    LINE 11 DELETE FROM THE WORD "ANY" THROUGH LINE 13 TO THE WORD "EXPENSE".

8. DISPUTE RESOLUTION:

9. ETA:

10. CLEAN BALLAST:

11. BUNKER:

12. DIVERSION:

13. CARGO SHIFTING CLAUSE:

14. SUN SPEED CLAUSE:
    LINE 2 INSERT ' SEE MAIN TERMS ABOVE'
    LINE 4 TO 13 DELETE IN IT'S ENTIRETY

15. HEATING:
    ADD 'AT CHARTERERS OPTION'
    DELETE ANY REFERENCE TO '135' INSERT '125'
    AT END ADD FOLLOWING 'ANY COST FOR RAISING CARGO TEMPERATURE
    TO BE PAID BY CHARTERERS UPON RECEIPT OF MASTER'S INVOICE' (SEE MAIN BODY OF C/P).

16. CHANGE OF DESTINATION/BILL OF LADING INDEMNITY CLAUSE:

17. AGENCY: (REVISED APRIL 2015):
    IT IS UNDERSTOOD AND AGREED CHARTERER RESERVES THE RIGHT TO APPOINT AGENTS WHOSE FEES ARE COMPETITIVE WHO
    WILL ACT AS THE AGENT FOR, AND BE SOLELY RESPONSIBLE TO, THE VESSEL ENTERING AND CLEARING THE LOAD/DISCHARGE
    PORT(S). SUCH AGENTS, ALTHOUGH APPOINTED BY CHARTERER, SHALL BE PAID BY OWNER.

18. BOARDING CLAUSE:

19. SURVEY AND SAMPLE:

20. LIGHTERING:

LINES 8/9 DELETE 'ONE HALF' INSERT 'FULL',

21. PUMPING:
LINE 3 DELETE (OR PRO RATA TIME FOR A PART CARGO)
LINE 9 AFTER WORD 'MANIFOLD' INSERT 'PROVIDED SHORE FACILITIES PERMIT'
LINE 10 INSERT 'COWING'
DELETE LAST SENTENCE OF CLAUSE

22. CRUDE OIL WASHING:
INSERT AT END 'OVER AND ABOVE THAT SPECIFIED IN VESSEL'S COW MANUAL'.

23. IGS DEPRESSURIZATION:

24. CLAIMS:
LINE 5 DELETE 'THIRTY (30)' AND INSERT 'SIXTY (60)'
LINE 7 DELETE 'SIXTY(60)' AND INSERT 'NINETY (90)'

25. LAYTIME-DEMURRAGE EXCEPTIONS REVISED APRIL 2015):
NOTWITHSTANDING ANYTHING IN PARTS I OR II TO THE CONTRARY, THE FOLLOWING TIME PERIODS SHALL NOT BE
CHARGED AGAINST LAYTIME, USED LAYTIME OR TIME ON DEMURRAGE, WHETHER OR NOT LIGHTERING HAS OCCURRED:
  1. ALL THE TIME BETWEEN EARLY ARRIVAL NOR AT LOAD PORT AND 0600 ON THE FIRST DAY OF LAYDAYS, UNLESS THE VESSEL
     BERTHS EARLIER WITH CHARTERER'S CONSENT;
  2.  THE FIRST SIX (6) HOURS AFTER NOR AT ALL OTHER LOAD AND DISCHARGE PORTS, UNLESS THE VESSEL BERTHS EARLIER;
  3.  ALL TIME PROCEEDING FROM ANY FIRST ANCHORAGE TO THE FIRST BERTH AT EACH PORT UNTIL THE VESSEL IS
     SECURELY MOORED AT THE DESIGNATED LOADING / DISCHARGE BERTH IN ALL RESPECTS READY TO LOAD OR DISCHARGE
     CHARTERER'S CARGO, IN FREE PRATIQUE, CUSTOMS AND IMMIGRATION CLEARED;
  4.  ALL TIME SPENT DISCHARGING BALLAST WATER OR SLOPS, UNLESS CONCURRENT WITH CARGO OPERATIONS, BUT ONLY
     TO THE EXTENT IT DOESN'T INTERFERE WITH OR OTHERWISE NEGATIVELY AFFECT CARGO OPERATIONS;
  5.  ALL TIME LOST DUE TO ANY OTHER CAUSE ATTRIBUTABLE TO THE "DIRECT" FAULT OF OWNER, THE VESSEL,
     HER MASTER OR CREW, OR AGENTS OR SUBCONTRACTORS OF OWNER.

26. WEATHER:
DELETE WORD 'LIGHTERING'

27. SLOP:

28. ADDRESS COMMISSION:

29. WAR RISK: (WHERE APPLICABLE)
LINE 4: DELETE "ON THE DATE OF THIS CHARTER" INSERT " 18 MARCH 2019 "

30. EARLY LOADING:

31. HALF TIME

32. BREACH

33. ISM CLAUSE:

34. YEAR 2000 WARRANTY –  DELETE IN IT'S ENTIRETY

END OF RECAP
-------------------------------------------------------
THANK YOU FOR YOUR SUPPORT AND COOPERATION.

KIND REGARDS,

PETER PERRI

POTEN AND PARTNERS, INC.

# EXHIBIT 6

# NEREUS SHIPPING S.A.

## PIRAEUS (GREECE) OFFICE
## 35/39 AKTI MIAOULI

DATE : 14th June, 2019

INVOICE № : **8034**
VOY. № : **13/19**

Messrs. **PHILADELPHIA ENERGY SOLUTIONS REFINING + MARKETING, LLC.**

℅ Messrs. **POTEN AND PARTNERS, INC**

---

### M.T. "RUNNER" – CP 21.03.2019

| | |
|---|---|
| **Cargo dues at Djeno Terminal (06.04.19-14.04.19) for Charterers account as per supporting documents:** | |
| CCC tax -0.550 EUR x BL 116,784.799 MT x 60% =EUR 38,538.95 | US.$ 43,626.09 |
| SOCOTRAMP tax-1.829 EUR x BL 116,784.799 MT x 40% =EUR 85,439.73 | 96,717.77 |
| | **US.$ 140,343.86** |
| R.O.E.:1EUR=1.132 USD | |

AEGEAN BALTIC BANK S.A.
93, AKTI MIAOULI, 185 38 PIRAEUS, GREECE
SWIFT : AEBAGRAA
IBAN NO : GR9705601020000010312050027
USD C/A : 0103120-50-027
IN FAVOUR OF : NEREUS SHIPPING S.A.
CORRESPONDING BANK :
JP MORGAN CHASE BANK NATIONAL ASSOCIATION-NEW YORK
SWIFT : CHASUS33
ABA NO. : 021000021

# NEREUS SHIPPING S.A.

## PIRAEUS (GREECE) OFFICE
### 35/39 AKTI MIAOULI

DATE : 14th June, 2019

INVOICE № : **8034**
VOY. № : **13/19**

Messrs.  **PHILADELPHIA ENERGY SOLUTIONS REFINING + MARKETING, LLC.**

℅ Messrs. **POTEN AND PARTNERS, INC**

---

### M.T. "RUNNER" – CP 21.03.2019

**Cargo dues at Djeno Terminal (06.04.19-14.04.19) for Charterers account as per supporting documents:**

CCC tax -0.550 EUR x BL 116,784.799 MT x 60% =EUR 38,538.95      US.$ 43,626.09
SOCOTRAMP tax-1.829 EUR x BL 116,784.799 MT x 40% =EUR 85,439.73      96,717.77

**US.$ 140,343.86**

R.O.E.:1EUR=1.132 USD

AEGEAN BALTIC BANK S.A.
93, AKTI MIAOULI, 185 38 PIRAEUS, GREECE
SWIFT : AEBAGRAA
IBAN NO : GR9705601020000010312050027
USD C/A : 0103120-50-027
IN FAVOUR OF : NEREUS SHIPPING S.A.
CORRESPONDING BANK :
JP MORGAN CHASE BANK NATIONAL ASSOCIATION-NEW YORK
SWIFT : CHASUS33
ABA NO. : 021000021



# SOCOTRAM

**Siège Social**
5, Avenue Dr Denis LOEMBA
Centre Ville "A"
Immeuble Les Manguiers
BP 4922 POINTE NOIRE
République du Congo
Tél :(242) 639 01 52
        (242) 639 01 60
E-mail : sctmpnr@socotram.cg

NU : M 2006 11 00 00 548 122

**FACTURE N° : FC1900535**    EO/CH/FF N°414

**BOLLORE TRANSPORT & LOGISTICS**

BP : 616 Pointe Noire
REP. DU CONGO

Pointe Noire le :   15/04/19

| ARMEMENT : | GULF VIEW SHIPPING CO SA |
| NAVIRE | MT RUNNER VOY 13 DU 14/04/2019 |

| Désignation | Qté | U | Tx Redevance | % SOCOTRAM | Montant HT HSCRA | Montant H EURO |
|---|---|---|---|---|---|---|
| REDEVANCE 40% SOCOTRAM BRUT | 116 784,799 | TM | 1,829 | 40% | 56 044 791 | 85 439,7 |

Virement à effectuer en faveur de SOCOTRAM auprès de la
BANQUE DELUBAC & CIE , 10 rue Roquépine, 76006
Paris, France, Code BANQUE 12679 , GUICHET 00001,
NUMERO DE COMPTE 22112037834, Clé 24 ,Code IBAN
FR76 1267 9000 0122 1120 3783 424 , BIC
DELUFR22XXX,Banque Intermediaire. NATIXIS SA.
BIC/SWIFT Code: NATXFRPP



FF01191416

BON A PAYER

Service :
Signature :

T/5579

| | Total TTC |
| Total en CFA : | 56 044 791 |
| Total en EURO : | 85 439,733 |

Arrêté la présente facture à la somme de :   Cinquante six millions quarante quatre mille sept cent quatre-vingt onze        F C

Conditions de règlement :        le 25/04/19        56 044 7

Société Congolaise de Transport Maritime

(17)

**MINISTÈRE DES TRANSPORTS, DE L'AVIATION CIVILE
ET DE LA MARINE MARCHANDE**
**Conseil Congolais des chargeurs**
**Direction Générale**

BP: 741 - Tél : 294.03.43 - Fax : 294.03.46
*Pointe-Noire*

**REPUBLIQUE DU CONGO**
Unité · Travail · Progrès

Pointe-Noire, le 10/05/2019

**FACTURE N°: 0043820190510TEH**

# EXPORT

N° Voyage :   13

NAVIRE :         **RUNNER**

PAVILLON :       **GREEK**

ARMATEUR :       **GULF VIEW SHIPPING CO. SA**

CONSIGNATAIRE :  **BOLLORE TRANSPORT & LOGISTICS CONGO**

DATE DE DEPART : 2019-04-14

| Nature de m/ses | Condi. | Qté | Commi. parti. 60% | % réd | Qté taxée | Taux com. | Montant (XAF) |
|---|---|---|---|---|---|---|---|
| HYDROCARBURE | Vrac | 116 784,799 | 70 070,879 | 0 | 70 070,879 | 360,776 | 25 278 891 |

| | MONTANT TOTAL | 25 278 891 |
|---|---|---|

MONTANT € ===========================>        38 538,947

Arrêté la présente facture à la somme de FCFA :  Vingt-cinq millions deux cent soixante-dix-neuf mille huit cent
quatre-vingt-onze/-

Le Directeur Général p.i.



**OBAILLOYI EMILE CASIMIR PATRICK**



Bolloré Transport & Logistics
P
N   2 4 MAI 2019
R
AYME ANTHONY IGNOUMBA
RAF - Shipping

FF0119 18 23

Conditions de paiements : les sommes relatives à la commission de participation sont exigibles dans les 45 (quarante cinq) jours suivant leur réception.Charte 0713 du 23 octobre 1987
**CONSEIL CONGOLAIS DES CHARGEURS**    Commission de participation et de la redevance.
PIC : AU CAPITAL DE 300.000.000 Millions FCFA
NIU : ........................    Export 201904261351212б
RCCM : 2004 3023 du 14/01/2014
Régime d'imposition réel / Résidence fiscale UGE PNR

POINTE - NOIRE
21, Boulevard Charles de GAULLE
Face Grande Poste
Centre ville

**MINISTÈRE DES TRANSPORTS, DE L'AVIATION CIVILE
ET DE LA MARINE MARCHANDE**

**Conseil Congolais des chargeurs
Direction Générale**

*BP: 741 - Tél.: 294.03.43 - Fax : 294.03.46*
*Pointe-Noire*

**REPUBLIQUE DU CONGO**
*Unité "Travail" Progrès*

Pointe-Noire, le 10/05/2019

## FICHE DE TAXATION A L'EXPORT

### FACTURE N° : 0043820190510TEH

N° Voyage :   13

**NAVIRE :**   RUNNER

**PAVILLON :**   GREEK

**ARMATEUR :**   GULF VIEW SHIPPING CO. SA

**CONSIGNATAIRE :**   BOLLORE TRANSPORT & LOGISTICS CONGO

**DATE DE DEPART : 2019-04-14**

| Nature de m/ses | Condi. | Qté | Commi. parti. 60% | % réd | Nbre BL | Qté taxée | Taux com. | Montant (XAF) |
|---|---|---|---|---|---|---|---|---|
| HYDROCARBURE | Vrac | 116 784 799 | 70 070 879 | 0 | 1 | 70 070 879 | 360,776 | 25 279 891 |
| ........... | ... | ........ | ........ | .. | .. | ........ | ....... | ........ |
| **MONTANT TOTAL** | | | | | | | | **25 279 891** |

Arrêté la présente fiche à la somme de FCFA :  **Vingt-cinq millions deux cent soixante-dix-neuf mille huit cent
quatre-vingt-onze./-**

*Pour la Taxation,*





Claudia Nadine MOUTSETSENGUE LOSSAMBO

Conditions de paiements : les factures relatives à la commission de participation sont exigibles dans les dix (10) jours suivant leurs réception Cf arrêté 6719 du 25 octobre 2007
fixant les modalités de perception de la commission de participation et de la redevance.

Source de données :     EXPORT20150426135121Z8
ISEIL CONGOLAIS DES CHARGEURS
I AU CAPITAL DE 300.000.000 Millions FCFA
M2006110000069140
M : 2004 3023 du 14/01/2014
me d'imposition réal / Résidence fiscale

**POINTE - NOIRE**
21, Boulevard Charles de GAULLE
Face Grande Poste

# EXHIBIT 7

60 EAST 42ND STREET, SUITE 1638
NEW YORK, NY 10165
(212) 354-0025
FAX: (212) 869-0067

TT@TISDALE-LAW.COM



# TISDALE
## LAW OFFICES, LLC

*New York, NY · Southport, CT*

10 SPRUCE STREET
SOUTHPORT, CT 06890
(203) 254-8474
FAX: (203) 254-1641

WWW.TISDALE-LAW.COM

July 18, 2019

***farhad.shakibaei@pes-companies.com***
***claims@pes-companies.com***
Philadelphia Energy Solutions
1735 Market St., 11th Floor
Philadelphia, PA 19103

***claim@poten.com***
***asarris@poten.com***
***pperri@poten.com***
***jlomba@poten.com***
Peter Perri
Poten & Partners, Inc.
805 Third Ave.
New York, NY 10022

Re:   **M/T RUNNER**
      **PES Charter Party dated March 21, 2019**

Dear Sirs:

We are attorneys for Gulfview Shipping Co. SA and Nereus Shipping SA, the Owners and Managers, respectively of the M/T RUNNER in regard to a dispute arising out of the above-referenced charter party with Philadelphia Energy Solutions as Charterers for unpaid demurrage totaling $140,343.86 arising under the above-referenced charter party.

In accordance with Sun Clauses, Clause 8 and ASBATANKVOY form Clause 24 of Part 2, Owners hereby demand arbitration of Charterers and appoint George Tsimis, Esq. as its party appointed arbitrator. Mr. Tsimis' details are as follows:

George J. Tsimis
GJT Marine Consultants, LLC
212 Ryder Road
Manhasset, NY 11030
Tel:   917 306 7721
*gtsimis@gjtmarine.com*

Notice is hereby given that you have 20 days to appoint your party nominated arbitrator or, in accordance with Clause 24, a second arbitrator will be appointed on your behalf.

We await your earliest response.

Very truly yours,

Thomas L. Tisdale

mt

*gtsimis@gjtmarine.com*
cc:     George J. Tsimis

2

# EXHIBIT 8

POTEN AND PARTNERS, INC.

TO    : PES
ATTN :  YIYI SHI

TO     : TRITON SHIPPING
ATTN : JOE MILON/ELIZABETH MAXWELL

FROM : PETER PERRI

SUBJECT: SPEEDWAY/PHILADELPHIA ENERGY SOLUTIONS REFINING AND MARKETING, LLC –
C/P 10 APRIL 2019
 -------------------------------------------------------------------------------------------------------------------------------------
--------------------

WE ARE PLEASED TO CONFIRM THE FOLLOWING VESSEL WITH ALL SUBJECTS
LIFTED AS FOLLOWS:

THE CHARTER PARTY CONSISTS OF THIS RECAP, THE ASBATANKVOY FORM AND THE SUN
RIDER CLAUSES REFERRED TO BELOW. IN THE EVENT OF CONFLICT BETWEEN THE
PROVISIONS SET OUT HEREIN, THE PRINTED TERMS OF THE CHARTER PARTY FORM AND THE
SUN RIDER CLAUSES, THE ORDER OF PREFERENCE SHALL BE (1) THIS RECAP, (2) THE SUN
RIDER CLAUSES (AS AMENDED BY THIS RECAP) AND (3) THE ASBATANKVOY FORM (AS
AMENDED BY THIS RECAP).

-------------------TITLE------------------------------------------

CHARTERER : PHILADELPHIA ENERGY SOLUTIONS REFINING + MARKETING, LLC.
OWNER   :

SKYVIEW MARINE CO. S.A.
C/O NEREUS SHIPPING S.A.
35-39 AKTI MIAOULI, PIRAEUS, GR 185-35, GREECE
TEL: 30 210 429 2262/6
FAX: 30 210 429 2466/429
EMAIL: PIRAEUS@NEREUSHIP.GR

COMMERCIAL OPERATOR :

NEREUS SHIPPING S.A.
35-39 AKTI MIAOULI STREET, 185-35,
PIRAEUS, GREECE
TEL: 30 210 4292262 / 6
FAX: 30 4292334 / 466
TELEX: 211451 / 212245
EMAIL: PIRAEUS@NEREUSHIP.GR

DISPONENT OWNER:

C/O NEREUS SHIPPING SA
35-39 AKTI MIAOULI STREET, 185-35,
PIRAEUS, GREECE
TEL: 30 210 4292262 / 6
FAX: 30 4292334 / 466

TELEX: 211451 / 212245
EMAIL: PIRAEUS@NEREUSHIP.GR

BROKER        : POTEN AND PARTNERS, INC.
C /P FORM    : ASBATANKVOY
C/P DATE      : 10 APRIL 2019

------------------VESSEL-------------------------------------------------------

VESSEL : SPEEDWAY
FLAG : GREEK
DWT:(METRIC TONS) 158,594 M/T
DRAUGHT: 17.17 M
LOA: 274.17 M
BEAM: 48 M
BUILT: JANUARY 26, 2017
CAPACITY AT 98 %: 169,459 M3 EXCL. SLOPS
SLOP TANK AT 98 %:  3,431 M3
SBT: YES
CBT: N/A
COW: YES
COATED: NO
IGS: YES
TPC: 107.70 MT
BCM: 137.57 M
KTM: 51.40 M COLLAPSABLE TO 50 M
COILED: YES
CLASS: ABS
P AND I CLUB: LONDON STEAMSHIP
GRT: 81,413.00 MT
HULL TYPE: DOUBLE HULL
TVE/COC EXPIRATION DATE: JULY 18, 2020
H + M - USD 95,000,000
LAST SIRE INSPECTION : MOTOROIL / FINNART, UK / 11TH FEBRUARY 2019

LAST 5 CARGOES/CHARTERERS

FUEL OIL / CLEARLAKE
QUA IBOE CRUDE / PETROINEOS
FUEL OIL / PMI
SAHARA CRUDE / VALERO
CASTILA CRUDE / REPSOL


INTAKES OF NKOSSA CRUDE :

55 FT SWAD – ABT 1,045,000 BBLS OR 137,000 MT AT 15.60 M SWEK OR 51 FT 02 INCH
40 FT FWAD – ABT   720,000 BBLS OR  94,500 MT
39 FT FWAD – ABT   696,500 BBLS OR  91,300 MT
38 FT FWAD – ABT   671,000 BBLS OR  88,000 MT

VESSEL IS FITTED WITH A HIGH LEVEL ALARM SYSTEM

========================CARGO========================================

CARGO QUANTITY: PART CARGO MINIMUM  130,000 MT ALWAYS CONSISTENT WITH 55' SWAD AT DISPORT,
                          NO DEADFREIGHT FOR CHARTERER'S ACCOUNT PROVIDED MINIMUM QUANTITY SUPPLIED,
                          CHARTERER'S OPTION TO FULL CARGO.

FREIGHT ALWAYS TO BE MADE ON B/L QTY BUT MINIMUN 130,000 M/T

GRADE(S): CRUDE OIL(S)

SEGREGATION: MAX 2 GRADES WVNS.

HEAT: NO HEAT - AS AN OPTION
CHARTS OPTION TO INSTRUCT VESSEL TO MAINTAIN LOADED TEMP OR TO HEAT UP TO MAX 125 DEG F
AND PAYING ACTUAL COST OF BUNKERS CONSUMED AND TO BE PAID UPON RECEIPT OF MASTERS DOCUMENTED
INVOICE"

=======================DATES========================================

LAYDAYS: 29 - 30 APRIL 2019 (0001-1600 HRS)

CURRENT POSITION: SAILED SPORE 4 APRIL IN BALLAST TO WAF

ETA BASIS: DJENO – 28 APRIL - AGW

=======================GEOGRAPHICAL============================

LOAD:  1/2 SAFE PORT(S) PLACES WAF (NIGERIA - ANGOLA  RANGE) EXCLUDING INNER BERTHS

DISCHARGE: 1/2 SAFE PORTS USAC IF NYNNGWB EXCLUDING FLORIDA, MAINE, MARYLAND + NORTH CAROLINA.
     AND/OR: 1/2 SAFE PORTS USG PORT(S) EXCLUDING  LOOP AND FLORIDA.
     AND/OR: 1/2 SAFE PORTS CARIBS EXCLUDING CUBA,ORINOCO,HAITI AND ST. CROIX BUT INCLUDING  PUERTO RICO/ BAHAMAS/
             ST.LUCIA/ TRINIDAD/ ST. EUSTATIUS/ CAYMAN ISLAND/AND  CAICOS ISLAND.
     AND/OR: 1/2 SAFE PORTS ECC ALWAYS  WIWL
         OR: 1/2 SAFE PORTS UKC (G-H RANGE)
         OR: 1/2 SAFE PORTS EUROPEAN MED NEOBI GREECE EXCLUDING ALBANIA, YUGOSLAVIA AND FORMER YUGO

     (ALWAYS IN GEOGRAPHICAL ROTATION)

     (MAX 3 PORTS TOTAL LOAD / DISCHARGE)

=======================FINANCIAL============================

FREIGHT RATE:  WS 56.25   - IF USG DISCHARGE
               WS 58.75   - IF USAC/CARIBS DISCHARGE
               WS 61.25   - IF ECC/UKC-MED DISCHARGE

2019 WS TO APPLY

OVERAGE IF ANY AT 50% OF FIXING

TOTAL LAYTIME ALLOWED: PER WS

DEMURRAGE RATE: USD 27,000 PDPR

LADEN SPEED: VESSEL TO PERFORM LADEN VOYAGE AT 13 KTS UPTO 14 KTS WSNP IN CHARTERERS OPTION.

FREIGHT PAYABLE TO: IN U.S. DOLLARS VIA TELEGRAPHIC TRANSFER TO:

AEGEAN BALTIC BANK S.A.
93, AKTI MIAOULI, 185 38 PIRAEUS, GREECE
SWIFT : AEBAGRAA
IBAN NO :GR9705601020000010312050027
USD C/A : 0103120-50-027

IN FAVOUR OF : NEREUS SHIPPING S.A.
CORRESPONDING BANK : JP MORGAN CHASE BANK NATIONAL ASSOCIATION – NEW YORK
SWIFT : CHASUS33
ABA NO : 021000021

==========================COMMISSION============================

1.25 PCNT ADDRESS (SEE SUN COMMISSION CLAUSE NO. 28)
1.25 PCNT TO POTEN AND PARTNERS, INC. ON FREIGHT/DEADFREIGHT/DEMURRAGE

========================WAIVER OF SIGNED CHARTER PARTY===========

THE PARTIES AGREE THAT THE SIGNED CHARTER PARTY COUNTERPARTS WILL NOT BE EXCHANGED. INSTEAD, EACH WILL CONFIRM, IN WRITING (INCLUDING BY FAX OR TELEX), THAT THE TERMS SET OUT HEREIN ARE ACCEPTED.

========================SPECIAL PROVISIONS=======================

1. THE FOLLOWING REVISIONS TO PARTS I AND II OF THE ASBATANKVOY ARE AGREED BY THE PARTIES:

   PART 1 (L) DELETE AS AMENDED CL.7

   PART 1 (K): THE PARTIES SELECT NEW YORK.

   PART II, CLAUSE 6, LINE 2: DELETE "LETTER, TELEGRAPH, WIRELESS OR TELEPHONE" AND INSERT "IN WRITING (INCLUDING BY FAX OR E-MAIL)"

   PART II, CLAUSE 14(A): IN THE LAST SENTENCE, REPLACE THE WORDS "TIME OCCUPIED" WITH THE WORDS
   "ADDITIONAL TIME OCCUPIED (AS COMPARED TO THE VPYAGE ORIGINALLY INTENDED)"

   PART II, CLAUSE 21: ADD THE FOLLOWING SENTENCE AT THE END OF THE CLAUSE:
   "CHARTERER SHALL HAVE A LIEN ON THE VESSEL FOR ANY AMOUNTS DUE FROM OWNER TO CHARTERER HEREUNDER."

   PART II, CLAUSE 26: THIS CLAUSE IS DELETED IN ITS ENTIRETY.

2. DELAY AT DISCHARGE PORT CLAUSE:
   IF VESSEL IS DELAYED AT DISPORT AS A RESULT OF HOSTILITIES, THEN
   ALL TIME TO COUNT IN FULL AS LAYTIME OR DEMURRAGE IF VESSEL IS
   ON DEMURRAGE.

3. EXXON D+A CLAUSE

4. ANY TAXES AND/OR DUES AND OR LEVIES ON CARGO AND/OR FREIGHT AND
   OR VESSEL AT LOAD OR DISCHARGE PORT NOT COVERED UNDER WORLDSCALE
   TO BE FOR CHARTERER'S ACCOUNT.

5. OWNER WARRANTS VESSEL HAS A CLOSED LOADING SYSTEM.

6. GABONESE TAX CLAUSE - 'IF GABON, GABONESE SHIPPING COUNCIL TAX TO
   BE FOR CHARTERERS ACCOUNT.'

7. VESSEL TO ARRIVE LOADPORT WITH CLEAN BALLAST

8. SUN WEST AFRICA BALLAST CLAUSE.

   OWNER WARRANTS VESSEL WILL ARRIVE AT LOAD PORT WITH SUFFICIENT
   CLEAN BALLAST ON BOARD (APPROXINATELY 30 PCT OF SDWT) FOR PROPER
   MANEUVERABILITY. OWNER FURTHER WARRANTS VESSEL IS ABLE TO
   DEBALLAST AND LOAD CARGO SIMULTANEOUSLY WITH TWO VALVE SEGREGATION
   WHILE MAINTAINING 30 PER CT OF SUMMER DEADWEIGHT AND WITH THE
   VESSEL'S PROPELLER AND RUDDER PROPERLY IMMERSED AT ALL TIMES.
   ALL DELAYS, LOSSES AND EXPENSES INCURRED DUE TO VESSEL'S NON
   COMPLIANCE WILL BE FOR OWNER'S ACCOUNT.

9. ANY TIME AND OR EXPENSE IN OBTAINING A VALID TVE CERTIFICATE TO DISCHARGE IN U.S.
   TO BE FOR OWNER'S ACCOUNT.

10. OWNER/MASTER WARRANTS THAT THE H2S CONTENT AND MERCAPTAN LEVEL IN EACH
CARGO TANK PRIOR TO ARRIVAL
     AT LOADPORT WILL NOT EXCEED TERMINAL REGULATIONS.

11.OWNER'S NIGERIAN CLAUSE:
   "ANY DELAYS IN OBTAINING NIGERIAN TASK FORCE PERMISSION TO ENTER OR LEAVE
NIGERIAN
   WATERS TO COUNT IN FULL AS USED LAYTIME OR DEMURRAGE IF ON DEMURRAGE.
   ANY TAXES AND /OR DUES AND/OR LEVIES ON CARGO AND/OR FREIGHT BUT NOT LIMITED
TO
   NIGERIAN CONSERVANCY DUES,NIGERIAN HARBOUR DUES,OIL TERMINAL
DUES,WHARFAGE,NMA
   (NATIONAL MARITME AUTHORITY) FEE, AND ANY OTHER ITEMS AS PER WORLDSCALE
PREAMBLE 12
   AND /OR FIXED AND /OR VARIABLE RATE DIFFERENTIALS AS PER WORLDSCALE TO BE
SETTLED BY THEM DIRECTLY.
   ANY DELAYS IN NIGERIA DUE TO LOCKOUTS, STRIKES, RESTRAINTS, WORK TO RULE, GO-
SLOW, CIVIL
   UNREST TO COUNT IN FULL AS LAYTIME OR DEMURRAGE IF ON DEMURRAGE.

12. OWNER WILL COMPLY WITH THE APPLICABLE U.S. CUSTOMS REGULATION 19 CFR 4.7 (B)
(2) AND
     OBTAIN AND ACTIVELY CODE 3 CUSTOMERS BORDER AND PATROL INTERNATIONAL
CARRIER

BOND PRIOR TO ARRIVAL AT THE UNITED STATES OR UNITED STATES TERRITORY DISPORT.

13. IF LOADING GAMBA, OWNERS CONFIRM VESSEL MUST/WILL ARRIVE AT LOADPORT WITH DEADWEIGHT
   NOT TO EXCEED 150,000 MT.

14. NORTH AMERICA ECA CLAUSE: (N/A – ALREADY INCORPORATED INTO THE 2017 WORLD SCALE)

IF VESSEL IS INSTRUCTED TO CALL A PORT WITHIN ECA,
THEN CHARTERERS TO PAY LADEN LEG ONLY AS PER WORLDSCALE AGAINST MASTERS STATEMENT/SHIPS LOG. IF VESSEL HAS TO PASS THROUGH AN ECA ZONE TO REACH NOMINATED PORT THEN CHARTERERS TO PAY THAT PORTION WHILE VESSEL IS IN ECA AREA AGAINST MASTERS STATEMENT/SHIPS LOG

15. <u>TRADE AND ECONOMIC SANCTIONS AND ANTI-CORRUPTION COMPLIANCE CLAUSE</u>:

1.   OWNER REPRESENTS AND WARRANTS THAT NEITHER THE VESSEL, NOR OWNER, OWNER'S SUBSIDIARIES, AFFILIATES OR PARENT COMPANY,
   OR DISPONENT OWNER, IS A PARTY IDENTIFIED ON THE U.S. TREASURY DEPARTMENT'S LIST OF SPECIALLY DESIGNATED NATIONALS AND BLOCKED PERSONS; THE U.S. COMMERCE DEPARTMENT'S DENIED PERSONS LIST OR ENTITY LIST; THE U.S. STATE DEPARTMENT'S DEBARRED LIST, OR ANY OTHER SIMILAR LIST OF PROHIBITED OR DENIED PARTIES MAINTAINED BY THE U.S. GOVERNMENT, OR ANY OTHER COUNTRY OR SUPRANATIONAL OR INTERNATIONAL GOVERNMENTAL ORGANIZATION, INCLUDING, BUT NOT LIMITED TO, THE EUROPEAN UNION, UNITED KINGDOM AND UNITED NATIONS (A "<u>BLOCKED PERSON</u>").  OWNER FURTHER WARRANTS THAT NEITHER OWNER NOR ANY OF ITS SUBSIDIARIES, AFFILIATES OR PARENT COMPANY, OR DISPONENT OWNER IS ORGANIZED UNDER THE LAWS OF, ACTING AT THE DIRECTION OF, OR OPERATING UNDER THE FLAG OF, ANY COUNTRY SUBJECT TO A COMPREHENSIVE EMBARGO OR SANCTIONS PROGRAM OF THE UNITED STATES OR ANY OTHER COUNTRY OR SUPRANATIONAL OR INTERNATIONAL GOVERNMENTAL ORGANIZATION, INCLUDING, BUT NOT LIMITED TO, THE EUROPEAN UNION, UNITED KINGDOM AND UNITED NATIONS.
2.   OWNER SHALL, AT ALL TIMES WHILE PERFORMING ITS OBLIGATIONS HEREUNDER, COMPLY WITH ALL APPLICABLE TRADE AND ECONOMIC SANCTIONS LAWS AND REGULATIONS OF THE UNITED STATES AND ANY OTHER COUNTRY OR SUPRANATIONAL OR INTERNATIONAL GOVERNMENTAL ORGANIZATION, INCLUDING BUT NOT LIMITED TO THE EUROPEAN UNION, UNITED KINGDOM AND UNITED NATIONS.
3.   OWNER SHALL, AT ALL TIMES WHILE PERFORMING ITS OBLIGATIONS HEREUNDER, COMPLY WITH THE BRIBERY AND OTHER ANTI-CORRUPTION LAWS OF THE UNITED STATES AND ANY OTHER COUNTRY OR SUPRANATIONAL OR INTERNATIONAL GOVERNMENTAL ORGANIZATION, INCLUDING BUT NOT LIMITED TO, THE EUROPEAN UNION, UNITED KINGDOM AND UNITED NATIONS.  APPLICABLE BRIBERY AND ANTI-CORRUPTION LAWS INCLUDE, BUT ARE NOT LIMITED TO, THE U.S. FOREIGN CORRUPT PRACTICES ACT, THE U.K. BRIBERY ACT AND BRAZIL'S CLEAN COMPANIES ACT.
4.   OWNER SHALL DEFEND, INDEMNIFY AND HOLD HARMLESS CHARTERER, ITS SHAREHOLDERS (INCLUDING PES AND ICBC STANDARD BANK PLC), SUBSIDIARIES AND AFFILIATES, AS WELL AS THE OFFICERS, DIRECTORS, EMPLOYEES AND AGENTS OF EACH OF THEM (COLLECTIVELY, THE "<u>CHARTERER INDEMNIFIED PARTIES</u>"), FROM AND AGAINST ANY CLAIM, CAUSE OF ACTION, COST, DAMAGE, EXPENSE, FINE, JUDGMENT, LIABILITY OR PENALTY OF ANY KIND OR NATURE WHATSOEVER (INCLUDING ATTORNEYS FEES AND COSTS OF COURT OR ARBITRATION) (COLLECTIVELY, "<u>COSTS</u>") ARISING OUT OF OR RESULTING FROM OWNER'S BREACH OF THIS ADDITIONAL SPECIAL PROVISION.

16. INTERNATIONAL SHIP & PORT FACILITY SECURITY CODE / MTSA:

1.  OWNER SHALL COMPLY WITH THE REQUIREMENTS OF THE INTERNATIONAL SHIP AND PORT FACILITY SECURITY CODE AND THE RELEVANT AMENDMENTS TO CHAPTER XI OF SOLAS (TOGETHER, THE "ISPS CODE") RELATING TO THE VESSEL AND "THE COMPANY" (AS DEFINED BY THE ISPS CODE).  IF TRADING TO OR FROM THE UNITED STATES OR PASSING THROUGH UNITED STATES WATERS, OWNER SHALL ALSO COMPLY WITH THE REQUIREMENTS OF THE U.S. MARITIME TRANSPORTATION SECURITY ACT 2002 (THE "MTSA") RELATING TO THE VESSEL AND THE "OWNER" (AS DEFINED BY THE MTSA).

2.  UPON REQUEST, OWNER SHALL PROVIDE CHARTERER WITH A COPY OF THE RELEVANT INTERNATIONAL SHIP SECURITY CERTIFICATE (OR THE INTERIM INTERNATIONAL SHIP SECURITY CERTIFICATE) AND THE FULL-STYLE CONTACT DETAILS OF THE COMPANY SECURITY OFFICER ("CSO").

3.  EXCEPT AS OTHERWISE PROVIDED IN THIS CHARTER PARTY, LOSS, DAMAGES, EXPENSE OR DELAY (EXCLUDING CONSEQUENTIAL LOSS, DAMAGES, EXPENSE OR DELAY) CAUSED BY THE FAILURE OF OWNER OR THE COMPANY/OWNER TO COMPLY WITH THE REQUIREMENTS OF THE ISPS CODE/MTSA OR THIS SECTION 12 SHALL BE FOR OWNER'S ACCOUNT, AND OWNER SHALL INDEMNIFY, DEFEND AND HOLD CHARTERER, ITS AGENTS AND THE CARGO OWNER HARMLESS THEREFROM.  ANY DELAY CAUSED BY SUCH FAILURE SHALL NOT COUNT AS LAYTIME OR TIME ON DEMURRAGE.

4.  CHARTERER SHALL PROVIDE OWNER AND THE SHIP SECURITY OFFICER ("SSO")/MASTER WITH ITS FULL-STYLE CONTACT DETAILS AND, UPON REQUEST, ANY OTHER INFORMATION OWNER REQUIRES TO COMPLY WITH THE ISPS CODE/MTSA.

5.  PROVIDED THAT THE DELAY IS NOT CAUSED BY OWNER'S FAILURE TO COMPLY WITH ITS OBLIGATIONS UNDER THE ISPS CODE/MTSA (IN WHICH CASE ANY DELAY CAUSED BY SUCH FAILURE SHALL BE FOR OWNER'S ACCOUNT AND SHALL NOT COUNT AS LAYTIME OR TIME ON DEMURRAGE), ANY DELAY RESULTING FROM MEASURES IMPOSED BY A PORT FACILITY OR BY ANY RELEVANT AUTHORITY UNDER THE ISPS CODE/MTSA THAT ARE BEYOND THE REASONABLE CONTROL OF OWNER AND CHARTERER SHALL COUNT AS LAYTIME OR TIME ON DEMURRAGE, WITH DEMURRAGE CALCULATED AT 50% OF THE DEMURRAGE RATE.

6.  NOTWITHSTANDING ANYTHING TO THE CONTRARY PROVIDED IN THIS CHARTER, ANY ADDITIONAL COSTS OR EXPENSES WHATSOEVER
    SOLELY ARISING OUT OF OR RELATED TO SECURITY REGULATIONS OR MEASURES REQUIRED BY THE PORT FACILITY OR ANY RELEVANT  AUTHORITY AT THE LOADING OR DISCHARGE PORT IN ACCORDANCE WITH THE ISPS CODE/MTSA AND TO WHICH OWNER AND THE VESSEL WOULD NOT BE SUBJECT BUT FOR THE TRADING OF THE VESSEL TO SUCH LOADING OR DISCHARGE PORT, INCLUDING, BUT NOT LIMITED TO, SECURITY GUARDS, LAUNCH SERVICES, VESSEL ESCORTS, SECURITY FEES OR TAXES AND INSPECTIONS, SHALL BE FOR CHARTERER'S ACCOUNT, UNLESS SUCH COSTS OR EXPENSES RESULT SOLELY FROM A FAILURE BY OWNER TO COMPLY WITH THIS CHARTER PARTY, AN ACT OR OMISSION OF THE MASTER OR CREW, THE PREVIOUS TRADING OF THE VESSEL, THE NATIONALITY OF THE CREW OR THE IDENTITY OF OWNER'S MANAGERS.  ALL MEASURES REQUIRED BY OWNER TO COMPLY WITH THE SHIP SECURITY PLAN SHALL BE FOR OWNER'S ACCOUNT.

7.  IF EITHER PARTY MAKES ANY PAYMENT THAT IS FOR THE OTHER PARTY'S ACCOUNT ACCORDING TO SPECIAL PROVISION 16, THE OTHER PARTY SHALL INDEMNIFY THE PAYING PARTY.

8.  WHEN THE VESSEL CALLS IN THE UNITED STATES, INCLUDING ANY U.S. TERRITORY, THE FOLLOWING PROVISIONS SHALL APPLY WITH RESPECT TO ANY APPLICABLE SECURITY REGULATIONS OR MEASURES:

(a)  **REPORTING** – THE VESSEL OR ITS AGENTS SHALL REPORT AND SEND ALL NOTICES AS REQUIRED TO OBTAIN ENTRY AND EXIT CLEARANCES FROM THE RELEVANT U.S. AUTHORITIES.  ANY DELAY CAUSED BY THE FAILURE TO SO REPORT SHALL BE FOR OWNER'S ACCOUNT, UNLESS SUCH FAILURE TO REPORT IS CAUSED BY OR ATTRIBUTABLE TO

CHARTERER OR ITS REPRESENTATIVES OR AGENTS INCLUDING, BUT NOT LIMITED TO, THE SHIPPER AND/OR RECEIVER OF THE CARGO.

(b)   **CLEARANCES** – UNLESS CAUSED BY OWNER'S ACT OR FAILURE TO ACT IN COMPLIANCE WITH THIS CHARTER PARTY, ANY DELAY SUFFERED OR TIME LOST IN OBTAINING THE ENTRY AND EXIT CLEARANCES FROM THE RELEVANT U.S. AUTHORITIES SHALL COUNT AS LAYTIME OR TIME ON DEMURRAGE; PROVIDED THAT THE DEMURRAGE RATE TO BE APPLIED IN ANY CASE WHERE DELAY IS NOT CAUSED BY CHARTERER'S NEGLIGENCE SHALL BE CALCULATED AT 50% OF THE DEMURRAGE RATE.

(c)   **EXPENSES** – ANY EXPENSES OR ADDITIONAL FEES RELATING TO THE CARGO,EVEN IF LEVIED AGAINST THE VESSEL, THAT ARISE OUT OF THE SECURITY MEASURES IMPOSED AT THE LOADING PORT AND/OR THE DISCHARGE PORT AND/OR ANY OTHER PORT TO WHICH CHARTERER ORDERS THE VESSEL, SHALL BE FOR CHARTERER'S ACCOUNT.

17.  BASIC VESSEL REQUIREMENTS:  (APRIL 2015)

THE VESSEL SHALL BE SUITABLE IN EVERY WAY FOR LOADING AND DISCHARGING THE CARGO AT THE DECLARED LOADING
AND DISCHARGE PORTS AND TERMINALS, AND SHALL COMPLY IN FULL WITH ALL APPLICABLE PROCEDURES, RULES AND
REGULATIONS OF SUCH LOADING AND DISCHARGING PORTS AND TERMINALS.  OWNER WARRANTS THAT THE VESSEL IS NOT,
AND IS NOT OWNED, CONTROLLED OR AFFILIATED WITH, A BLOCKED PERSON (AS DEFINED IN SECTION 14.1 HEREOF).  ANY
COSTS, EXPENSES, FINES OR PENALTIES INCURRED BY OWNER OR CHARTERER BY REASON OF THE VESSEL NOT BEING OF
THE ABOVE DESCRIPTION AND TIME LOST THEREBY SHALL BE FOR OWNER'S ACCOUNT.

18.  SEIZURE AND ARREST: (APRIL 2015)
IF THE VESSEL IS SEIZED, ARRESTED OR OTHERWISE DETAINED BY A THIRD PARTY NOT ARISING FROM ANY ACT OR OMISSION
OF CHARTERER, OWNER SHALL INDEMNIFY AND HOLD HARMLESS CHARTERER FOR ALL DAMAGES, LOSSES, CLAIMS,
JUDGMENTS, COSTS AND EXPENSES ARISING OUT OF OR RESULTING THEREFROM, AND ANY TIME LOST SHALL NOT COUNT
AS LAYTIME.

19. FOR FREIGHT CALCULATION PURPOSES, THE PLACE OF LIGHTERING SHALL NOT CONSIDERED A DISCHARGE PORT OR
DISCHARGE BERTH WHETHER OR NOT DESIGNATED AS SUCH BY WORLDSCALE OR OTHER ORGANIZATIONS HAVING
JURISDICTION, PROVIDED THE DESIGNATED LIGHTERING AREA IS A CUSTOMARY LIGHTERING ANCHORAGE FOR THAT
DISCHARGE PORT.

-------------------------------------------------------------------------------------------------------------------------------------------------------

THE FOLLOWING SUN CLAUSES DATED JUNE 12, 1998 NO. 1-34 WITH ALTERATIONS AND DELETIONS AS LISTED BELOW
ARE HEREBY INCORPORATED IN THIS CHARTER PARTY.

1. HOURS/TERMS/CONDITIONS:
LINE 2: AFTER 'CONDITIONS' ADD 'AS AMENDED' LAYTIME PER WS

2. ARBITRATION OF SMALL CLAIMS: REVISED 4/20/15
   THE PARTIES AGREE, THAT ANY DISPUTES RELATING TO CLAIMS OF $50,000 OR
LESS IN THE AGGREGATE THAT ARE SUBMITTED
   TO ARBITRATION IN ACCORDANCE WITH THIS CHARTER SHALL BE GOVERNED BY
THE SHORT FORM ARBITRATION PROCEDURE ADOPTED
   BY THE SOCIETY OF MARITIME ARBITRATORS.

3. GENERAL AVERAGE: REVISED 4/20/15
   GENERAL AVERAGE SHALL BE ADJUSTED, STATED AND SETTLED ACCORDING TO
YORK/ANTWERP RULES, 1974, AS
   AMENDED 1994, WHICH RULES SHALL BE DEEMED TO BE A PART OF THIS CHARTER
PARTY, AND AS
   TO MATTERS NOT PROVIDED FOR BY THOSE RULES, ACCORDING TO THE LAWS AND
USAGES AT THE PORT OF
   NEW YORK.

4. CARGO RETENTION CLAUSE:
   DELETE IN IT'S ENTIRETY INSERT' AMOCO CARGO RETENTION CLAUSE AFTER
   'FREE FLOWING' INSERT 'LIQUID AND PUMPABLE'.

5. . COMPLIANCE WITH REQUIREMENTS:(REVISED APRIL 2015)
   OWNER WARRANTS THAT IT IS A MEMBER OF THE INTERNATIONAL TANKER OWNER
   POLLUTION FEDERATION, LIMITED(ITOPF) AND WILL COMPLY WITH ALL APPLICABLE
   U.S.FEDERAL, STATE, AND LOCAL AND ALL FOREIGN LAWS, INTERNATIONAL
   TREATIES AND CONVENTIONS, TREATIES, PROTOCOLS OR OTHER AGREEMENTS
   RELATED TO THE NAVIGATION, MANAGEMENT, HANDLING OR OPERATION OF THE
   VESSEL AND  APPLICABLE  TERMINAL RULES AND REGULATIONS INCLUDING, BUT
   NOT LIMITED TO, CUSTOMS REGULATIONS; THE OIL POLLUTION ACT OF 1990; ALL
   APPLICABLE PORT RULES AND REGULATIONS; AND WILL HAVE AND CARRY ABOARD
   THE VESSEL A U.S.FEDERAL MARITIME COMMISSION CERTIFICATE OF FINANCIAL
   RESPONSIBILITY (OIL POLLUTION) AS ISSUED BY THE UNITED STATES COAST
   GUARD, AND A CERTIFICATE OF INSURANCE AS DESCRIBED IN THE CIVIL
   LIABILITY CONVENTION FOR OIL POLLUTION DAMAGE. IN NO CASE SHALL
   CHARTERER BE LIABLE FOR USED LAYTIME, DEMURRAGE, OR OTHER DELAY AS A
   RESULT OF OWNER'S FAILURE TO COMPLY WITH THE AFOREMENTIONED OBLIGATIONS,
   AND ANY LOSSES, DIRECT EXPENSES OR DIRECT DAMAGES ARISING AS A RESULT OF
   SUCH FAILURE TO COMPLY WITH THIS CLAUSE WILL BE FOR OWNER'S ACCOUNT.
   THIS DOES NOT RELEASE CHARTERERS FROM THEIR RESPONSIBILITY TO
   NOMINATE VESSEL TO AND CLEAR THE VESSEL WITH ALL LOAD AND DISCHARGE
   PORT(S)/TERMINALS(S) PRIOR TO LIFTING SUBJECTS.

6. INSURANCE: (REVISED APRIL 2015) –
   OWNER WARRANTS THAT FROM THE TIME THE VESSEL IS OBLIGATED TO PROCEED
TO THE LOADING
   PORT(S) AND THROUGHOUT THE VESSEL'S SERVICE UNDER THIS CHARTER PARTY,
OWNER
   SHALL MAINTAIN THE FOLLOWING INSURANCE WITH RESPECT TO THE VESSEL AT
OWNER'S EXPENSE:
1.   HULL AND MACHINERY INSURANCE INCLUDING COLLISION LIABILITY IN AN AMOUNT EQUAL TO
THE FULL COMMERCIAL VALUE OF THE VESSEL, THE UNDERWRITERS OF SUCH INSURANCE
TO WAIVE ALL RIGHTS OF SUBROGATION AGAINST CHARTERER;
2.   PROTECTION AND INDEMNITY INSURANCE ON A FULL ENTRY BASIS WITH AN INTERNATIONAL
GROUP P&I CLUB, SUCH INSURANCE TO INCLUDE, BUT NOT BE LIMITED TO: COVERAGE IN
RESPECT OF LOSS OF OR DAMAGE TO THE CARGO; COVERAGE FOR INJURIES TO OR DEATH
OF MASTERS, MATES AND CREW; COLLISION LIABILITIES NOT INSURED UNDER THE H&M
POLICY; EXCESS COLLISION LIABILITIES; CARGO LEGAL LIABILITIES; AND POLLUTION

LIABILITIES.  THE LIMIT OF SUCH INSURANCE SHALL BE AS ESTABLISHED BY THE RULES OF THE INTERNATIONAL GROUP OF P&I CLUBS EXCEPT FOR POLLUTION LIABILITIES, WHICH SHALL BE LIMITED TO THE MAXIMUM POLLUTION LIMIT OFFERED THROUGH THE P&I CLUBS OF THE INTERNATIONAL GROUP (CURRENTLY US $1 BILLION).  ~~CHARTERER SHALL BE NAMED AS AN ADDITIONAL ASSURED ON ALL P&I CLUB ENTRIES (SUBJECT TO MISDIRECTED ARROW CLAUSE), AND THE P&I CLUB SHALL WAIVE ALL RIGHTS OF SUBROGATION AGAINST CHARTERER;~~ AND

3.  HULL AND P&I WAR RISK INSURANCE WITH A LIMIT EQUAL TO THE FULL COMMERCIAL VALUE OF THE VESSEL, ~~SUCH INSURANCE TO WAIVE ALL RIGHTS OF SUBROGATION AGAINST CHARTERER.~~
OWNER SHALL PROVIDE TO CHARTERER, ON REQUEST, EVIDENCE OF SUCH INSURANCE.  ~~ANY EXTRA INSURANCE ON FREIGHT AND/OR CARGO, DUE TO VESSEL'S AGE, CLASSIFICATION, AND/OR FLAG, IS FOR OWNER'S ACCOUNT, AND CHARTERER SHALL HAVE THE RIGHT TO "DEDUCT" SUCH EXTRA INSURANCE COSTS FROM FREIGHT DUE OWNER.~~

7. POLLUTION PREVENTION AND RESPONSIBILITY:
    LINE 11 DELETE FROM THE WORD "ANY" THROUGH LINE 13 TO THE WORD "EXPENSE".

8. DISPUTE RESOLUTION:

9. ETA:

10. CLEAN BALLAST:

11. BUNKER:

12. DIVERSION:

13. CARGO SHIFTING CLAUSE:

14. SUN SPEED CLAUSE:
    LINE 2 INSERT ' SEE MAIN TERMS ABOVE'
    LINE 4 TO 13 DELETE IN IT'S ENTIRETY

15. HEATING:
    ADD 'AT CHARTERERS OPTION'
    DELETE ANY REFERENCE TO '135' INSERT '125'
    AT END ADD FOLLOWING 'ANY COST FOR RAISING CARGO TEMPERATURE
    TO BE PAID BY CHARTERERS UPON RECEIPT OF MASTER'S INVOICE' (SEE MAIN BODY OF C/P).

16. CHANGE OF DESTINATION/BILL OF LADING INDEMNITY CLAUSE:

17. AGENCY: (REVISED APRIL 2015):
    IT IS UNDERSTOOD AND AGREED CHARTERER RESERVES THE RIGHT TO APPOINT AGENTS WHOSE FEES ARE COMPETITIVE WHO
    WILL ACT AS THE AGENT FOR, AND BE SOLELY RESPONSIBLE TO, THE VESSEL ENTERING AND CLEARING THE LOAD/DISCHARGE
    PORT(S). SUCH AGENTS, ALTHOUGH APPOINTED BY CHARTERER, SHALL BE PAID BY OWNER.

18. BOARDING CLAUSE:

19. SURVEY AND SAMPLE:

20. LIGHTERING:

LINES 8/9 DELETE 'ONE HALF' INSERT 'FULL',

21. PUMPING:
    LINE 3 DELETE (OR PRO RATA TIME FOR A PART CARGO)
    LINE 9 AFTER WORD 'MANIFOLD' INSERT 'PROVIDED SHORE FACILITIES PERMIT'
    LINE 10 INSERT 'COWING'
    DELETE LAST SENTENCE OF CLAUSE

22. CRUDE OIL WASHING:
    INSERT AT END 'OVER AND ABOVE THAT SPECIFIED IN VESSEL'S COW MANUAL'.

23. IGS DEPRESSURIZATION:

24. CLAIMS:
    LINE 5 DELETE 'THIRTY (30)' AND INSERT 'SIXTY (60)'
    LINE 7 DELETE 'SIXTY(60)' AND INSERT 'NINETY (90)'

25. LAYTIME-DEMURRAGE EXCEPTIONS REVISED APRIL 2015):
    NOTWITHSTANDING ANYTHING IN PARTS I OR II TO THE CONTRARY, THE FOLLOWING TIME PERIODS SHALL NOT BE
  CHARGED AGAINST LAYTIME, USED LAYTIME OR TIME ON DEMURRAGE, WHETHER OR NOT LIGHTERING HAS OCCURRED:
  1. ALL THE TIME BETWEEN EARLY ARRIVAL NOR AT LOAD PORT AND 0600 ON THE FIRST DAY OF LAYDAYS, UNLESS THE VESSEL
    BERTHS EARLIER WITH CHARTERER'S CONSENT;
  2.   THE FIRST SIX (6) HOURS AFTER NOR AT ALL OTHER LOAD AND DISCHARGE PORTS, UNLESS THE VESSEL BERTHS EARLIER;
  3.   ALL TIME PROCEEDING FROM ANY FIRST ANCHORAGE TO THE FIRST BERTH AT EACH PORT UNTIL THE VESSEL IS
    SECURELY MOORED AT THE DESIGNATED LOADING / DISCHARGE BERTH IN ALL RESPECTS READY TO LOAD OR DISCHARGE
    CHARTERER'S CARGO, IN FREE PRATIQUE, CUSTOMS AND IMMIGRATION CLEARED;
  4.   ALL TIME SPENT DISCHARGING BALLAST WATER OR SLOPS, UNLESS CONCURRENT WITH CARGO OPERATIONS, BUT ONLY
    TO THE EXTENT IT DOESN'T INTERFERE WITH OR OTHERWISE NEGATIVELY AFFECT CARGO OPERATIONS;
  5.   ALL TIME LOST DUE TO ANY OTHER CAUSE ATTRIBUTABLE TO THE "DIRECT" FAULT OF OWNER, THE VESSEL,
    HER MASTER OR CREW, OR AGENTS OR SUBCONTRACTORS OF OWNER.

26. WEATHER:
    DELETE WORD 'LIGHTERING'

27. SLOP:

28. ADDRESS COMMISSION:

29. WAR RISK: (WHERE APPLICABLE)
    LINE 4: DELETE "ON THE DATE OF THIS CHARTER" INSERT " 5 APRIL 2019 "

30. EARLY LOADING:

31. HALF TIME

32. BREACH

33. ISM CLAUSE:

34. YEAR 2000 WARRANTY –  DELETE IN IT'S ENTIRETY

END OF RECAP
--------------------------------------------------------
THANK YOU FOR YOUR SUPPORT AND COOPERATION.

KIND REGARDS,

PETER PERRI

POTEN AND PARTNERS, INC.

# EXHIBIT 9

# NEREUS SHIPPING S.A.

### PIRAEUS (GREECE) OFFICE
### 35/39 AKTI MIAOULI

DATE : 30th May, 2019

INVOICE № : **8014**
VOY. № : **18/19**

Messrs.  **PHILADELPHIA ENERGY SOLUTIONS REFINING + MARKETING, LLC.**

℅ Messrs. **POTEN AND PARTNERS, INC**

---

### M.T. "SPEEDWAY" – CP 10.04.2019

| | |
|---|---|
| **Cargo heating expenses for Charterers account as per Master's Statement and supporting documents:** | |
| • IFO: 99.3 MT x US\$ 422 PMT | US.\$ 41,904.60 |
| • MGO: 6 MT x US\$ 600 PMT | 3,600.00 |
| | **US.\$ 45,504.60** |

AEGEAN BALTIC BANK S.A.
93, AKTI MIAOULI, 185 38 PIRAEUS, GREECE
SWIFT : AEBAGRAA
IBAN NO : GR9705601020000010312050027
USD C/A : 0103120-50-027
IN FAVOUR OF : NEREUS SHIPPING S.A.
CORRESPONDING BANK :
JP MORGAN CHASE BANK NATIONAL ASSOCIATION-NEW YORK
SWIFT : CHASUS33
ABA NO. : 021000021

# NEREUS SHIPPING S.A.

### PIRAEUS (GREECE) OFFICE
### 35/39 AKTI MIAOULI

DATE : 30th May, 2019

INVOICE № : **8013**
VOY. № : **18/19**

Messrs.  **PHILADELPHIA ENERGY SOLUTIONS REFINING + MARKETING, LLC.**

℅ Messrs. **POTEN AND PARTNERS, INC**

---

**M.T. "SPEEDWAY" – CP 10.04.2019**

| | |
|---|---|
| To demurrage incurred at loading and discharging ports as per the attached laytime statement and statement of facts. | |
| 04Days-16 Hours-17Mins (or 4.678472 days) @ US.$ 27,000.- pdpr | US.$ 126,318.75 |
| Less: 1.25% address commission | 1,578.98 |
| | **US.$ 124,739.77** |

AEGEAN BALTIC BANK S.A.
93, AKTI MIAOULI, 185 38 PIRAEUS, GREECE
SWIFT : AEBAGRAA
IBAN NO : GR9705601020000010312050027
USD C/A : 0103120-50-027
IN FAVOUR OF : NEREUS SHIPPING S.A.
CORRESPONDING BANK :
JP MORGAN CHASE BANK NATIONAL ASSOCIATION-NEW YORK
SWIFT : CHASUS33
ABA NO. : 021000021

NEREUS SHIPPING S.A.

## LAYTIME STATEMENT

| Date : | 30.05.2019 | Charterer : | PHILADELPHIA ENERGY SOLUTIONS |
|---|---|---|---|
| Vessel : | MT "SPEEDWAY" | Product : | CRUDE OIL |
| Shipping File : | 18/19 | Loading : | DJENO TERMINAL |
| C/P Date : | 10.04.2019 | Discharging : | PHILADELPHIA |
| | | Commencement of laydays : 29.04.2019 00:01 | |

### LOADPORT (DJENO TERMINAL)

| | | | | D - H - M |
|---|---|---|---|---|
| NOR Tendered | | 29.04.19 | 00:01 | |
| Shifting commencement | | 30.04.19 | 08:06 | |
| All fast | | 30.04.19 | 11:12 | |
| Load commenced | | 30.04.19 | 17:54 | |
| Load completed | | 02.05.19 | 07:24 | |
| Hoses disconnected | | 02.05.19 | 08:06 | |
| Documents signed | | 02.05.19 | 13:48 | |
| | | | | D - H - M |
| Laytime starts | | 29.04.19 | 06:01 | |
| Laytime ends | | 02.05.19 | 13:48 | |
| Total time used | | | | 03-07-47 |

| Deductions : | From | To | D - H - M |
|---|---|---|---|
| Documents allowance | | | 00-03-00 |
| Shifting to berth | 30.04.19-08:06 | 30.04.19-11:12 | 00-03-06 |
| Total deduction | | | 00-06-06 |
| **Net time used at loadport** | | | **03-01-41** |

### LIGHTERING (BIGSTONE)

| | | | | D - H - M |
|---|---|---|---|---|
| NOR Tendered | | 20.05.19 | 15:42 | |
| All fast | | 20.05.19 | 16:48 | |
| Lightering commenced | | 20.05.19 | 18:24 | |
| Lightering completed | | 23.05.19 | 15:24 | |
| Hoses disconnected | | 23.05.19 | 16:00 | |
| Anchor up | | 24.05.19 | 11:12 | |
| | | | | D - H - M |
| Laytime starts | | 20.05.19 | 16:48 | |
| Laytime ends | | 24.05.19 | 11:12 | |
| Total time used | | | | 03-18-24 |

| Deductions : | From | To | D - H - M |
|---|---|---|---|
| | | | |
| | | | 03-18-24 |

### DISPORT (F. MIFFLIN)

| | | | | D - H - M |
|---|---|---|---|---|
| All fast | | 24.05.19 | 21:48 | |
| Discharge commenced | | 24.05.19 | 23:18 | |
| Discharge completed | | 25.05.19 | 17:24 | |
| Hoses disconnected | | 25.05.19 | 18:00 | |
| | | | | D - H - M |
| Laytime starts | | 24.05.19 | 21:48 | |
| Laytime ends | | 25.05.19 | 18:00 | |
| Total time used | | | | 00-20-12 |

| Deductions : | From | To | D - H - M |
|---|---|---|---|
| Total deduction | | | |
| **Net time used at disport** | | | **00-20-12** |

| | D - H - M |
|---|---|
| Total net used time : | 07-16-17 |
| Allowed laytime : | 03-00-00 |
| Time on demurrage : | 04-16-17 |
| or: | 4.678472 days |
| Demurrage rate pdpr : | US.$ 27,000 |
| **Gross demurrage :** | **US.$ 126,318.75** |

NEREUS SHIPPING S.A.                                    Issue Date:07.09.2011
PIRAEUS                                                 Rev.00

# NOTICE OF READINESS

**MESSRS:**

DJENO TERMINAL

**VESSEL :** M/T SPEEDWAY

**PORT :** DJENO, REPUBLIC OF CONGO

**DATE :** 29 / April / 2019

Dear Sirs,

I hereby tender you the good __M/T__ vessel __M/T SPEEDWAY__ under my command which _anchored_ at port of DJENO, REPUBLIC OF CONGO on 28TH April 2019 at 14 : 06 hrs local time, and as from today 29TH April 2019 at 00 : 01 hrs local time, she is ready in all respects to commence loading of her cargo N'KOSSA CRUDE OIL as per terms,conditions, provisions and/or exemptions of the governing Charter Party dated 10TH April 2019 under which this voyage is performed.

Kindly acknowledge receipt of this notice of readiness by returning to us the attached copies duly signed.

Yours faithfully,

Captain     EVANGELOS CHIOTIS
Master      M/T SPEEDWAY

Acknowledged and accepted by: _LOADING MASTER_     Sign
Date: _30/04/2019_     Time: _06:00 LT_     Local
Name: _BANKOUANGA_     in CAPITAL LETTERS

FIXTURE                     LOP.01                     Page 1 of 1

NEREUS SHIPPING S.A.
PIRAEUS

Issue Date:07.09.2011
Rev.03/15.11.2016

# S T A T E M E N T   O F   F A C T S

| VESSEL: | SPEEDWAY | PORT: DJENO, REPUBLIC OF CONGO | DATE: | 28/Apr-02/May/2019 | BERTH: | | SBM | |
|---|---|---|---|---|---|---|---|---|
| LOAD/DISCHARGE CARGO: | | N'KOSSA CRUDE OIL | B/L QUANTITY: | | 905545.01 | BBLS @ 60 | | |
| | | | | | 117045.982 | M.T. | API/SG | 42.14 |

| | TIME | DATE | NUMBER OF TUGS USED | | | |
|---|---|---|---|---|---|---|
| EOSP/STBY ENGINES | 13:30 | 28-Apr-19 | | | | |
| Arrived Pilot Station | | | MOORING | UNMOORING | SHIFTING | ESCORTING |
| N.O.R. Tendered | 00:01 | 29-Apr-19 | 1 | 1 | - | - |
| N.O.R. Accepted | 06:00 | 30-Apr-19 | ROB – ARRIVAL (E.O.S.P.) | | | |
| Free Pratique Granted | 06:00 | 30-Apr-19 | HFO HS | | HFO LS | MDO/MGO HS |
| Pilot On Board | 08:12 | 30-Apr-19 | 1057.9 | MT | - MT | - MT |
| Pilot Off ☑  On ☐ | 14:24 | 02-May-19 | MDO/MGO LS | | LUB OILS | WATER |
| Pilot Off ☐  On ☐ | | | 450.7 | MT | 72000 LTRS | 470 MT |
| Pilot Off ☐  On ☐ | | | BUNKERS/LUBs/WATER RECEIVED | | | |
| Pilot Off ☐  On ☐ | | | HFO HS | | HFO LS | MDO/MGO HS |
| Pilot Off | | | - | MT | - MT | - MT |
| Anchored | 14:06 | 28-Apr-19 | MDO/MGO LS | | LUB OILS | WATER |
| Anchor Up | 08:06 | 30-Apr-19 | - | MT | - LTRS | - MT |
| Anchored | | | ROB - SAILING | | | |
| Anchor Up | | | HFO HS | | HFO LS | MDO/MGO HS |
| Anchored | | | 1026.6 | MT | - MT | - MT |
| Anchor Up | | | MDO/MGO LS | | LUB OILS | WATER |
| Tug Boat(T.B) Fasted | 10:42 | 30-Apr-19 | 450.7 | MT | 72000 LTRS | 400 MT |
| T.B.: Fasted ☐  Unfasted☑ | 09:36 | 02-May-19 | CARGO QUANTITY | | | |
| T.B.: Fasted ☐  Unfasted☐ | | | PARCEL 1 | PARCEL 2 | PARCEL 3 | |
| T.B.: Fasted ☑  Unfasted☐ | | | 900631 | | | BBLS |
| T.B.: Unfasted | | | 116406.53 | | | MT |
| First Line Ashore | 11:06 | 30-Apr-19 | 114564.74 | | | LT |
| All Fast | 11:12 | 30-Apr-19 | V.E.F. APPLIED | | | |
| Commenced Unmooring | 09:00 | 02-May-19 | 902761 | | | BBLS |
| Completed Unmooring – Left Dock | 09:06 | 02-May-19 | 116681.9 | | | MT |
| Commenced Gauging | 11:24 | 30-Apr-19 | 114835.75 | | | LT |
| Completed Gauging | 11:54 | 30-Apr-19 | STS OPERATION | TIME | DATE | |
| Calculations Completed | | | STS CHECK LIST 2 | | | |
| Commenced Gauging | 07:30 | 02-May-19 | STS CHECK LIST 3 | | | |
| Completed Gauging | 09:00 | 02-May-19 | STS CHECK LIST 4 | | | |
| Calculations Completed | 12:30 | 02-May-19 | STS CHECK LIST 5 | | | |
| Commenced Gauging      Re Checked | 11:00 | 02-May-19 | REMARKS/STOPPAGES /DELAYS/REASON OF (e.g. Delays of commencement of operation, cargo docs delay, etc ) | | | |
| Completed Gauging      Re Checked | 12:00 | 02-May-19 | | | | |
| Calculations Completed | | | | | | |
| Commenced Gauging | | | | | | |
| Completed Gauging | | | Fm: 29/Apr/2019 00:01 Hrs Lt NOR tendered | | | |
| Calculations Completed | | | To : 30/Apr/2019 08:12 Hrs Lt Pilot on board | | | |
| Final API received | 10:18 | 02-May-19 | | | | |
| Documents on board | 13:30 | 02-May-19 | Fm: 30/Apr/2019 11:54 Hrs Lt Cargo Hoses Connected | | | |
| Signed Cargo Documents | 13:48 | 02-May-19 | To : 30/Apr/2019 17:54 Hrs Lt Commenced loading | | | |
| Hoses Connect ☑  Disconnect ☐  Commenced | 11:12 | 30-Apr-19 | | | | |
| Hoses Connected ☐  Disconnect ☑ | 11:54 | 30-Apr-19 | Fm: 01/May/2019 07:24 Hrs Lt Requested by shore | | | |
| Hoses Connect ☐  Disconnect ☑  Commenced | 07:48 | 01-May-19 | To : 01/May/2019 18:30 Hrs Lt | | | |
| Hoses Connected ☐  Disconnect ☑ | 08:06 | 02-May-19 | | | | |
| Deballasting ☑  Ballasting ☐  Commenced | 19:00 | 30-Apr-19 | Fm: 02/May/2019 08:06 Hrs Lt Cargo Arms Disconnected | | | |
| Deballasting ☑  Ballasting ☐  Completed | 13:30 | 01-May-19 | To : 02/May/2019 13:30 Hrs Lt Cargo Docs onboard | | | |
| Loading☑ Discharge☐ Lightering☐Commenced | 17:54 | 30-Apr-19 | | | | |
| Loading ☑ Discharge☐ Lightering☐ Interrupted SHIP ☐SHORE☑ STOP | 07:24 | 01-May-19 | | | | |
| Loading ☑ Discharge☐ Lightering☐ Resumed | 18:30 | 01-May-19 | | | | |
| Loading☐ Discharge☐ Lightering☐ Interrupted SHIP ☐SHORE☐ STOP | | | | | | |
| Loading☐ Discharge☐ Lightering☐ Resumed | | | | | | |
| Loading☐ Discharge☐ Lightering☐ Interrupted SHIP ☐SHORE☐ STOP | | | | | | |
| Loading☐ Discharge☐ Lightering☐ Resumed | | | | | | |
| Loading☐ Discharge☐ Lightering☐ Interrupted SHIP ☐SHORE☐ STOP | | | | | | |
| Loading☐ Discharge☐ Lightering☐ Resumed | | | | | | |
| Loading☐ Discharge☐ Lightering☐ Interrupted SHIP ☐SHORE☐ STOP | | | | | | |
| Loading☐ Discharge☐ Lightering☐ Resumed | | | | | | |
| Loading☑ Discharge☐ Lightering☐ Completed | 07:24 | 02-May-19 | | | | |
| Shifted From: | | | | | | |
| To: | | | | | | |
| Commenced Sea Passage | 14:30 | 02-May-19 | | | | |

MASTER
M/T SPEEDWAY
PIRAEUS

AGENT
BOLLORE
Congo
R. POINTE-NOIRE

INSPECTOR

BOLLORE
AS AGENT ONLY

NEREUS SHIPPING S.A.                                    Issue Date:07.09.2011
PIRAEUS                                                 Rev.00

# LETTER OF PROTEST

**MESSRS:**

                             **VESSEL : M/T SPEEDWAY**

    DJENO TERMINAL          **PORT : DJENO, REPUBLIC OF CONGO**

                             **DATE :**  02  /  May  /  2019

Dear Sirs,

## Sub: Delay in cargo operation
## due to number and size of shore connections

Please be informed that my vessel ___M/T SPEEDWAY___ disposes ___3 x 16"___

connections in both ship's side manifolds but you connected ___2 x 16"___ cargo arms/hoses

in BERTH ___Djeno SBM___ for the ___loading___ of her cargo ___N'KOSSA___

___CRUDE OIL___ on ___2ND___ May ___2019___ as a result of which my vessel has been delayed

in your port of ___DJENO, REPUBLIC OF CONGO___ and the total time required t ___loading___ her

cargo ___N'KOSSA C.O.___ exceeded to target time.

Therefore, I serve you this notice of protest and hold you as cargo receivers fully responsible for all costs,

expenses and losses for extra time used for discharge and the consequences as well as that may arise by this

reason, reserving the rights of my Owners and/or Charterers and/or Agents to claim according in due time.

Kindly acknowledge receipt by returning the copies of this letter duly signed.

Yours faithfully,

FOR.RECEIPT.ONLY

Captain     EVANGELOS CHIOTIS

Master      M/T SPEEDWAY

Acknowledged and accepted by: _Loading Master_     Sign

Date: _08 - 05 - 19_     Time: _____     Local

Name: _MAPITY ALIXE_     In CAPITAL LETTERS

FIXTURE               LOP.05               Page 1 of 1

NEREUS SHIPPING S.A.                                      Issue Date:07.09.2011
PIRAEUS                                                                    Rev.00

# LETTER OF PROTEST

**MESSRS:**

                                      **VESSEL : M/T SPEEDWAY**

     DJENO TERMINAL          **PORT : DJENO, REPUBLIC OF CONGO**

                                        **DATE :** 02  /  May  /  2019

Dear Sirs,

## Re: Delay in Loading due low loading rate

Please be informed that due to your limited loading rate my vessel has been delayed at your port

_____DJENO, REPUBLIC OF CONGO_____ on _____2ND_____ May _____2019 and the total

time required to load her cargo nominated exceeds the target time in accordance with her maximum requested

loading rate of _____106927_____ Bbls / ~~Cubic Meters~~ per hour.

Terminal loading rate achieved:

_____34300_____ Bbls / ~~Cubic Meters~~ per hour.

Therefore, I serve you this notice of protest and hold you as cargo suppliers fully responsible for all costs,

expenses and losses for extra time used for loading and the consequences as well as that may arise by this

reason, reserving the rights of my Owners and/or Charterers and/or Agents to claim accordingly in due time.

Kindly acknowledge receipt by returning the copies of this letter duly signed.

                                        Yours faithfully,

**FOR.RECEIPT.ONLY**

                             Captain     EVANGELOS CHIOTIS

                             Master      M/T SPEEDWAY

Acknowledged and accepted by: Loading Master          Sign

Date:   02-05-19       Time:                Local

Name:  MAPITY Alixe      in CAPITAL LETTERS

NEREUS SHIPPING S.A.                                      Issue Date:07.09.2011

PIRAEUS                                                   Rev.00

# LETTER OF PROTEST

**MESSRS:**

| | |
|---|---|
| DJENO TERMINAL | **VESSEL :** M/T SPEEDWAY |
| | **PORT :** DJENO, REPUBLIC OF CONGO |
| | **DATE :** 02 / May / 2019 |

Dear Sirs,

## Sub : Berthing Delays on commencement of Loading

On behalf of my Owners, Operators, Charterer's B/L holders and P & I Club I hereby lodge protest and hold you

fully responsible in respect of delays in commencing loading operation in port DJENO, REPUBLIC OF CONGO

_____ for a period of   32 : 12   hrs/min till Pilot Boarded.

Vessel Tendered Notice Of Readiness on   29TH   April   2019 at  00  :  01  hrs L.T.

as per terms, Conditions, provisions and / or exemptions of the governing Charter Party:   10-Apr-2019

under which this voyage is performed, vessel is ready to load her cargo.

Pilot boarded   30TH   April   2019 at  08  :  12  hrs L.T.

Finally vessel berthed (ALL FAST)  at   11  :  54  hrs L.T.   on 30/Apr/2019

In view of the above I hold you fully responsible for all the costs, expenses, losses as well as the consequences

that may arise by this reason, reserving the rights of all the above mentioned parties to claim accordingly in due

time.

Kindly acknowledge receipt by returning the copies of this letter duly signed.

FOR RECEIPT ONLY

Yours faithfully,

Captain   EVANGELOS CHIORS

Master   M/T SPEEDWAY

Acknowledged and accepted by: Loading Master                    Sign

Date:  02 - 05 - 19              Time: _____   Local

Name:  MAPITY ALIXE              in CAPITAL LETTERS

NEREUS SHIPPING S.A.                                    Issue Date:07.09.2011
PIRAEUS                                                 Rev.00

# **LETTER OF PROTEST**

**MESSRS:**

|                          |                                          |
|--------------------------|------------------------------------------|
| DJENO TERMINAL           | **VESSEL :** M/T SPEEDWAY                 |
|                          | **PORT :** DJENO, REPUBLIC OF CONGO       |
|                          | **DATE :** 02 / May / 2019                |

Dear Sirs,

## **Sub: Delay on delivery of cargo documents**

I hereby lodge protest to you on behalf of my vessel's owners and/or charters and/or Agents and B/L

holders and hold you as cargo suppliers fully responsible in respect of the delay on delivery of cargo

documents on board my vessel      M/T SPEEDWAY

Vessel completed her loading in your port          DJENO, REPUBLIC OF CONGO

berth          SBM          on   2ND     May          2019 at     07  :  24  Hrs

local time and cargo hoses disconnected  At       08  :  06  hrs    After that vessel was awaiting

the cargo documents which finally arrived on board on  2ND        May          2019

at   13  :  30  hrs,causing delay to my vessel of     05  :  36  hrs   since completion of

loading.

In view of the above I hold you fully responsible for all the costs, expenses,losses as well as the

consequences that may arise by this reason, reserving the rights of all the above mentioned parties to

claim accordingly in due time.

Kindly acknowledge receipt by returning the copies of this letter duly signed.

FOR RECEIPT ONLY                        Yours faithfully,

Captain    EVANGELOS CHIOTIS

Master          M/T SPEEDWAY

Acknowledged and accepted by: Loading Master                  Sign

Date:   08 - 05 - 19          Time:                              Local

Name:  MAPITY ALIXE             In CAPITAL LETTERS

NEREUS SHIPPING S.A.                                          Issue Date:07.09.2011

PIRAEUS                                                       Rev.00

# LETTER OF PROTEST

**MESSRS:**

                              **VESSEL : M/T SPEEDWAY**

   DJENO TERMINAL            **PORT :** DJENO, REPUBLIC OF CONGO

                              **DATE :** 02 / May / 2019

Dear Sirs,

## Re : Delays/ Stoppages imposed by Terminal

This is to bring to your kind attention that the following delays/stoppages imposed by your Terminal to the above

named vessel during her present call at _____ Djeno SBM _____.

| From: | | To: | | |
|---|---|---|---|---|
| Date | Time | Date | Time | Due to: |
| 29-Apr-19 | 00:01 hrs | 30-Apr-19 | 08:12 hrs | From NOR tendered to Pilot on Board |
| 30-Apr-19 | 11:54 hrs | 30-Apr-19 | 17:54 hrs | Fm: Hoses Connected To: Commenced loading |
| 01-May-19 | 07:24 hrs | 01-May-19 | 18:30 hrs | Loading interrupted (requested by shore) |
| 02-May-19 | 08:06 hrs | 02-May-19 | 13:30 hrs | Fm: Hoses Disconnected To: Cargo Docs on boa |
| | hrs | | hrs | |
| | hrs | | hrs | |
| | hrs | | hrs | |
| | hrs | | hrs | |

Therefore, on behalf of the named vessel, her Owners and  Charterers, I hereby lodge Protest , holding you

solely responsible for any costs, damage, or  claims arising from the aforesaid,  and reserve the rights  to

take  all actions  as  may  be  considered  necessary  to  protect  the  interest  of  those  parties.

Kindly acknowledge receipt of this letter and oblige accordingly.

FOR RECEIPT ONLY

                                        Yours faithfully,

                                        Captain    EVANGELOS CHIOTIS

                                        Master     M/T SPEEDWAY

Acknowledged and accepted by: Loading Master                          Sign

Date: 02-05-19                    Time: _____        Local

Name: MAPITY ALIXE               in CAPITAL LETTERS

FIXTURE                              LOP.15                      Page 1 of 1

IEREUS SHIPPING S.A.                                      Issue Date:07.09.2011
'IRAEUS                                                   Rev.00

# NOTICE OF READINESS

**MESSRS:**

PHILADELPHIA ENERGY          **VESSEL :** M/T SPEEDWAY
SOLUTIONS                    **PORT :** BIGSTONE ANCHORAGE, USA
                             **DATE :** 20 / May / 2019

Dear Sirs,

I hereby tender you the good    M/T    vessel    **M/T SPEEDWAY**    under my command
which anchored at port of  BIGSTONE ANCHORAGE, USA    on    20TH    May
2019 at  15 : 42  hrs local time, and as from today    20TH    May    2019
at  15 : 42  hrs local time,  she is ready in all respects to commence    discharging
of her cargo    N'KOSSA CRUDE OIL    as per terms,conditions, provisions and/or exemptions
of the governing Charter Party dated    10TH    April    2019 under which this voyage is
performed.

Kindly acknowledge receipt of this  notice of  readiness  by  returning  to us the  attached  copies
duly  signed.

Yours faithfully,

                                    EVANGELOS CHIOTIS
Philadelphia Energy Solutions           M/T SPEEDWAY
      Captain
 MTA / Cargomaster
    Eric J Clarke

Acknowledged and accepted by: _____    Sign
Date:  MAY 20TH 2019        Time:   17:48        Local
Name:  _____         In CAPITAL LETTERS

FIXTURE                  LOP.01                    Page 1 of 1

NEREUS SHIPPING S.A.
PIRAEUS

Issue Date:07.09.2011
Rev.03/15.11.2016

## S T A T E M E N T   O F   F A C T S

| VESSEL: | SPEEDWAY | PORT: | BIGSTONE ANCHORAGE, USA | DATE: | 20-21/May/2019 | BERTH: | OSG 350/VISION |
|---|---|---|---|---|---|---|---|

| LOAD/DISCHARGE CARGO: | N'KOSSA CRUDE OIL | B/L QUANTITY: | | 905545.01 | BBLS @ 60 | |
|---|---|---|---|---|---|---|
| | | | | 117045.982 | M.T. | API/SG | 42.14 |

| | TIME | DATE | | | | |
|---|---|---|---|---|---|---|
| EOSP/STBY ENGINES | 13:30 | 20-May-19 | **NUMBER OF TUGS USED** | | | |
| Arrived Pilot Station | 13:42 | 20-May-19 | MOORING | UNMOORING | SHIFTING | ESCORTING |
| N.O.R. Tendered | 15:42 | 20-May-19 | - | - | - | - |
| N.O.R. Accepted | 17:48 | 20-May-19 | **ROB – ARRIVAL (E.O.S.P.)** | | | |
| Free Pratique Granted | | | HFO HS | HFO LS | MDO/MGO HS | |
| Pilot On Board | 13:42 | 20-May-19 | 315.8 MT | - MT | - MT | |
| Pilot Off ☑ On ☐ | 15:48 | 20-May-19 | MDO/MGO LS | LUB OILS | WATER | |
| Pilot Off ☐ On ☐ | | | 424.3 MT | 90445 LTRS | 470 MT | |
| Pilot Off ☐ On ☐ | | | **BUNKERS/LUBs/WATER RECEIVED** | | | |
| Pilot Off ☐ On ☐ | | | HFO HS | HFO LS | MDO/MGO HS | |
| Pilot Off | | | - MT | - MT | - MT | |
| Anchored | 15:42 | 20-May-19 | MDO/MGO LS | LUB OILS | WATER | |
| Anchor Up | | | - MT | - LTRS | - MT | |
| Anchored | | | **ROB - SAILING** | | | |
| Anchor Up | | | HFO HS | HFO LS | MDO/MGO HS | |
| Anchored | | | - MT | - MT | - MT | |
| Anchor Up | | | MDO/MGO LS | LUB OILS | WATER | |
| Tug Boat(T.B) Fasted | | | - MT | 72000 LTRS | - MT | |
| T.B: Fasted ☐ Unfasted ☐ | | | **CARGO QUANTITY** | | | |
| T.B: Fasted ☐ Unfasted ☐ | | | PARCEL 1 | PARCEL 2 | PARCEL 3 | |
| T.B: Fasted ☐ Unfasted ☐ | | | | | | BBLS |
| T.B: Unfasted | | | | | | MT |
| First Line Ashore | 16:12 | 20-May-19 | | | | LT |
| All Fast | 16:48 | 20-May-19 | **V.E.F. APPLIED** | | | |
| Commenced Unmooring | 23:42 | 20-May-19 | | | | BBLS |
| Completed Unmooring – Left Dock | 23:54 | 20-May-19 | | | | MT |
| Commenced Gauging | 16:00 | 20-May-19 | | | | LT |
| Completed Gauging | 17:18 | 20-May-19 | STS OPERATION | TIME | DATE | |
| Calculations Completed | 17:48 | 20-May-19 | STS CHECK LIST 2 | | | |
| Commenced Gauging | | | STS CHECK LIST 3 | | | |
| Completed Gauging | | | STS CHECK LIST 4 | | | |
| Calculations Completed | | | STS CHECK LIST 5 | | | |
| Commenced Gauging | | | **REMARKS/STOPPAGES /DELAYS/REASON OF (e.g.** | | | |
| Completed Gauging | | | **Delays of commencement of operation, cargo docs** | | | |
| Calculations Completed | | | **delay, etc )** | | | |
| Commenced Gauging | | | | | | |
| Completed Gauging | | | | | | |
| Calculations Completed | | | | | | |
| Final API received | | | | | | |
| Documents on board | | | | | | |
| Signed Cargo Documents | | | | | | |
| Hoses Connect ☐ Disconnect ☑ Commenced | 16:48 | 20-May-19 | | | | |
| Hoses Connected ☑ Disconnect ☐ | 17:48 | 20-May-19 | | | | |
| Hoses Connect ☐ Disconnect ☑ Commenced | 22:48 | 20-May-19 | | | | |
| Hoses Connected ☐ Disconnect ☑ | 23:36 | 20-May-19 | | | | |
| Deballasting ☐ Ballasting ☐ Commenced | | | | | | |
| Deballasting ☐ Ballasting ☐ Completed | | | | | | |
| Loading☐ Discharge☐ Lightering ☑Commenced | 18:24 | 20-May-19 | | | | |
| Loading☐ Discharge☐ Lightering ☐Interrupted SHIP ☐SHORE ☐STOP | | | | | | |
| Loading☐ Discharge☐ Lightering Resumed | | | | | | |
| Loading☐ Discharge☐ Lightering ☐Interrupted SHIP ☐SHORE ☐STOP | | | | | | |
| Loading☐ Discharge☐ Lightering Resumed | | | | | | |
| Loading☐ Discharge☐ Lightering ☐Interrupted SHIP ☐SHORE ☐STOP | | | | | | |
| Loading☐ Discharge☐ Lightering Resumed | | | | | | |
| Loading☐ Discharge☐ Lightering ☐Interrupted SHIP ☐SHORE ☐STOP | | | | | | |
| Loading☐ Discharge☐ Lightering Resumed | | | | | | |
| Loading☐ Discharge☐ Lightering ☐Interrupted SHIP ☐SHORE ☐STOP | | | | | | |
| Loading☐ Discharge☐ Lightering Resumed | | | | | | |
| Loading☐ Discharge☑ Lightering ☐Completed | 22:48 | 20-May-19 | | | | |
| Shifted From: | | | | | | |
| To: | | | | | | |
| Commenced Sea Passage | | | | | | |

MASTER                         AGENT

**Brian M. Mack**
**Lightering Advisor**
**OSG**

Vessel's folder:Fixtures                    OP.03 TANKERS                    Page    of

IEREUS SHIPPING S.A.                                    Issue Date:07.09.2011
PIRAEUS                                                 Rev.00

## LETTER OF PROTEST

**MESSRS:**

OSG 350/VISION

**VESSEL : M/T SPEEDWAY**

**PORT ; BIGSTONE ANCHORAGE, USA**

**DATE :** 20  /   May   /   2019

Dear Sirs,

### Sub: Delay in cargo operation
### due to number and size of shore connections

Please be informed that my vessel      M/T SPEEDWAY    disposes           3 x 16"

connections in both ship's side manifolds but you connected      2 x 12"     cargo arms/hoses

In BERTH          OSG 350        for the  discharging  of her cargo      N'KOSSA

CRUDE OIL    on   20TH    May     2019 as a result of which my vessel has been delayed

In your port of   BIGSTONE ANCHORAGE, USA   and the total time required t  discharging   her

cargo          N'KOSSA C.O.       exceeded to target time.

Therefore, I serve you this notice of protest and hold you as cargo receivers fully responsible for all costs,

expenses and losses for extra time used for discharge and the consequences as well as that may arise by this

reason, reserving the rights of my Owners and/or Charterers and/or Agents to claim according in due time.

Kindly acknowledge receipt by returning the copies of this letter duly signed.

Yours faithfully,

Captain      EVANGELOS CHIOTIS

Master       M/T SPEEDWAY

Brian M. Mack

Acknowledged and accepted by:                          Sign

Date:       Lightering Advisor                          Local

Name:       OSG                  In CAPITAL LETTERS

FIXTURE                      LOP.05                    Page 1 of 1

EREUS SHIPPING S.A.
RAEUS

Issue Date:07.09.2011
Rev.00

# LETTER OF PROTEST

**MESSRS:**

OSG 350/VISION

_____

**VESSEL : M/T SPEEDWAY** _____

**PORT : BIGSTONE ANCHORAGE, USA** _____

**DATE :** 20 / May / 2019

Dear sirs,

## Re: Delay in Discharging due to limited Discharging rate requested.

Please be informed that during discharging the cargo _____ NKOSSA Crude Oil _____ due to

limited capacity of your lines, the back pressure on ship's manifolds maintained all times as maximum requested

by terminal _____ 50000 _____ BBLS/HR    and the discharging rate calculated about

_____ 47746 _____ BBLS/HR

Due to the above mentioned discharging limitation my vessel has been delayed at your port and the total time

required to discharge her cargo of _____ NKOSSA Crude Oil _____ exceeded the target

time in accordance with her normal discharging rate _____ 75478 _____ BBLS/HR

Therefore I serve you this notice that I hold you as cargo receivers fully responsible for all costs, expenses and losses

for extra time used for discharging _____ 1.6 _____ hrs and the consequences as well as that may arise by this

reason, reserving the rights of my Owners Charterers and/or Agents to claim accordingly in due time.

Yours faithfully,

Brian M. Mack
Lightering Advisor
OSG

Captain    EVANGELOS CHIOTIS

Master     M/T SPEEDWAY

Acknowledged and accepted by: _____    Sign

Date: _____    Time: _____    Local

Name: _____    in CAPITAL LETTERS

FIXTURE                          LOP.16                          Page 1 of 1

NEREUS SHIPPING S.A.
PIRAEUS

Issue Date:07.09.2011
Rev.01/23.05.2014

## PUMPING DATA

Vessel : M/T SPEEDWAY

Cargo : NKOSSA C.O.

Port : BIGSTONE, USA / OSG 350

| DATE | TIME | NO.1 CARGO PUMP | | NO.2 CARGO PUMP | | NO.3 CARGO PUMP | | MANIFOLDS PRESSURE Kgr/cm² - PSI | | | | Hourly Discharge Rate | Remarks (see below) |
|------|------|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| | | RPM | Delivery Pressure Kgr/cm2 - PSI | RPM | Delivery Pressure Kgr/cm2 - PSI | RPM | Delivery Pressure Kgr/cm2 - PSI | No.1 | No.2 | No.3 | No.4 | | |
| 20/MAY/2015 | 18:24 | 650 | 3,0 | — | — | — | — | 1,0 | 1,0 | — | — | — | B |
| 20/MAY/2015 | 18:59 | 650 | 3,0 | 650 | 3,0 | — | — | 1,5 | 1,5 | — | — | — | B |
| 20/MAY/2015 | 19:12 | 900 | 4,0 | 900 | 4,0 | — | — | 3,2 | 3,2 | — | — | — | B |
| 20/MAY/2015 | 15:18 | 1050 | 8,0 | 1050 | 8,0 | — | — | 5,2 | 5,2 | — | — | — | B |
| 20/MAY/2015 | 20:00 | 1050 | 8,0 | 1050 | 8,0 | — | — | 5,2 | 5,2 | — | — | 6088 | B |
| 20/MAY/2015 | 21:00 | 1050 | 8,0 | 1050 | 8,0 | — | — | 5,2 | 5,2 | — | — | 55985 | B |
| 20/MAY/2015 | 22:00 | 1050 | 8,0 | 1050 | 8,0 | — | — | 5,2 | 5,2 | — | — | 55652 | B |
| 20/MAY/2015 | 22:24 | 900 | 5,0 | 900 | 5,0 | — | — | 3,2 | 3,2 | — | — | — | B |
| 20/MAY/2015 | 22:30 | 700 | 4,3 | 700 | 4,3 | — | — | 1,8 | 1,8 | — | — | — | B |
| 20/MAY/2015 | 22:56 | 700 | 3,5 | — | — | — | — | 0,8 | 0,8 | — | — | — | B |
| 20/MAY/2015 | 22:48 | COMPLETED | | DISCHARGING | | OPERATION | | | | | | | A |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |

Remarks Code :
"A"  Stop Discharge at Shore request          "B"  Slow Discharge at Shore Request     "C"  Crude Oil Washing          "D"  Stop Discharge by Vessel
"E"  Slow Discharge by Vessel                 "F"  Stripping Educting Cargo tanks      "G"  Low Level Tanks            "H"  Discharging Slops
"J"  Discharging Lines through MARPOL

Brian M. Mack
Lightering Advisor
Terminal Representative
OSG
OP.31 TANKERS

Limnios Marios
Chief Officer

M/T SPEEDWAY PIRAEUS

Vessel's Folder:FIXTURE, OP-16

Page  01  of  01

NEREUS SHIPPING S.A.
PIRAEUS

Issue Date:07.09.2011
Rev.03/15.11.2016

## S T A T E M E N T   O F   F A C T S

| VESSEL: | SPEEDWAY | PORT: BIGSTONE ANCHORAGE, USA | DATE: | 20-21/May/2019 | BERTH: | OSG 351/HORIZON |
|---|---|---|---|---|---|---|

| LOAD/DISCHARGE CARGO: | N'KOSSA CRUDE OIL | B/L QUANTITY: | | 905545.01 | BBLS @ 60 | |
|---|---|---|---|---|---|---|
| | | | | 117045.982 | M.T. | API/SG |
| | | | | | | 42.14 |

| | TIME | DATE | NUMBER OF TUGS USED | | | |
|---|---|---|---|---|---|---|
| EOSP/STBY ENGINES | | | | | | |
| Arrived Pilot Station | | | MOORING | UNMOORING | SHIFTING | ESCORTING |
| N.O.R. Tendered | 23:36 | 20-May-19 | - | - | - | - |
| N.O.R. Accepted | | | ROB – ARRIVAL (E.O.S.P.) | | | |
| Free Pratique Granted | | | HFO HS | HFO LS | MDO/MGO HS | |
| Pilot On Board | | | 315.8 MT | - MT | - MT | |
| Pilot Off ☐   On ☐ | | | MDO/MGO LS | LUB OILS | WATER | |
| Pilot Off ☐   On ☐ | | | 424.3 MT | 90445 LTRS | 450 MT | |
| Pilot Off ☐   On ☐ | | | BUNKERS/LUBs/WATER RECEIVED | | | |
| Pilot Off ☐   On ☐ | | | HFO HS | HFO LS | MDO/MGO HS | |
| Pilot Off | | | - MT | - MT | - MT | |
| Anchored | 15:42 | 20-May-19 | MDO/MGO LS | LUB OILS | WATER | |
| Anchor Up | | | - MT | - LTRS | - MT | |
| Anchored | | | ROB – SAILING | | | |
| Anchor Up | | | HFO HS | HFO LS | MDO/MGO HS | |
| Anchored | | | - MT | - MT | - MT | |
| Anchor Up | | | MDO/MGO LS | LUB OILS | WATER | |
| Tug Boat(T.B) Fasted | | | - MT | - LTRS | - MT | |
| T.B: Fasted ☐  Unfasted ☐ | | | CARGO QUANTITY | | | |
| T.B: Fasted ☐  Unfasted ☐ | | | PARCEL 1 | PARCEL 2 | PARCEL 3 | |
| T.B: Fasted ☐  Unfasted ☐ | | | | | | BBLS |
| T.B: Unfasted | | | | | | MT |
| First Line Ashore | 00:12 | 21-May-19 | | | | LT |
| All Fast | 00:54 | 21-May-19 | V.E.F. APPLIED | | | |
| Commenced Unmooring | 05:30 | 21-May-19 | | | | BBLS |
| Completed Unmooring – Left Dock | 05:42 | 21-May-19 | | | | MT |
| Commenced Gauging | | | | | | LT |
| Completed Gauging | | | STS OPERATION | TIME | DATE | |
| Calculations Completed | | | STS CHECK LIST 2 | | | |
| Commenced Gauging | | | STS CHECK LIST 3 | | | |
| Completed Gauging | | | STS CHECK LIST 4 | | | |
| Calculations Completed | | | STS CHECK LIST 5 | | | |
| Commenced Gauging | | | REMARKS/STOPPAGES /DELAYS/REASON OF (e.g. Delays of commencement of operation, cargo docs delay, etc ) | | | |
| Completed Gauging | | | | | | |
| Calculations Completed | | | | | | |
| Commenced Gauging | | | | | | |
| Completed Gauging | | | | | | |
| Calculations Completed | | | | | | |
| Final API received | | | | | | |
| Documents on board | | | | | | |
| Signed Cargo Documents | | | | | | |
| Hoses Connect ☐  Disconnect ☐  Commenced ☑ | 00:54 | 21-May-19 | | | | |
| Hoses Connected ☑  Disconnect ☐ | 01:42 | 21-May-19 | | | | |
| Hoses Connect ☐  Disconnect ☐  Commenced ☑ | 04:48 | 21-May-19 | | | | |
| Hoses Connected ☐  Disconnect ☑ | 05:18 | 21-May-19 | | | | |
| Deballasting ☐  Ballasting ☐   Commenced | | | | | | |
| Deballasting ☐  Ballasting ☐   Completed | | | | | | |
| Loading ☐ Discharge ☐ Lightering ☐ Commenced ☑ | 02:00 | 21-May-19 | | | | |
| Loading ☐ Discharge ☐ Lightering ☐ Interrupted SHIP ☐ SHORE ☐ STOP ☐ | | | | | | |
| Loading ☐ Discharge ☐ Lightering ☐ Resumed | | | | | | |
| Loading ☐ Discharge ☐ Lightering ☐ Interrupted SHIP ☐ SHORE ☐ STOP ☐ | | | | | | |
| Loading ☐ Discharge ☐ Lightering ☐ Resumed | | | | | | |
| Loading ☐ Discharge ☐ Lightering ☐ Interrupted SHIP ☐ SHORE ☐ STOP ☐ | | | | | | |
| Loading ☐ Discharge ☐ Lightering ☐ Resumed | | | | | | |
| Loading ☐ Discharge ☐ Lightering ☐ Interrupted SHIP ☐ SHORE ☐ STOP ☐ | | | | | | |
| Loading ☐ Discharge ☐ Lightering ☐ Resumed | | | | | | |
| Loading ☐ Discharge ☑ Lightering ☐ Interrupted SHIP ☐ SHORE ☐ STOP ☐ | | | | | | |
| Loading ☐ Discharge ☐ Lightering ☐ Resumed | | | | | | |
| Loading ☐ Discharge ☑ Lightering ☐ Completed | 04:48 | 21-May-19 | MASTER | | AGENT | |
| Shifted From: | | | | | | |
| To: | | | TERMINAL | | INSPECTOR | |
| Commenced Sea Passage | | | | | | |

| Vessel's folder:Fixtures | OP.03 TANKERS | Page ___ of ___ |
|---|---|---|

EREUS SHIPPING S.A.                                      Issue Date:07.09.2011
IRAEUS                                                   Rev.00

## LETTER OF PROTEST

**MESSRS:**

                                    **VESSEL :** M/T SPEEDWAY
OSG 351/HORIZON                     **PORT :** BIGSTONE ANCHORAGE, USA

_____                 **DATE :** 21 / May / 2019

Dear Sirs,

### Sub: Delay in cargo operation
### due to number and size of shore connections

Please be informed that my vessel     M/T SPEEDWAY     disposes          3 x 16"

connections in both ship's side manifolds but you connected     2 x 12"     cargo arms/hoses

in BERTH          OSG 351          for the  discharging  of her cargo     N'KOSSA

     CRUDE OIL     on    21ST     May     2019 as a result of which my vessel has been delayed

in your port of     BIGSTONE ANCHORAGE, USA     and the total time required t  discharging   her

cargo          N'KOSSA C.O.          exceeded to target time.

Therefore, I serve you this notice of protest and hold you as cargo receivers fully responsible for all costs,

expenses and losses for extra time used for discharge and the consequences as well as that may arise by this

reason, reserving the rights of my Owners and/or Charterers and/or Agents to claim according in due time.

Kindly acknowledge receipt by returning the copies of this letter duly signed.

                              Yours faithfully,

                         Captain     EVANGELOS CHIOTIS
                         Master      M/T SPEEDWAY

Acknowledged and accepted by:                              Sign
Date:     21/5/19          Time:     0600          Local
Name:     _____          in CAPITAL LETTERS

          under protest

FIXTURE                    LOP.05                    Page 1 of 1

:REUS SHIPPING S.A.                                           Issue Date:07.09.2011
RAEUS                                                                    Rev.00

## LETTER OF PROTEST

**MESSRS:**

OSG 351/HORIZON

**VESSEL : M/T SPEEDWAY**

**PORT : BIGSTONE ANCHORAGE, USA**

**DATE :** 21 / May / 2019

Dear sirs,

## Re: Delay in Discharging due to limited Discharging rate requested.

Please be informed that during discharging the cargo _____ NKOSSA Crude Oil _____ due to

limited capacity of your lines, the back pressure on ship's manifolds maintained all times as maximum requested

by terminal _____ 60000 _____ **BBLS/HR** and the discharging rate calculated about

_____ 38790 _____ **BBLS/HR**

Due to the above mentioned discharging limitation my vessel has been delayed at your port and the total time

required to discharge her cargo of _____ NKOSSA Crude Oil _____ exceeded the target

time in accordance with her normal discharging rate _____ 75478 _____ **BBLS/HR**

Therefore I serve you this notice that I hold you as cargo receivers fully responsible for all costs, expenses and losses

for extra time used for discharging _____ 1.4 _____ hrs and the consequences as well as that may arise by this

reason, reserving the rights of my Owners Charterers and/or Agents to claim accordingly in due time.

Yours faithfully,

Captain    EVANGELOS CHIOS

Master    M/T SPEEDWAY

Acknowledged and accepted by:                                          Sign

Date: 21/5/19          Time: 0600              Local

Name:                              in CAPITAL LETTERS

**FIXTURE**                   **LOP.16**                          **Page 1 of 1**

NEREUS SHIPPING S.A.
PIRAEUS

Issue Date:07.09.2011
Rev.01/23.05.2014

## PUMPING DATA

Vessel : M/T SPEEDWAY          Cargo : NKOSSA , C.O.          Port : BIGSTONE, USA / OSG 351

| DATE | TIME | NO.1 CARGO PUMP | | NO.2 CARGO PUMP | | NO.3 CARGO PUMP | | MANIFOLDS PRESSURE Kgr/cm² - PSI | | | | Hourly Discharge Rate | Remarks (see below) |
|------|------|-----|------|-----|------|-----|------|------|------|------|------|------|------|
| | | RPM | Delivery Pressure Kgr/cm2 - PSI | RPM | Delivery Pressure Kg/cm2 - PSI | RPM | Delivery Pressure Kgr/cm2 - PSI | No.1 | No.2 | No.3 | No.4 | | |
| 21 MAY 2019 | 0200 | 650 | 3,0 | — | — | — | — | 0,7 | 0,7 | — | — | — | B |
| 21 MAY 2019 | 0230 | 650 | 3,0 | 650 | 3,0 | — | — | 1,4 | 1,4 | — | — | — | B |
| 21 MAY 2019 | 0236 | 900 | 5,5 | 900 | 5,5 | — | — | 3,0 | 3,0 | — | — | — | B |
| 21 MAY 2019 | 0242 | 1100 | 7,5 | 1100 | 7,5 | — | — | 4,8 | 4,8 | — | — | — | B |
| 21 MAY 2019 | 0300 | 1100 | 7,5 | 1100 | 7,5 | — | — | 4,8 | 4,8 | — | — | 37588 | B |
| 21 MAY 2019 | 0388 | 900 | 6,0 | 900 | 6,0 | — | — | 2,7 | 2,7 | — | — | — | B |
| 21 MAY 2019 | 0400 | 500 | 6,0 | 500 | 6,0 | — | — | 2,7 | 2,7 | — | — | 51791 | B |
| 21 MAY 2019 | 0418 | 800 | 5,5 | 800 | 5,5 | — | — | 2,0 | 2,0 | — | — | — | B |
| 21 MAY 2019 | 0420 | — | — | 800 | 5,0 | — | — | 1,0 | 1,0 | — | — | — | B |
| 21 MAY 2019 | 0446 | COMPLETED DISCHARGING OPERATION | | | | | | | | | | | A |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |

Remarks Code :
"A"  Stop Discharge at Shore request          "B"  Slow Discharge at Shore Request          "C"  Crude Oil Washing          "D"  Stop Discharge by Vessel
"E"  Slow Discharge by Vessel          "F"  Stripping Educting Cargo tanks          "G"  Low Level Tanks          "H"  Discharging Slops
"J"  Discharging Lines through MARPOL

Terminal Representative
OSG

Chief Officer
LIMNIOS MARIOS

M/T SPEEDWAY
PIRAEUS

Vessel's Folder:FIXTURE, OP-16          OP.31 TANKERS          Page  01  of

NEREUS SHIPPING S.A.
PIRAEUS

Issue Date:07.09.2011
Rev.03/15.11.2016

# STATEMENT OF FACTS

| VESSEL: | SPEEDWAY | PORT: | BIGSTONE ANCHORAGE, USA | DATE: | 23-May-19 | BERTH: | OSG 351/HORIZON |
|---|---|---|---|---|---|---|---|

| LOAD/DISCHARGE CARGO: | N'KOSSA CRUDE OIL | B/L QUANTITY: | | 905545.01 | BBLS @ 60 | |
|---|---|---|---|---|---|---|
| | | | | 117045.982 | M.T. | API/SG |
| | | | | | | 42.14 |

| | TIME | DATE | |
|---|---|---|---|

| EOSP/STBY ENGINES | | | NUMBER OF TUGS USED | | | |
|---|---|---|---|---|---|---|
| Arrived Pilot Station | | | MOORING | UNMOORING | SHIFTING | ESCORTING |
| N.O.R. Tendered | 05:18 | 21-May-19 | - | - | - | - |
| N.O.R. Accepted | | | ROB – ARRIVAL (E.O.S.P.) | | | |
| Free Pratique Granted | | | HFO HS | | HFO LS | MDO/MGO HS |
| Pilot On Board | | | 315.8 | MT | - | MT | - | MT |
| Pilot Off ☐  On ☐ | | | MDO/MGO LS | | LUB OILS | WATER |
| Pilot Off ☐  On ☐ | | | 424.3 | MT | 90445 | LTRS | 450 | MT |
| Pilot Off ☐  On ☐ | | | BUNKERS/LUBs/WATER RECEIVED | | | |
| Pilot Off ☐  On ☐ | | | HFO HS | | HFO LS | MDO/MGO HS |
| Pilot Off | | | - | MT | - | MT | - | MT |
| Anchored | 15:42 | 20-May-19 | MDO/MGO LS | | LUB OILS | WATER |
| Anchor Up | | | - | MT | - | LTRS | - | MT |
| Anchored | | | ROB – SAILING | | | |
| Anchor Up | | | HFO HS | | HFO LS | MDO/MGO HS |
| Anchored | | | - | MT | - | MT | - | MT |
| Anchor Up | | | MDO/MGO LS | | LUB OILS | WATER |
| Tug Boat(T.B) Fasted | | | - | MT | - | LTRS | - | MT |
| T.B: Fasted ☐  Unfasted ☐ | | | CARGO QUANTITY | | | |
| T.B: Fasted ☐  Unfasted ☐ | | | PARCEL 1 | PARCEL 2 | PARCEL 3 | |
| T.B: Fasted ☐  Unfasted ☐ | | | | | | BBLS |
| T.B: Unfasted | | | | | | MT |
| First Line Ashore | 06:42 | 23-May-19 | | | | LT |
| All Fast | 07:24 | 23-May-19 | V.E.F. APPLIED | | | |
| Commenced Unmooring | 16:12 | 23-May-19 | | | | BBLS |
| Completed Unmooring – Left Dock | 16:18 | 23-May-19 | | | | MT |
| Commenced Gauging | 18:12 | 23-May-19 | | | | LT |
| Completed Gauging | 19:00 | 23-May-19 | STS OPERATION | TIME | DATE | |
| Calculations Completed | 19:30 | 23-May-19 | STS CHECK LIST 2 | | | |
| Commenced Gauging | | | STS CHECK LIST 3 | | | |
| Completed Gauging | | | STS CHECK LIST 4 | | | |
| Calculations Completed | | | STS CHECK LIST 5 | | | |
| Commenced Gauging | | | REMARKS/STOPPAGES /DELAYS/REASON OF (e.g. | | | |
| Completed Gauging | | | Delays of commencement of operation, cargo docs | | | |
| Calculations Completed | | | delay, etc ) | | | |
| Commenced Gauging | | | | | | |
| Completed Gauging | | | Fm: 21/May/2019 at 06:18 Hrs Lt Hoses Disconnected | | | |
| Calculations Completed | | | To : 23/May/2019 at 08:06 Hrs Lt Hoses Connected | | | |
| Final API received | | | .................................................. | | | |
| Documents on board | | | .................................................. | | | |
| Signed Cargo Documents | | | .................................................. | | | |
| Hoses Connect ☐  Disconnect ☑  Commenced | 07:24 | 23-May-19 | .................................................. | | | |
| Hoses Connected ☐  Disconnect ☑ | 08:06 | 23-May-19 | .................................................. | | | |
| Hoses Connect ☐  Disconnect ☑  Commenced | 15:24 | 23-May-19 | .................................................. | | | |
| Hoses Connected ☐  Disconnect ☑ | 16:00 | 23-May-19 | .................................................. | | | |
| Deballasting ☐  Ballasting ☑  Commenced | 08:24 | 23-May-19 | .................................................. | | | |
| Deballasting ☐  Ballasting ☑  Completed | 15:00 | 23-May-19 | .................................................. | | | |
| Loading☐ Discharge☐ Lightering ☑Commenced | 08:24 | 23-May-19 | .................................................. | | | |
| Loading☐ Discharge☐ Lightering☐ Interrupted SHIP☐SHORE ☐ STOP | | | .................................................. | | | |
| Loading☐ Discharge☐ ☐tering  Resumed | | | | | | |
| Loading☐ Discharge☐ Lightering☐ Interrupted SHIP☐SHORE ☐ STOP | | | | | | |
| Loading☐ Discharge☐ ☐tering  Resumed | | | | | | |
| Loading☐ Discharge☐ Lightering☐ Interrupted SHIP☐SHORE ☐ STOP | | | | | | |
| Loading☐ Discharge☐ ☐tering  Resumed | | | | | | |
| Loading☐ Discharge☐ Lightering☐ Interrupted SHIP☐SHORE ☐ STOP | | | | | | |
| Loading☐  Discharge☐ ☐htering  Resumed | | | | | | |
| Loading☐ Discharge☐ Lightering☐ Interrupted SHIP☐SHORE ☐ STOP | | | | | | |
| Loading☐  Discharge☐ ☐htering  Resumed | | | | | | |
| Loading☐ Discharge☐ ☑htering  ☐mpleted | 15:24 | 23-May-19 | | | | |
| Shifted From: | | | | | | |
| To: | | | | | | |
| Commenced Sea Passage | | | | | | |

| Vessel's folder:Fixtures | OP.03 TANKERS | Page _____ of _____ |
|---|---|---|

EREUS SHIPPING S.A.                                    Issue Date:07.09.2011
IRAEUS                                                 Rev.00

## **LETTER OF PROTEST**

**MESSRS:**

|  |  |
|---|---|
|  | **VESSEL : M/T SPEEDWAY** |
| OSG 351/HORIZON | **PORT :** BIGSTONE ANCHORAGE, USA |
|  | **DATE :**  23  /  May  /  2019 |

Dear Sirs,

### **Sub: Delay in cargo operation**
### **due to number and size of shore connections**

Please be informed that my vessel     M/T SPEEDWAY     disposes          3 x 16"

connections in both ship's side manifolds but you connected          2 x 12"          cargo arms/hoses

in BERTH          OSG 351          for the  discharging  of her cargo          N'KOSSA

     CRUDE OIL     on     23RD     May          2019 as a result of which my vessel has been delayed

in your port of     BIGSTONE ANCHORAGE, USA     and the total time required t  discharging     her

cargo          N'KOSSA C.O.          exceeded to target time.


Therefore, I serve you this notice of protest and hold you as cargo receivers fully responsible for all costs,

expenses and losses for extra time used for discharge and the consequences as well as that may arise by this

reason, reserving the rights of my Owners and/or Charterers and/or Agents to claim according in due time.


Kindly acknowledge receipt by returning the copies of this letter duly signed.


Yours faithfully,

Captain          EVANGELOS CHIOTIS

Master          M/T SPEEDWAY

Acknowledged and accepted by:          For Receipt only          Sign

Date:   23-MAY-2019     Time:     1630          Local

Name:   R. Johnson          in CAPITAL LETTERS


IXTURE                          LOP.05                          Page 1 of 1

NEREUS SHIPPING S.A.
PIRAEUS

Issue Date:07.09.2011
Rev.00

## LETTER OF PROTEST

**MESSRS:**

OSG 351/HORIZON

**VESSEL :** M/T SPEEDWAY

**PORT :** BIGSTONE ANCHORAGE, USA

**DATE :** 23 / May / 2019

Dear sirs,

## Re: Delay in Discharging due to limited Discharging rate requested.

Please be informed that during discharging the cargo _____ NKOSSA Crude Oil _____ due to

limited capacity of your lines, the back pressure on ship's manifolds maintained all times as maximum requested

by terminal _____ 70000 _____ **BBLS/HR** and the discharging rate calculated about

_____ 44425 _____ **BBLS/HR**

Due to the above mentioned discharging limitation my vessel has been delayed at your port and the total time

required to discharge her cargo of _____ NKOSSA Crude Oil _____ exceeded the target

time in accordance with her normal discharging rate _____ 75478 _____ BBLS/HR

Therefore I serve you this notice that I hold you as cargo receivers fully responsible for all costs, expenses and losses

for extra time used for discharging _____ 2.9 _____ hrs and the consequences as well as that may arise by this

reason, reserving the rights of my Owners Charterers and/or Agents to claim accordingly in due time.

Yours faithfully,

Captain     EVANGELOS CHIOZIS

Master     M/T SPEEDWAY

Acknowledged and accepted by: _____ FOR OSG _____     Sign

Date: 23-MAY-2018     Time: 1630     Local

Name: R. JOHNSON     In CAPITAL LETTERS

FIXTURE     LOP.16     Page 1 of 1

IEREUS SHIPPING S.A.                                                 Issue Date:07.09.2011

'IRAEUS                                                              Rev.00

# LETTER OF PROTEST

**MESSRS:**

          OSG 351/HORIZON

**VESSEL :** M/T SPEEDWAY

**PORT :** BIGSTONE ANCHORAGE, USA

**DATE :** 23 / May / 2019

Dear Sirs,

## Re : Delays/ Stoppages imposed by Terminal

This is to bring to your kind attention that the following delays/stoppages imposed by your Terminal to the above

named vessel during her present call at _____ Bigstone anchorage _____ .

| From: | | To: | | Due to: |
|---|---|---|---|---|
| **Date** | **Time** | **Date** | **Time** | |
| 21-May-19 | 05:18 hrs | 23-May-19 | 08:06 hrs | Fm Hoses Disconnected To Hoses Connected |
| | hrs | | hrs | |
| | hrs | | hrs | |
| | hrs | | hrs | |
| | hrs | | hrs | |
| | hrs | | hrs | |
| | hrs | | hrs | |
| | hrs | | hrs | |

Therefore, on behalf of the named vessel, her Owners and  Charterers, I hereby lodge Protest , holding you

solely responsible for any costs, damage, or  claims arising from the aforesaid,  and reserve the rights to

take all actions as may be  considered  necessary to protect  the interest of those parties.

Kindly acknowledge receipt of this letter and oblige accordingly.

                              Yours faithfully,

                    Captain    EVANGELOS CHIOTIS

                    Master      M/T SPEEDWAY

_For Receipt Only_

Acknowledged and accepted by: _R.P. Fabro_          Sign

Date: _23-May-2019_    Time: _1630_    Local

Name: _R.Johnson_    in CAPITAL LETTERS

NEREUS SHIPPING S.A.
PIRAEUS

Issue Date:07.09.2011
Rev.03/15.11.2016

## STATEMENT OF FACTS

| VESSEL: | SPEEDWAY | PORT: | PHILADELPHIA, USA | DATE: | 24-25/May/19 | BERTH: | FORT MIFFLIN |
|---|---|---|---|---|---|---|---|

| LOAD/DISCHARGE CARGO: | N'KOSSA CRUDE OIL | B/L QUANTITY: | 905545.01 | BBLS @ 60 | |
|---|---|---|---|---|---|
| | | | 117045.982 | M.T. | API/SG |
| | | | | | 42.14 |

| | TIME | DATE | NUMBER OF TUGS USED | | | |
|---|---|---|---|---|---|---|
| EOSP/STBY ENGINES | | | | | | |
| Arrived Pilot Station | | | MOORING | UNMOORING | SHIFTING | ESCORTING |
| N.O.R. Tendered | 16:00 | 23-May-19 | 2 | 2 | - | - |
| N.O.R. Accepted | 22:30 | 24-May-19 | ROB – ARRIVAL (E.O.S.P.) | | | |
| Free Pratique Granted | | | HFO HS | HFO LS | MDO/MGO HS | |
| Pilot On Board          River | 10:42 | 24-May-19 | 315.8     MT | - MT | - MT | |
| Pilot Off ☑   On ☑    River | 19:54 | 24-May-19 | MDO/MGO LS | LUB OILS | WATER | |
| Pilot Off ☐   On ☑   Dock | 19:12 | 24-May-19 | 424.3    MT | 90445 LTRS | 450      MT | |
| Pilot Off ☑   On ☑   Dock | 11:12 | 24-May-19 | BUNKERS/LUBs/WATER RECEIVED | | | |
| Pilot Off ☐   On ☑   Dock | 18.36 | 25-May-19 | HFO HS | HFO LS | MDO/MGO HS | |
| Pilot Off           Dock | 19.42 | 25-May-19 | - MT | - MT | - MT | |
| Pilot on board River | 18:24 | 25-May-19 | MDO/MGO LS | LUB OILS | WATER | |
| Pilot Off    River | 21:54 | 25-May-19 | - MT | - LTRS | - MT | |
| Anchored | 15:42 | 20-May-19 | ROB - SAILING | | | |
| Anchor Up | 11:12 | 24-May-19 | HFO HS | HFO LS | MDO/MGO HS | |
| Anchored | 21.30 | 25-May-19 | - MT | - MT | - MT | |
| Anchor Up | | | MDO/MGO LS | LUB OILS | WATER | |
| Tug Boat(T.B) Fasted | 19:12 | 24-May-19 | - MT | - LTRS | - MT | |
| T.B: Fasted ☐  Unfasted ☑ | 21:54 | 24-May-19 | CARGO QUANTITY | | | |
| T.B: Fasted ☐  Unfasted ☐ | | | PARCEL 1 | PARCEL 2 | PARCEL 3 | |
| T.B: Fasted ☐  Unfasted ☐ | | | | | | BBLS |
| T.B: Unfasted | | | | | | MT |
| First Line Ashore | 19:54 | 24-May-19 | | | | LT |
| All Fast | 21:48 | 24-May-19 | V.E.F. APPLIED | | | |
| Commenced Unmooring | 19:00 | 25-May-19 | | | | BBLS |
| Completed Unmooring – Left Dock | 19:24 | 25-May-19 | | | | MT |
| Commenced Gauging | 17:24 | 25-May-19 | | | | LT |
| Completed Gauging | 18:12 | 25-May-19 | STS OPERATION | TIME | DATE | |
| Calculations Completed | | | STS CHECK LIST 2 | | | |
| Commenced Gauging | | | STS CHECK LIST 3 | | | |
| Completed Gauging | | | STS CHECK LIST 4 | | | |
| Calculations Completed | | | STS CHECK LIST 5 | | | |
| Commenced Gauging | | | REMARKS/STOPPAGES /DELAYS/REASON OF (e.g. Delays of commencement of operation, cargo docs delay, etc ) | | | |
| Completed Gauging | | | | | | |
| Calculations Completed | | | | | | |
| Commenced Gauging | | | | | | |
| Completed Gauging | | | Fm: 23/May/2019 at 16:00 Hrs Lt  NOR Tendered | | | |
| Calculations Completed | | | To: 24/May/2019 at 10:42 Hrs Lt  POB | | | |
| Final API received | | | | | | |
| Documents on board | | | Fm: 25/May/2019 at 13:30 Hrs Lt | | | |
| Signed Cargo Documents | | | To: 25/May/2019 at 15:00 Hrs Lt  Internal stripping | | | |
| Hoses Connect ☐  Disconnect ☑  Commenced | 22:00 | 24-May-19 | | | | |
| Hoses Connected ☑  Disconnect ☐ | 22:30 | 24-May-19 | | | | |
| Hoses Connect ☐  Disconnect ☑  Commenced | 17:42 | 25-May-19 | | | | |
| Hoses Connected ☑  Disconnect ☑ | 18:00 | 25-May-19 | | | | |
| Deballasting ☐  Ballasting ☐  Commenced | 23:30 | 24-May-19 | | | | |
| Deballasting ☐  Ballasting ☐  Completed | 17:00 | 25-May-19 | | | | |
| Loading ☐ Discharge ☑ Lightering ☐ Commenced | 23:18 | 24-May-19 | | | | |
| Loading ☐ Discharge ☐ Lightering ☑ Interrupted SHIP ☐ SHORE ☑ STOP | 13:30 | 25-May-19 | | | | |
| Loading ☐ Discharge ☐ Lightering ☑ Resumed | 15:00 | 25-May-19 | | | | |
| Loading ☐ Discharge ☐ Lightering ☐ Interrupted SHIP ☐ SHORE ☐ STOP | | | | | | |
| Loading ☐ Discharge ☐ Lightering ☐ Resumed | | | | | | |
| Loading ☐ Discharge ☐ Lightering ☐ Interrupted SHIP ☐ SHORE ☐ STOP | | | | | | |
| Loading ☐ Discharge ☐ Lightering ☐ Resumed | | | | | | |
| Loading ☐ Discharge ☐ Lightering ☐ Interrupted SHIP ☐ SHORE ☐ STOP | | | | | | |
| Loading ☐ Discharge ☐ Lightering ☐ Resumed | | | | | | |
| Loading ☐ Discharge ☐ Lightering ☐ Interrupted SHIP ☐ SHORE ☐ STOP | | | | | | |
| Loading ☐ Discharge ☐ Lightering ☐ Resumed | | | | | | |
| Loading ☐ Discharge ☐ Lightering ☑ Inpleted | 17:24 | 25-May-19 | | | | |
| Shifted From: | | | | | | |
| To: | | | | | | |
| Commenced Sea Passage | | | | | | |

MASTER                    AGENT

TERMINAL        RECEIPT ONLY        INSPECTOR

| Vessel's folder:Fixtures | OP.03 TANKERS | Page        of |
|---|---|---|

EREUS SHIPPING S.A.                                      Issue Date:07.09.2011

IRAEUS                                                          Rev.00

# LETTER OF PROTEST

**MESSRS:**

PES - FORT MIFFLIN

VESSEL : M/T SPEEDWAY

PORT : BIGSTONE ANCHORAGE, USA

DATE :  25  /  May  /  2019

Dear Sirs,

## Re : Delays/ Stoppages imposed by Terminal

This is to bring to your kind attention that the following delays/stoppages imposed by your Terminal to the above named vessel during her present call at _____ Fort Mifflin _____.

| From: | | To: | | |
|---|---|---|---|---|
| Date | Time | Date | Time | Due to: |
| 23-May-19 | 16:00 hrs | 24-May-19 | 10:42 hrs | From NOR tendered to Pilot on Board |
| 25-May-19 | 13:30 hrs | 25-May-19 | 15:00 hrs | Discharging interrupted for internal stripping |
| | hrs | | hrs | |
| | hrs | | hrs | |
| | hrs | | hrs | |
| | hrs | | hrs | |
| | hrs | | hrs | |
| | hrs | | hrs | |

Therefore, on behalf of the named vessel, her Owners and Charterers, I hereby lodge Protest , holding you solely responsible for any costs, damage, or claims arising from the aforesaid, and reserve the rights to take all actions as may be considered necessary to protect the interest of those parties.

Kindly acknowledge receipt of this letter and oblige accordingly.

Yours faithfully,

Captain    EVANGELOS CHIOTIS

Master    M/T SPEEDWAY

Acknowledged and accepted by: _____    Sign

Date: _____    Time: _____    Local

Name: _____    in CAPITAL LETTERS

'IXTURE                          LOP.15                          Page 1 of 1

NEREUS SHIPPING S.A.
PIRAEUS

Issue Date:07.09.2011
Rev.00

# LETTER OF PROTEST

**MESSRS:**

PES - FORT MIFFLIN

**VESSEL :** M/T SPEEDWAY

**PORT :** BIGSTONE ANCHORAGE, USA

**DATE :** 25 / May / 2019

Dear sirs,

## Re: Delay in Discharging due to limited Discharging rate requested.

Please be informed that during discharging the cargo _____ NKOSSA Crude Oil _____ due to limited capacity of your lines, the back pressure on ship's manifolds maintained all times as maximum requested by terminal _____ 20000 _____ **BBLS/HR** and the discharging rate calculated about _____ 16217 _____ **BBLS/HR**

Due to the above mentioned discharging limitation my vessel has been delayed at your port and the total time required to discharge her cargo of _____ NKOSSA Crude Oil _____ exceeded the target time in accordance with her normal discharging rate _____ 75478 _____ **BBLS/HR**

Therefore I serve you this notice that I hold you as cargo receivers fully responsible for all costs, expenses and losses for extra time used for discharg _____ NKOSSA Crude Oil _____ and the consequences as well as that may arise by this reason, reserving the rights of my Owners Charterers and/or Agents to claim accordingly in due time.

Yours faithfully,

Captain _____ EVANGELOS CHIOTIS

Master _____ M/T SPEEDWAY

Acknowledged and accepted by: _____ Sign

Date: _____ Time: _____ Local

Name: _____ in CAPITAL LETTERS

FIXTURE                    LOP.16                    Page 1 of 1

NEREUS SHIPPING S.A.
PIRAEUS

Issue Date:07.09.2011
Rev.01.23.05.2014

## PUMPING DATA

Vessel : M/T SPEEDWAY                Cargo :    N KOSSA C.O.          Port : PHILADELPHIA USA - FORT MIFFLIN

| DATE | TIME | NO.1 CARGO PUMP | | NO.2 CARGO PUMP | | NO.3 CARGO PUMP | | MANIFOLDS PRESSURE Kgr/cm² - PSI | | | | Hourly Discharge Rate | Remarks (see below) |
|------|------|-----|----------|-----|----------|-----|----------|------|------|------|------|--|--|
| | | RPM | Delivery Pressure Kgr/cm2 - PSI | RPM | Delivery Pressure Kgr/cm2 - PSI | RPM | Delivery Pressure Kgr/cm2 - PSI | No.1 | No.2 | No.3 | No.4 | | |
| 25 MAY 2019 | 08:12 | — | — | 1.000 | 9,0 | 1.000 | 9,0 | 6,0 | 6,0 | 6,0 | — | — | SWITCH C.O.P.P.L |
| 25 MAY 2019 | 09:00 | — | — | 1000 | 9,0 | 1000 | 9,0 | 6,0 | 6,0 | 6,0 | — | — | B |
| 25 MAY 2019 | 1000 | — | — | 1000 | 9,0 | 1000 | 9,0 | 6,0 | 6,0 | 6,0 | — | 27654 | B |
| 25 MAY 2019 | 10:18 | — | — | 900 | 7,5 | 900 | 7,5 | 4,5 | 4,5 | 4,5 | — | — | G |
| 25 MAY 2019 | 11:00 | — | — | 800 | 6,0 | 800 | 8,0 | 3,0 | 3,0 | 3,0 | — | 25834 | G |
| 25 MAY 2019 | 1100 | — | — | 800 | 6,0 | 1100 | 11,5 | 2,5 | 2,5 | 2,5 | — | — | G - C - F |
| 25 MAY 2019 | 12:00 | — | — | 650 | 5,0 | 1.100 | 11,5 | 1,7 | 1,7 | 1,7 | — | 15.603 | F - G |
| 25 MAY 2019 | 13:00 | — | — | 650 | 5,0 | 1.100 | 11,5 | 1,7 | 1,7 | 1,7 | — | 10.785 | F - G |
| 25 MAY 2019 | 13:30 | — | — | — | — | 1.100 | 11,5 | — | — | — | — | — | C - D - F |
| 25 MAY 2019 | 15:00 | — | — | — | — | 650 | 5,0 | 1,3 | 1,3 | 1,3 | — | — | G - H |
| 25 MAY 2019 | 16:00 | | | | | 650 | 5,0 | 1,2 | 1,2 | 1,2 | — | 4.681 | G - H |
| 25 MAY 2019 | 16:54 | | | | | | | | | | — | 2.332 | J |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |

Remarks Code :
"A"  Stop Discharge at Shore request
"B"  Slow Discharge at Shore Request
"C"  Crude Oil Washing
"D"  Stop Discharge by Vessel
"E"  Slow Discharge by Vessel
"F"  Stripping Educting Cargo tanks
"G"  Low Level Tanks
"H"  Discharging Slops
"J"  Discharging Lines through MARPOL

_____                    SIAKAVARAS KONSTANTINOS
Terminal Representative                       Chief Officer

Vessel's Folder:FIXTURE, OP-16               OP.31 TANKERS               Page  2  of  2

NEREUS SHIPPING S.A.
PIRAEUS

Issue Date:07.09.2011
Rev.01/23.05.2014

## PUMPING DATA

Vessel : M/T SPEEDWAY          Cargo : N KOREA C.O.          Port : PHILADELPHIA USA -FORT MIFFLIN

| DATE | TIME | NO.1 CARGO PUMP | | NO.2 CARGO PUMP | | NO.3 CARGO PUMP | | MANIFOLDS PRESSURE Kgr/cm² - PSI | | | | Hourly Discharge Rate | Remarks (see below) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | RPM | Delivery Pressure Kgr/cm2 - PSI | RPM | Delivery Pressure Kgr/cm2 - PSI | RPM | Delivery Pressure Kgr/cm2 - PSI | No.1 | No.2 | No.3 | No.4 | | |
| 24MAY2019 | 2318 | 650 | 5.0 | — | — | — | — | 2.0 | 2.0 | 2.0 | — | — | B |
| 24MAY2019 | 2236 | 650 | 5.0 | 650 | 5.0 | — | — | 2.2 | 2.2 | 2.2 | — | — | B |
| 24MAY2019 | 2343 | 650 | 5.0 | 650 | 5.0 | 650 | 5.0 | 2.3 | 2.3 | 2.3 | — | — | B |
| 24MAY2019 | 2348 | 750 | 5.5 | 750 | 5.5 | 750 | 5.5 | 3.0 | 3.0 | 3.0 | — | — | B |
| 24MAY2019 | 2354 | 800 | 6.0 | 800 | 6.0 | 800 | 6.0 | 3.5 | 3.5 | 3.5 | — | — | B |
| 25MAY2019 | 0001 | 800 | 6.0 | 800 | 6.0 | 800 | 6.0 | 3.5 | 3.5 | 3.5 | — | 7.666 | B |
| 25MAY2019 | 0100 | 800 | 6.0 | 800 | 6.0 | 800 | 6.0 | 3.5 | 3.5 | 3.5 | — | 18881 | B |
| 25MAY2019 | 0200 | 800 | 6.0 | 800 | 6.0 | 800 | 6.0 | 3.5 | 3.5 | 3.5 | — | 18218 | B |
| 25 MAY 2019 | 0300 | 900 | 6.0 | 900 | 6.0 | 800 | 6.0 | 3.5 | 3.5 | 3.5 | — | 17754 | B |
| 25 MAY 2019 | 0400 | 800 | 6.0 | 800 | 6.0 | 800 | 6.0 | 3.5 | 3.5 | 3.5 | — | 18635 | B |
| 25 MAY2019 | 0420 | 1100 | 11.0 | 800 | 6.0 | 800 | 6.0 | 3.5 | 3.5 | 3.5 | — | — | B-C |
| 25MAY2019 | 0500 | 1100 | 11.0 | 800 | 6.0 | 800 | 6.0 | 3.5 | 3.5 | 3.5 | — | 19429 | B-C |
| 25MAY2019 | 0600 | 1100 | 11.0 | 800 | 6.0 | 800 | 6.0 | 3.5 | 3.5 | 3.5 | — | 16707 | B-C |
| 25MAY2019 | 0700 | 1100 | 11.0 | 900 | 7.5 | 900 | 7.5 | 4.5 | 4.5 | 4.5 | — | 18281 | B-G |
| 25 MAY 2019 | 08:00 | 1100 | 11.0 | 1000 | 9.0 | 1000 | 9.0 | 6.0 | 6.0 | 6.0 | — | 21.058 | B-F |

Remarks Code :
"A"  Stop Discharge at Shore request          "B"  Slow Discharge at Shore Request          "C"  Crude Oil Washing          "D"  Stop Discharge by Vessel
"E"  Slow Discharge by Vessel                      "F"  Stripping Educting Cargo tanks              "G"  Low Level Tanks              "H"  Discharging Slops
"J"  Discharging Lines through MARPOL

_____
Terminal Representative

SIARAVARAS KONSTANTINOS
Chief Officer

Vessel's Folder:FIXTURE, OP-16          OP.31 TANKERS          Page  1  of  _____

NEREUS SHIPPING S.A.
PIRAEUS

Issue Date:07.09.2011
Rev.01/23.05.2014

## CRUDE OIL WASH RECORD

VESSEL: M/T SPEEDWAY
PORT: PHILADELPHIA/SOUTHERN

DATE: 25 MAY 2019
GRADE: N KOSSA C.O.

| DATE | TANK No | TIME START | TIME STOP | No OF MACHINES FITTED | No OF MACHINES IN USE | CYCLE USED | No PASSES | TANK O₂ | LINE O₂ | I.G. PRESS | WASH PRESS | DIP BEFORE | DIP AFTER |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 25/05/19 | 1P | 0420 | 0550 | 2 | 2 | 180°-0°-40° | 1 | 3,9 | 3,7 | 400 | 8,5 kg/c | 5 | ∅ |
| 25/05/19 | 1S | 0420 | 0550 | 2 | 2 | 180°-0-40° | 1 | 3,8 | 3,7 | 400 | 8,5 kg/c | 4 | ∅ |
| 25/05/19 | 3P | 0525 | 0610 | 2 | 2 | 180°-40° | 1 | 3,8 | 3,8 | 400 | 8,5 kg/cm | – | – |
| 25/05/19 | 3S | 0525 | 0610 | 2 | 2 | 180°-40 | 1 | 3,6 | 3,8 | 400 | 8,5 kg/cm | – | – |
| 25/05/19 | 5S | 0615 | 0650 | 2 | 2 | 180°-40 | 1 | 3,2 | 4,0 | 400 | 8,5 kg/c | – | – |
| 25/05/19 | 4P | 0655 | 0730 | 2 | 2 | 40°-0°-40° | 1 | 3,6 | 3,5 | 400 | 8,5 kg/cm | 6 | ∅ |
| 25/05/19 | 4S | 0655 | 0730 | 2 | 2 | 40°-0°-40° | 1 | 3,6 | 3,5 | 400 | 8,5 kg/cm | 5 | ∅ |
| 25/05/19 | 3P | 1106 | 11:42 | 2 | 2 | 40°-0-40° | 1 | 3,8 | 3,8 | 400 | 8,5 kg/cm | 6 | ∅ |
| 25/05/19 | 3S | 1106 | 11:42 | 2 | 2 | 40°-0-40 | 1 | 3,7 | 3,8 | 400 | 8,5 kg/cm | 5 | ∅ |
| 25 MAY 19 | 5S | 13:30 | 14:05 | 2 | 2 | 40°-0-40° | 1 | 3,8 | 3,8 | 420 | 8,5 kg/cm² | 5 | ∅ |
| 25 MAY 19 | SLOP (P) | 14:10 | 14:45 | 3 | 3 | 40°-0°-40° | 1 | 3,8 | 3,7 | 430 | 8,5 kg/cm | 4 | ∅ |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |

_____
TERMINAL REPR/ CARGO INSPECTOR

SIAKAVARAS KONSTANTINOS
MASTER/CHIEF OFFICER

Vessel's Folder:FIXTURE OP-16

OP.25 TANKERS

Page 1 of 1

# EXHIBIT 10



60 EAST 42ND STREET, SUITE 1638
NEW YORK, NY 10165
(212) 354-0025
FAX: (212) 869-0067

TL@TISDALE-LAW.COM

## TISDALE
### LAW OFFICES, LLC

*New York, NY · Southport, CT*

10 SPRUCE STREET
SOUTHPORT, CT 06890
(203) 254-8474
FAX: (203) 254-1641

WWW.TISDALE-LAW.COM

July 18, 2019

***farhad.shakibaei@pes-companies.com***
***claims@pes-companies.com***
Philadelphia Energy Solutions
1735 Market St., 11ᵗʰ Floor
Philadelphia, PA 19103

***claim@poten.com***
***asarris@poten.com***
***pperri@poten.com***
***jlomba@poten.com***
Peter Perri
Poten & Partners, Inc.
805 Third Ave.
New York, NY 10022

      **Re:**    **M/T SPEEDWAY**
              **PES Charter Party dated April 10, 2019**

Dear Sirs:

     We are attorneys for Skyview Marine Co. SA and Nereus Shipping SA, the Owners and Managers, respectively of the M/T SPEEDWAY in regard to a dispute arising out of the above-referenced charter party with Philadelphia Energy Solutions as Charterers for unpaid demurrage at loading and discharging totaling $124,739.77 and heating expenses of $45,504.60 arising under the above-referenced charter party.

     In accordance with Sun Clauses, Clause 8 and ASBATANKVOY form Clause 24 of Part 2, Owners hereby demand arbitration of Charterers and appoint George Tsimis, Esq. as its party appointed arbitrator. Mr. Tsimis' details are as follows:

           George J. Tsimis
           GJT Marine Consultants, LLC
           212 Ryder Road
           Manhasset, NY 11030
           Tel:    917 306 7721
           *gtsimis@gjtmarine.com*

Notice is hereby given that you have 20 days to appoint your party nominated arbitrator or, in accordance with Clause 24, a second arbitrator will be appointed on your behalf.

We await your earliest response.

Very truly yours,

Thomas L. Tisdale

mt

*gtsimis@gjtmarine.com*
cc:    George J. Tsimis

2

# EXHIBIT 11

Case 1:19-cv-06737-AT   Document 1   Filed 07/19/19   Page 112 of 113

Menu

History    Refining Process

# The Philadelphia Refining Complex includes the Point Breeze and Girard Point refineries.

Together, these facilities comprise the largest refining complex on the Eastern seaboard.

It was established as a bulk petroleum storage facility in 1866, when the petroleum industry was still in its infancy, and began refinery operations in 1870.

The refining complex produces a wide range of fuels for markets in the northeastern United States. Among our various products are gasoline, low-sulfur diesel, jet fuel, kerosene, butane, propane, home heating oil and the petrochemical cumene. We utilize ethanol and biodiesel as important components of our products.

With its combined 335,000 barrels per day of crude oil processing capacity, PES' refining complex business produces approximately 110 million barrels of refined products annually.

© 2019 Copyright
Philadelphia Energy Solutions
SITE MAP | LEGAL

**PES Headquarters**
1735 Market Street, 11th Floor
Philadelphia, PA 19103
215-339-1200

WEB FONTS BY
fonts.com

**PES Refining Complex**
3144 West Passyunk Avenue
Philadelphia, PA 19145
215-339-2000

WEB FONTS BY
fonts.com